UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PHYLLIS SCHLAFLY REVOCABLE TRUST, ET AL.<br><br>PLAINTIFFS<br><br>v.<br><br>ANNE CORI, ET AL.<br><br>DEFENDANTS. | CIVIL ACTION NO. 4:16-CV-01631<br><br>JURY TRIAL DEMANDED |

**EMERGENCY MOTION AND MEMORANDUM IN SUPPORT
FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

On October 19, 2016, Plaintiffs, the Phyllis Schlafly Revocable Trust ("Schlafly Revocable Trust") and the Eagle Trust Fund ("Eagle Trust") (collectively, hereinafter "Plaintiffs"), filed their Complaint seeking injunctive relief against individual defendants, Anne Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, Shirley Curry, and Jane or John Does 1-5 (collectively, hereinafter "Defendants") to prevent the misappropriation and use of Plaintiffs' proprietary database as well as Phyllis Schlafly's name, image, and likeness.

Plaintiffs recently discovered that two employees of Eagle Trust with access to Plaintiffs' trade secret database were communicating with the Defendants. On Monday, October 31, 2016, when these employees were approached, they refused to acknowledge their duty to maintain the confidentiality of Plaintiffs' trade secrets and proceeded to leave work. As a result of this recent development, Plaintiffs are concerned that these employees misappropriated trade secrets and are sharing that information with the Defendants, and that one or more Defendants may currently be sharing that information with political campaigns or other unauthorized persons. The

misappropriated information may be currently used by Defendants to solicit support for the state and national elections next week and political activity (that will occur immediately in its aftermath). With Election Day approaching on November 8, 2016, and significant political actions to take place quickly afterwards it is imperative that Plaintiffs be heard as soon as possible.

Plaintiffs now move for a temporary restraining order, and thereafter an injunction, enjoining Defendants from using or disseminating Plaintiffs' proprietary information. As discussed in more detail below, immediate relief is proper because Plaintiffs have been harmed and will continue to sustain irreparable harm if Defendants are allowed to use Plaintiffs' trade secrets or Phyllis Schlafly's image and likeness.

## STANDARD OF REVIEW FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

A court may grant a request for a preliminary injunction if the movant shows: (1) a substantial likelihood that it will prevail on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that if issued the injunction would not be adverse to the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931 (8th Cir 2002); *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 749 (8th Cir. 2002); *Panera, LLC v. Nettles*, No. 4:16-CV-1181, 2016 WL 4124114, at *2 (E.D. Mo. Aug. 3, 2016) (citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *Experitec, Inc. v. Stachowski*, No. 4:14-CV-00154, 2014 WL 11089362, at *2 (E.D. Mo. Jan. 30, 2014) (citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

In making its decision, "the court is not required to find that ultimate success by the movant is a mathematical probability . . . .  The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977).  The court in *Holiday Tours* further noted that temporary relief is:

> [P]reventative, or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit.  An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant.  There is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success.

*Id*.  The view of the *Holiday Tours* court has been explicitly adopted in other circuits.  *See*, e.g., *Ruiz v. Estelle*, 650 F.2d 555 (5th Cir. 1981).  The discussion below demonstrates that Plaintiffs are likely to prevail on the merits and entitled to injunctive relief to prevent irreparable injury.

## ARGUMENT

I. **Plaintiffs are Likely to Prevail on the Merits and are Likely to Face Irreparable Harm Absent Injunctive Relief**

    A.     Plaintiffs Own the Proprietary Database as well as
                   <u>Phyllis Schlafly's Name, Image, and Likeness</u>

Phyllis Schlafly was a nationally known political figure, a best-selling author, and a spokeswoman for grassroots conservatism.  Through her publications and public appearances, she achieved a high degree of notoriety and fame, participating extensively in education, political advocacy, and fundraising.  Mrs. Schlafly's name, image, and likeness came to be associated in the minds of the public with her political positions and philosophy. Mrs. Schlafly maintained

3

strict control over use of her image and likeness to maintain her reputation for conservative values.

As discussed in more detail in Plaintiffs' Complaint, for a period of more than 50 years, Phyllis Schlafly developed a proprietary database of contacts for direct mail and fundraising efforts to promote causes supported by Mrs. Schlafly (the "Schlafly Database"). *See also*, Exhibit 1 (Declaration of John Schlafly). The database was painstakingly secured. Mrs. Schlafly has been offered millions of dollars for access to the Schlafly Database, but always refused offers to purchase access. Even when working with other organizations, Mrs. Schlafly required that any use of the database be coordinated through Mrs. Schlafly and her highest level employees such that only Mrs. Schlafly and select individuals have ever had access to the Schlafly Database.

Prior to her death in September 2016, Mrs. Schlafly assigned rights to the Schlafly Database, along with the rights to her name, image, and likeness, to the Schlafly Revocable Trust. Exhibit 2 (Assignment of Rights). As a result of this assignment, Plaintiffs own all rights to the trade secret Schlafly Database as well as Phyllis Schlafly's name, image, and likeness.

      B.      Plaintiffs are Likely to Prevail on the Merits of their Trade Secret Claims and <u>Face Irreparable Injury Absent Immediate Injunctive Relief</u>

The Defend Trade Secrets Act ("DTSA") of 2016, Pub. L. No. 114-153, 130 Stat. 376, which was signed into law on May 11, 2016, and amends chapter 90 of Title 18 of the U.S. Code (the Economic Espionage Act of 1996), forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1) (as amended). Defendants have used Plaintiffs' trade secret Schlafly Database after the May 11, 2016 enactment of the DTSA to

4

garner political and financial support and will continue to use the Schlafly Database if not enjoined by this Court. Defendants have even sought trade secret information from two employees of Plaintiff Eagle Trust, and induced these employees to disobey orders by their employer to protect and safeguard trade secret information.

Under Missouri Law, Rule 92.02 states that the Court may grant a temporary restraining order if the party seeking relief "demonstrates that immediate and irreparable injury, loss, or damage will result in the absence of relief." No other showing is necessary. A temporary restraining order serves a key function by preventing the "invasion of the rights of parties until final judgment." *Zaegel v. Zaegel*, 697 S.W.2d 223, 255 (Mo. App. E.D. 1985); *see also Furniture Mfg. Corp. v. Joseph*, 900 S.W.2d 642, 646 (Mo. App. 1995). Because trade secret misappropriation takes into account "immediate and irreparably injury," discussion of the merits of the claim also addresses the second factor considered by Courts when determining whether to issue a preliminary injunction, namely, whether irreparable injury will be suffered unless the injunction issues.

From January 2016 to present, Defendants have continually attempted to gain access to Plaintiffs trade secret Schlafly Database. On January 12, 2016, Mrs. Schlafly expressly directed Defendant Anne Cori not to send out any news items, announcements, or endorsements without approval:

> do not send out anything -- press release, newsitem, announcement re endorsements etc. without getting an OK from me.
> Actually I think i declared this specific policy many months ago.
> ps

Exhibit 3 (Email dated January 12, 2016) (Phyllis Schlafly typically signed her emails with "ps"). In the ongoing presidential campaign, Mrs. Schlafly endorsed Donald Trump, while the Defendants were staunch and outspoken supporters of Ted Cruz. Most of the Defendants

5

continued to be Cruz supporters throughout the year, and continued to work with current or former staffers of Cruz despite his failure to win the nomination this year.  In February 2016, despite the position taken by Mrs. Schlafly and Missouri Eagle Forum—and despite Mrs. Schlafly's warning requiring approval of all communications—Defendants contacted individuals identified within the Schlafly Database through an unauthorized robocall campaign, wherein individuals would hear a recording indicating that Missouri Eagle Forum supported Ted Cruz.  Exhibit 4 (Transcript and Audio of Anne Cori Robocall Supporting Ted Cruz).  In direct response to this unauthorized robocall and other communications meant to confuse supporters, Mrs. Cori was replaced by Noreen McCann as President of Missouri Eagle Forum.  Exhibit 9 (McCann Affidavit).

On April 12, 2016, without proper authorization or prior warning, Anne Cori entered the Eagle Trust offices located in Alton, Illinois, in an effort to gain access to the Schlafly Database and other intellectual property and proprietary information inside those private offices.  Plaintiffs were able to protect the assets at that time only by the arrival of the police, as Mrs. Cori continued to refuse to leave even after she was informed that the police had been called. Exhibit 5 (Alton Police Incident Report).

Defendants recently sought a Court Order from the Circuit Court for the Third Judicial Circuit in Madison County, Illinois, in an effort to improperly gain further access to the Schlafly Database, without joining the owners of the database in the action.  Defendants' Illinois state court proceeding did not name the Schlafly Revocable Trust that owns and controls the Schlafly Database as a party to the litigation.  As a result, the Illinois Court was without proper authority to grant access to the intellectual property at issue. Exhibit 6 (October 20, 2016 Order in Anne Schlafly Cori, et. al. v. Edward Martin, et. al., Cause No. 2016MR000111).  .

Now, in the past month and even earlier this week, Defendants engaged in coercing long-term employees of Eagle Trust to share proprietary information. Through the Illinois proceedings, employees of Eagle Trust, Elizabeth Miller and Ann Bensman, represented that they were employees of competing organizations established by the Defendants. Exhibit 7 (Affidavits filed with Illinois Court); Exhibit 8 (W-2 forms for Miller and Bensman). As the employees had been full-time employees of Eagle Trust for over 20 years and these two employees had access to financial information as well as the Schlafly Database, Plaintiffs became concerned. Plaintiffs closed their offices from October 21 through October 28 in an effort to secure the database. The employees were told to report to a different office on Monday October 31. When the employees arrived, John Schlafly, accompanied by counsel, had a meeting with the employees to remind them of the proprietary nature of the Schlafly Database. Mr. Schlafly requested that the employees turn in their passwords for access to the company systems and sign an acknowledgement of the confidentiality of the information. The employees refused and left the meeting. They have never returned to work or returned their passwords enabling them to access Plaintiffs' trade secrets.

Following this encounter, the Eagle Trust secured remote access. However, when these employees utilized the Schlafly Database, partial lists were created to facilitate contact with the individuals identified within the database. While these lists were created on a secured company computer, Plaintiffs now fear that these employees may have unlawfully copied these partial lists. Plaintiffs currently have an expert performing forensics on the computers accessed by these employees. That said, it is imperative that Defendants be enjoined from using any information these employees may have unlawfully misappropriated from the Eagle Trust and shared with one or more Defendants.

7

The continued use of Plaintiffs' trade secrets will cause irreparable harm, including, but not limited to, the usurpation of donors and prospective business relationships. Plaintiffs face an immediate harm as any successful solicitation by Defendants using Plaintiffs' donor lists will directly decrease the funding available to Plaintiffs while simultaneously redirecting those funds to support causes contrary to the political positions and philosophy of Phyllis Schlafly. Unless an injunction issues, Defendants will use and disclose Plaintiffs' trade secrets for their own financial gain, or the gain of others without authorization by Plaintiffs.

Additionally, while Mrs. Schlafly painstakingly maintained the secrecy of the Schlafly Database, Defendants may fail to take adequate precautions to ensure the security of the trade secrets. If Defendants disseminate information from the database or otherwise fail to secure the database, Plaintiffs' trade secret rights may be lost entirely.

Plaintiffs require an injunction to ensure that this Order does not result in improper access to the Schlafly Database. With Election Day approaching in less than a week, and with tremendous political interest and politics-related fundraising expected to occur immediately after this controversial election, Plaintiffs require immediate injunctive relief to ensure that their trade secrets are not misappropriated to others to advance conflicting positions.

    C.    <u>Plaintiffs Are Likely to Prevail on the Merits of Their Right of Publicity Claim and Likely to Face Irreparable Injury Absent Injunctive Relief</u>

There are three elements in an action involving a violation of publicity rights in Missouri: (1) the use of a celebrity's name as a symbol of his identity; (2) without consent; and (3) with the intent to obtain a commercial advantage. *C.B.C. Distrib. and Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*, 443 F. Supp. 2d 1077 (E.D. Mo. 2006).

Here, in February, Defendant Anne Cori was replaced as president of Missouri Eagle Forum. After being replaced, Mrs. Cori has continued to hold herself out as a representative of Missouri Eagle Forum and its affiliates. Exhibit 9 (McCann Affidavit) Mrs. Schlafly issued a statement prior to her death revoking all previously issued licenses to use her name, image, and likeness, requesting that she be contacted to discuss future licensing. Exhibit 10 (Video and Related Transcript). Mrs. Schlafly took these steps to avoid any confusion or dispute as to those licensed to use her name, image, and likeness.

Still, Defendants continue to use Phyllis Schlafly's name, image, and likeness without consent in order to garner both political and financial support from third parties. Mrs. Cori has gone so far as to create a competing website advertising competing events using Mrs. Schlafly's name, image, and likeness. Exhibit 11 (Screen Capture of www.moeagleforum.org). Mrs. Cori directs visitors of the website to send dues and donations for Missouri Eagle Forum to her home address. *Id*. By collecting funds in the name of Mrs. Schlafly's organization, Missouri Eagle Forum, through unauthorized use of Mrs. Schlafly's name, image, and likeness, then using such funds to support contrary positions, Defendants further tarnish Mrs. Schlafly's memory and reputation through this misappropriation. With Election Day approaching in less than one week, it is imperative that an injunction be entered to prevent Defendants from indicating that communications are affiliated with or endorsed by Phyllis Schlafly and her associated organizations, when, in fact, the positions are contrary to her political philosophy and values.

## II.   Plaintiff's Injury Outweighs Any Potential Damage to Defendants

Having established the first two factors—the merits of the claim and irreparable harm—the third factor to be considered is whether Plaintiff's injury outweighs potential damage to the Defendants. Here, Plaintiffs will have donations diverted to Defendants' organizations and may

9

entirely lose the value of a trade secret developed over the course of a career spanning more than 50 years. In contrast, Defendants have no right to access the Schlafly Database or utilize Mrs. Schlafly's name, image, or likeness. As a result, Defendants cannot be damaged by an injunction preventing them from misappropriating Plaintiff's rights.

### III.     Injunctive Relief Would Not Be Adverse to the Public Interest

Injunctive relief would not be adverse to the public interest. In fact, an injunction would further the public interest by ensuring that the information disseminated through the Schlafly Database affiliated with Mrs. Schlafly's name, image, and likeness, is in line with her political values. If Defendants are allowed to misappropriate the database, individuals solicited for donations will be misled, believing they are donating to Mrs. Schlafly's organization with her endorsement when, in fact, the individuals are donating to the Defendant's. Likewise, where Mrs. Schlafly's name, image, and likeness is utilized without authorization in connection with contrary political viewpoints, individuals receiving that information will be misled. As discussed in more detail in the Complaint, prior to her death, Mrs. Schlafly selected successors to ensure her mission would be carried out in line with her own conservative values. The misappropriation of her name, image, and likeness by Defendant's misleads third parties into believing that the information or solicitation received is from those successors.

WHEREFORE, for the reasons stated above, Plaintiffs request the following relief:

1. Enjoining Defendants and those acting in privity or concert from using the likeness and image of Phyllis Schlafly until this Court can hear the parties on a Preliminary Injunction;

2. Enjoining Defendants and those acting in privity or concert from distributing, using, or disseminating the Schlafly Database and any other confidential, proprietary or

10

>   trade secret information of Mrs. Schlafly until this Court can hear the parties on a Preliminary Injunction;
>
> 3. Requiring Defendants to list and return confidential, proprietary or trade secret information of Mrs. Schlafly, including the Schlafyl database;
>
> 4. Ordering a surety or cash bond in an amount to be determined;
>
> 5. Scheduling this matter for a Preliminary Injunction hearing and
>
> 6. Awarding such other and further relief as may be warranted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request expedited hearing of Plaintiffs' Motion and an Order granting Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

Dated: November 3, 2016                                                 Respectfully submitted,


                    ARMSTRONG TEASDALE LLP

                    By: __/s/ Jennifer E. Hoekel_____
                    Jennifer E. Hoekel (45880MO)
                    Jessica M. Mendez (63094MO)
                    7700 Forsyth Blvd., Suite 1800
                    St. Louis, Missouri 63105
                    314-621-5070 telephone
                    314-621-5065 facsimile
                    jhoekel@armstrongteasdale.com
                    jmendez@armstrongteasdale.com


                    Ian A. Northon (*pro hac vice pending*)
                    Michigan Bar P65082
                    Florida Bar 101522
                    Pennsylvania Bar 207733
                    inorthon@ralaw.com
                    serve.inorthon@ralaw.com
                    Roetzel & Andress, LPA

        850 Park Shore Drive
        Trianon Centre, 3rd Floor
        Naples, FL  34103

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November, 2016, a true and correct copy of the foregoing was served via US first class mail to the known defendants with copies via email and UPS overnight to:

Erik O Solverud
Spencer Fane
1 North Brentwood Blvd, Suite 1000
St. Louis MO 63105

        /s/ Jennifer E. Hoekel

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PHYLLIS SCHLAFLY REVOCABLE TRUST, ET AL.<br><br>PLAINTIFFS<br><br>v.<br><br>ANNE CORI, ET AL.<br><br>DEFENDANTS. | CIVIL ACTION NO. 4:16-CV-01631<br><br>JURY TRIAL DEMANDED |

### ORDER GRANTING TEMPORARY RESTRAINING ORDER

1. The Court, having considered Plaintiff Phyllis Schlafly Revocable Trust's Motion for Temporary Restraining Order and Memorandum in Support, and for good cause shown, hereby GRANTS the Motion and finds and orders as follows:

### FINDINGS

2. The Court has jurisdiction over the parties and the subject matter of this action.

3. Plaintiffs have a protectable and identifiable interest in preserving its confidential, proprietary, trade secret information and

4. Plaintiffs have a protectable and identifiable interest in preserving the image and likeness of Phyllis Schlafly

5. Plaintiffs are likely to suffer immediate and irreparable harm in the absence of injunction relief in that use of the Schlafy database will expose Plaintiff's confidential, proprietary and trade secret information to the public and others in contravention of the best interests of Plaintiffs..  Plaintiffs are likely to succeed on the merits of this action.

6. Plaintiffs are likely to suffer immediate and irreparable harm in the absence of injunction relief in that use of Phyllis Schlafly's image and likeness in contravention of Plaintiff's wishes harms the goodwill associated with her image and likeness.

7. The balance of harms favors entering injunctive relief as Plaintiffs could be irreparably harmed by the disclosure of its confidential, proprietary information and trade secrets, as well as improper use of Mrs. Schlafly's image and likeness.

8. This TRO will serve the public interest.

9. Plaintiffs have given defendants proper notice.

## ORDER

WHEREFORE, THE FOREGOING CONSIDERED, IT IS HEREBY ORDERED THAT Defendants and those in privity or concert with them are:

1. Enjoined from using the likeness and image of Phyllis Schlafly until this Court can hear the parties on a Preliminary Injunction;

2. Enjoined from distributing, using, or disseminating the Schlafly Database and any other confidential, proprietary or trade secret information of Mrs. Schlafly until this Court can hear the parties on a Preliminary Injunction;

3. Within 7 days, Defendants shall list and return confidential, proprietary or trade secret information of Mrs. Schlafly, including any copies of the Schlafly database or parts thereof;

4. Within 7 days, Defendants shall identify all uses of the Schlafly database, including the identities of any person or entity which has been shown or given the database in whole or in part;

5. ; Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, the Court orders that Plaintiffs provide a surety bond in the amount of $_____ as security for the payment of such costs and damages (if any) as may be incurred or suffered by Defendants if they are found to have been wrongfully enjoined or restrained; and

6. This Temporary Restraining Order shall run through the date of the Preliminary Injunction Hearing unless modified by agreement of the parties or by order of the Court;

7. The matter is scheduled for a Preliminary Injunction hearing on _____; and

8. Awarding such other and further relief as may be warranted.

SO ORDERED:                              DATE AND HOUR OF ISSUANCE:

_____           _____