# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| PHYLLIS SCHLAFLY REVOCABLE TRUST, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) Cause No. 4-16-cv-01631-JAR |
| ANNE CORI, et al., | ) ) |
| Defendants. | ) ) |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR <u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

Defendants Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar and Shirley Curry (collectively, "Defendants"), by and through their undersigned counsel, and for Memorandum in Opposition to the Emergency Motion and Memorandum in Support for Temporary Restraining Order and Preliminary Injunction (the "Motion") [Doc. No. 7] filed by Plaintiffs Phyllis Schlafly Revocable Trust and Eagle Trust Fund (collectively, "Plaintiffs"), state as follows:

## INTRODUCTION

Plaintiffs' lawsuit and "emergency" motion are misdirected. Plaintiffs, controlled by their trustee, John Schlafly, assert claims against six individuals (including Phyllis Schlafly's own daughter and some of her longest and most trusted friends) who constitute the majority of the Eagle Forum Board of Directors (the "Board"), a corporation founded by Phyllis Schlafly and formed under the Illinois General Not for Profit Corporation Act. The present lawsuit is *actually* about the property rights, interests and assets of Eagle Forum, not Eagle Trust Fund or Phyllis Schlafly. Indeed, Eagle Forum is the sole owner of the www.eagleforum.org domain (the

SL 2111497.5

"Eagle Forum Website") and its proprietary lists (including an active membership list of 14,000 individuals and e-mail contact list of 41,000 individuals), through which Eagle Forum carries out its mission of conservative advocacy.  Plaintiffs' misdirection in failing to name Eagle Forum is tactical: Defendants have already made Eagle Forum's interests and property rights the subject of another lawsuit pending in Madison County, Illinois, *Anne Schlafly Cori, et al. v. Edward R. Martin, et al.*, with Cause No. 2016MR000111 (the "State Court Action").[1]

Plaintiffs' attempt to exclude Eagle Forum from their pleadings (instead naming its directors in their individual capacities) and from their revised "history" of Phyllis Schlafly is part of a broader scheme to mischaracterize and/or misappropriate Eagle Forum property as their own.  The timing of this exercise in revisionist history is telling: Plaintiffs filed their Complaint [Doc. No. 1] on October 19, 2016, the same day that an emergency motion to amend a temporary restraining order and suspend John Schlafly as a director and officer of Eagle Forum was to be heard in the State Court Action.  A true and accurate copy of the Emergency Motion to Amend the Temporary Restraining Order (the "Motion to Amend TRO") is attached hereto as **Exhibit 1** and incorporated herein by reference.  That hearing resulted in an October 20, 2016 Order suspending John Schlafly and enjoining him from accessing Eagle Forum property as a result of his bad acts and misappropriation of Eagle Forum property.  A true and accurate copy of the October 20 Order is attached hereto as **Exhibit 2** and incorporated herein by reference.  Rather than abide by the ruling in the State Court Action, Plaintiffs and John Schlafly have contrived an "emergency" basis (in actuality, John Schlafly's appeal of the October 20 Order was recently dismissed) for a temporary restraining order against Defendants.

---

[1] The Eighth Circuit has noted that district courts "may take judicial notice of judicial opinions and public records." E. Me. Baptist Church v. Union Planters Bank, N.A., No. 4:05-CV-962 CAS, 2007 U.S. Dist. LEXIS 21363, at *24 n.2 (E.D. Mo. Mar. 26, 2007) (quoting Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

SL 2111497.5

Recent filings in the State Court Action paint a disturbing picture of the actions undertaken by John Schlafly and those acting in active concert and participation with him. John Schlafly has, without any input or authorization from the Board, (1) aided Roger Schlafly in his efforts to take possession of the Eagle Forum Website and the proprietary mailing and contact lists of Eagle Forum, in attempt to evade the jurisdiction of the Circuit Court of Madison County, Illinois (the "Madison County Court"); (2) caused references to Eagle Forum and its membership to be stripped from the Eagle Forum Website; and (3) formed, and made himself a director of, a Virginia corporation called "Phyllis Schlafly's American Eagles" to compete with Eagle Forum, all while still holding himself out as an officer and director of Eagle Forum. The Motion and the Declaration of John Schlafly attached thereto are consistent with this pattern of misconduct, containing numerous glaring omissions and outright falsehoods, and further demonstrate that there is no limit to what John Schlafly, Plaintiffs' trustee, will do to keep Defendants, the majority directors of Eagle Forum, from obtaining access to the property and assets of Eagle Forum. Stated differently, Plaintiffs and John Schlafly do not have clean hands.

As further discussed below, Plaintiffs' Motion must fail because: (1) Plaintiffs cannot demonstrate any probability of succeeding on the merits; (2) Plaintiffs cannot demonstrate a risk of immediate and irreparable harm; (3) a balancing of the harms clearly favors Defendants, not Plaintiffs; (4) the public interest also favors Defendants; and (5) Plaintiffs have unclean hands.

## BACKGROUND

### I.      Eagle Forum

Eagle Forum is governed by the Bylaws of Eagle Forum (the "Bylaws"), which vest the Board of Directors with "all powers of the organization" and the duty to "protect the name 'Eagle Forum.'" See Verified Complaint, a true and accurate copy of which is attached hereto as **Exhibit 3**, at Ex. B thereto; Affidavit of Anne Schlafly Cori dated October 18, 2016, a true and

SL 2111497.5

accurate copy of which is attached hereto as **Exhibit 4**, at ¶ 8.  Accordingly, Eagle Forum is the owner of the EAGLE FORUM® mark, which was registered at the United States Patent and Trademark Office, Reg. No. 2475317, on August 7, 2001.  See Cori Aff. dated October 18, 2016, **Ex. 3** at ¶ 9; see also Motion to Amend TRO, **Ex. 1** at Ex. B thereto.

In order to further its mission, Eagle Forum registered, maintains and owns the Eagle Forum Website.  See Affidavit of Anne Schlafly Cori dated September 29, 2016, a true and accurate copy of which is attached hereto as **Exhibit 5**, at ¶ 4; see also Affidavit of Elizabeth A. Miller, a true and accurate copy of which is attached hereto as **Exhibit 6**, at ¶¶ 34-38.  That the Eagle Forum Website is owned by Eagle Forum is demonstrated by: (1) minutes of the Eagle Forum Board of Directors, which reference the decision to use the internet to distribute Eagle Forum's message and the subsequent development and maintenance of "our website", many of which are signed by Phyllis Schlafly as President; (2) Eagle Forum financial records showing its payments for the domain registration and hosting server for the Eagle Forum Website; and (3) the fact that, until very recently, Eagle Forum was the registered owner of the Eagle Forum Website.   See Declaration of Anne Schlafly Cori ("Cori Decl."), a true and accurate copy of which is attached hereto as **Exhibit 7**.

It is undisputed that Eagle Forum owns proprietary lists (including an active membership list of 14,000 individuals and e-mail contact list of 41,000 individuals) through which it contacts and carries out its mission to its members, supporters and contacts.  See Miller Aff., **Ex. 6**, at ¶¶ 11, 14-15, 21; Cori Aff. dated September 29, 2016, **Ex. 5** at ¶ 5; Affidavit of Edward R. Martin, Jr., a true and accurate copy of which is attached hereto as **Exhibit 8** at ¶¶ 4, 8.

## II.      Corporate Governance

Though founded by Phyllis Schlafly, Eagle Forum is not, as Plaintiffs suggest, "one of the 'Eagle' entities she founded and controlled."  See Motion, Doc. 7, Ex. 1 at ¶ 30.  Pursuant to

SL 2111497.5

the Bylaws and Illinois law, control of Eagle Forum is properly vested in the Board, which possesses "all powers of the organization." See Ex. 3, at Ex. B. The Board is currently comprised of ten (10) directors, three of which are Phyllis Schlafly's children.

John Schlafly and Andy Schlafly are members of the minority faction of the Board (though John Schlafly has recently been suspended as an officer by the October 20 Order in the State Court Action). See Ex. 2, p. 8. They are aided by Bruce Schlafly, who is Co-Trustee of Eagle Trust Fund, and Roger Schlafly. All four are sons of Phyllis Schlafly. Defendant Cori is a daughter of Phyllis Schlafly and, together with defendants Smith, Adams, McLarty, Kovar and Curry, constitute the majority of the Board. See Ex. 3, ¶ 8.

Ed Martin ("Martin") is the purported President of Eagle Forum (though he has recently been suspended by the October 20 Order in the State Court Action). See Ex. 2, p. 8. Martin is aligned with the minority faction of the Board, who oppose his removal as purported President of Eagle Forum.

### III.   The State Court Action

At an April 11, 2016 meeting, numerous motions and resolutions were passed by the Board, including the immediate removal of Martin. See Ex. 3, ¶¶ 18-49. However, Martin and John Schlafly refused to acknowledge the motions and resolutions passed at the April 11, 2016 meeting, and refused to provide Defendants, as the majority directors of Eagle Forum, with access to Eagle Forum accounts and records, or any other assets and resources belonging to the organization. Id. at ¶¶ 51-71. Defendants, in their capacities as directors and/or officers of Eagle Forum, then filed a Verified Complaint, thereby initiating the State Court Action. See Ex. 2. The Verified Complaint asserted claims against Martin and John Schlafly for breach of fiduciary duty, requested an inventory and accounting of Eagle Forum property, and sought declaratory

SL 2111497.5

and injunctive relief regarding the motions and resolutions passed at the April 11, 2016 meeting. Id. at Count I – VI.

On April 29, 2016, the Circuit Court for Madison County, Illinois (the "Madison County Court"), upon Defendants' motion, entered a temporary restraining order which, in relevant part, restrained Martin and John Schlafly "from preventing the [Defendants] Majority Directors from accessing the Illinois Headquarters and any and all of the property of Eagle Forum 501(c)(4) located thereon or elsewhere" (the "TRO Order").  A true and accurate copy of the TRO Order is attached hereto as **Exhibit 9** and incorporated herein by reference.

John Schlafly did not appeal from or otherwise challenge the entry of the TRO Order.  In fact, John Schlafly and Phyllis Schlafly entered into an "Interim Agreement" with Defendants to facilitate the performance of their and Eagle Forum's obligations under the TRO Order.  See John Schlafly and Phyllis Schlafly e-mails dated May 2, 2016, true and accurate copies of which are attached hereto as **Group Exhibit 10**.  Specifically, John Schlafly and Phyllis Schlafly agreed to "cooperate in good faith and in a timely manner with Defendants' efforts to identify and access the records, membership lists, accounts and other property of Eagle Forum (c)(4), to the extent such property exists…"  Id.  At no time before the Interim Agreement did John Schlafly or Phyllis Schlafly object, nor did they ever suggest Plaintiffs' current contrived position: that Eagle Forum does not possess any proprietary lists.  Id.

Moreover, on May 23, 2016, at the instruction of Phyllis Schlafly and Martin, Eagle Forum asserted counterclaims in the State Court Action against Defendants asserting, among other things, that Defendants had misappropriated and misused Eagle Forum's proprietary lists by sending the same to Ted Cruz's campaign—i.e., the same factual allegation that forms the basis for the instant action.  See Eagle Forum's Answer to the Verified Complaint, Affirmative

6

Defenses, and Counterclaims, a true and accurate copy of which is attached hereto as **Exhibit 11**, at ¶¶ 34-35. Eagle Forum's counterclaims were supported by an affidavit from Martin, which confirmed that "Eagle Forum maintains a **proprietary Contact List of leaders, members, volunteers and followers**," with "contact information (including mailing and email addresses)." See **Ex. 8**, ¶ 8 (emphasis added).

After Defendants' efforts to obtain information about and access to the proprietary lists of Eagle Forum were rebuffed by Martin, John Schlafly and Eagle Forum, Defendants filed their first motion for contempt regarding the proprietary lists of Eagle Forum (including the active membership list of 14,000 individuals and the e-mail contact list of 41,000 individuals) on June 10, 2016. See Motion for Order to Show Cause Why Nominal Defendant Eagle Forum Should Not Be Held in Contempt of Court for Violation of the TRO Order, a true and accurate copy of which is attached hereto as **Exhibit 12**, at ¶ 6. On June 19, 2016, counsel to Eagle Trust Fund entered its appearance in the State Court Action for the express purpose of challenging a subpoena served upon Eagle Trust Fund in the State Court Action. A true and accurate copy of the Motion to Quash or in the Alternative for Protective and Supervisory Order is attached hereto as **Exhibit 13** and incorporated herein by reference.

On August 31, 2016, a hearing was held on Defendants' first motion for contempt regarding the contact and mailing lists of Eagle Forum and Eagle Trust Fund's motion to quash. During that hearing, with counsel for Eagle Trust Fund present, the Madison County Court entered its order directing Eagle Forum to grant Defendants "access to and use of" the active membership list of 14,000 individuals. True and accurate copies of the August 31 Orders are attached hereto as **Group Exhibit 14** and incorporated herein by reference. As with the Interim Agreement, at no time during the August 31 hearing did counsel to Eagle Trust Fund or counsel

SL 2111497.5

to John Schlafly suggest Plaintiffs' current contrived position: that Eagle Forum did not possess *any* proprietary lists.

Notwithstanding the TRO Order, the Interim Agreement or the August 31 Orders, Eagle Forum has refused to allow Defendants access to or use of the active membership list of 14,000 individuals, or any membership list, mailing list, database or other list used by Eagle Forum for mass mailings, emails or robocalls. See Plaintiffs' *Second* Motion for Contempt Related to the Mailing List, a true and accurate copy of which is attached hereto as **Exhibit 15**, at ¶ 5. On September 26, 2016, Defendants filed their *second* motion for contempt regarding the proprietary lists of Eagle Forum. See **Ex. 15**.

## IV.  John Schlafly's Bad Acts and Unclean Hands

On September 26, 2016, without notice to or authorization from the Board, John Schlafly directed Elizabeth (Liz) Miller, an employee of Eagle Trust Fund, to change the registered owner of the Eagle Forum Website from Eagle Forum to Eagle Trust Fund. See Miller Aff, **Ex. 6**, at ¶ 37 and Tab A thereto; see also Motion to Amend TRO, **Ex. 1** at ¶¶ 6-7. John Schlafly stood over Ms. Miller's shoulder as she changed the registered owner of the Eagle Forum Website. Id. at ¶ 40. Upon learning of the change, on September 29, 2016, Defendants immediately filed their Motion to Amend TRO in the State Court Action. See **Ex. 1**.

The misappropriation of the Eagle Forum Website by John Schlafly is not an isolated incident. Rather, it appears to be part of a much larger, calculated effort to sabotage Eagle Forum, in blatant disregard for his fiduciary duties and the authority of the Madison County Court, so that, at the conclusion of the State Court Action, Defendants will be left with only a shell of the once-proud Eagle Forum.

For instance, John Schlafly has applied for a federal service mark in EAGLE COUNCIL and a federal trademark and/or service mark in EAGLE AWARDS, both on behalf of Eagle

SL 2111497.5

Trust Fund. See Ex. 16, at ¶ 17 and Ex. B thereto. Eagle Council is the annual conference of all of the individuals who comprise the entirety of Eagle Forum—unlike other entities founded by Phyllis Schlafly, Eagle Forum is comprised of a membership base, state affiliates, and local chapters—and the Eagle Awards are the permanent honor roll of those who have been recognized as contributing to the causes and successes of Eagle Forum. See Affidavit of Anne Schlafly Cori dated September 12, 2016, a true and accurate copy of which is attached hereto as **Exhibit 16**, at ¶¶ 2-3, 4, and 10; see also Cori Decl., **Ex. 7** at ¶ 7 and Grp. Ex. 7-A thereto. These applications lay claim to the history of Eagle Forum and demonstrate another example of John Schlafly attempting to erase Eagle Forum from the history books.

More disturbing is John Schlafly's role in the creation and operation of Phyllis Schlafly's American Eagles ("PSAE")—a competing social welfare organization with a tax-exempt status under 26 U.S.C. § 501(c)(4)—while purporting to serve as an officer and director of Eagle Forum. See Supplemental Memorandum in Support of Emergency Motion to Amend the Temporary Restraining Order, a true and accurate copy of which is attached hereto as **Exhibit 17**, at ¶¶ 8-10; see also Miller Aff., **Ex. 6** at ¶ 41. Less than two (2) weeks after the TRO Order was entered, documents were filed with the Virginia State Corporation Commission to form PSAE. Id. at ¶ 10 and Ex. F thereto. That PSAE is intended to displace Eagle Forum—to which John Schlafly is duty bound—is evident from a letter soliciting donations that was sent out on behalf of PSAE. Id. at ¶ 11 and Ex. G thereto. The letter employs phrasing intended to confuse members of Eagle Forum, such as: "Our Eagle Leaders," "my American Eagles" and "loyal supporters" who have been fighting "for decades." Id. The founding of PSAE, and the letter soliciting support for PSAE, are another example of John Schlafly's attempts to deprive Eagle Forum of its place in the legacy of Phyllis Schlafly. In light of such conduct, the *initial* change

SL 2111497.5

in registered owner of the Eagle Forum Website, on September 26, 2016, to John Schlafly and Eagle Trust Fund, can only be seen as an outright attempt to misappropriate the assets and resources of Eagle Forum.

After the initial change to the registered owner of the Eagle Forum Website on September 26, 2016, Ms. Miller was under constant pressure from John Schlafly and Roger Schlafly to provide passwords for accessing the Eagle Forum Website and the proprietary lists of Eagle Forum. See Miller Aff., **Ex. 6** at ¶ 26. These attempts were part of a broader scheme to transfer Eagle Forum Property, including the Eagle Forum Website and the proprietary lists of Eagle Forum, beyond the Madison County Court's jurisdiction, even at the risk of a contempt order or imprisonment. Id. at ¶ 27. Ms. Miller did not provide passwords to John Schlafly or Roger Schlafly out of fear they might be used for improper purposes, including altering, destroying or disposing of information. Id. at ¶ 31. Nonetheless, as of October 4, 2016, it appeared that someone had gained access to the hosting website and server of the Eagle Forum Website without input from Ms. Miller, Eagle Forum's web master, who had been repeatedly commended by the Board and Phyllis Schlafly. Id. at ¶ 32; see also Cori Decl., **Ex. 7** at ¶ 7 and Grp. Ex. 7-A thereto.

Expectedly, on or about October 6, 2016, the registered owner of the Eagle Forum Website was changed *again*, this time from John Schlafly and Eagle Trust Fund to Roger Schlafly. See **Ex. 16**, at ¶ 2; see also Cori Aff. dated October 18, 2016, **Ex. 3** at ¶ 6. Further, references to the membership of Eagle Forum were stripped from the content of the Eagle Forum Website. See Supplemental Memorandum regarding Changes to Eagle Forum Website, a true and accurate copy of which is attached hereto as **Exhibit 18** and incorporated herein by reference, at p. 1 and Exs. A and B thereto.

SL 2111497.5

## V.     Plaintiffs' Feigned Surprise

Despite Plaintiffs' assertion that they "recently discovered that two employees of Eagle Trust … were communicating with Defendants," Defendants first filed their supplemental memorandum submitting an affidavit from Elizabeth A. Miller (the "Miller Affidavit") in the State Court Action on October 6, 2016 in response to this *second* change to the registered owner of the Eagle Forum Website.  See Supplemental Memorandum Submitting the Affidavit of Elizabeth A. Miller, a true and accurate copy of which is attached hereto as **Exhibit 19** and incorporated by reference.  John Schlafly, who controls and operates Plaintiffs, has been at all times a party to the State Court Action.  Plaintiffs' attempt to manufacture an "emergency" from communications between the alleged employees of Eagle Trust Fund and Defendants, when they were first aware of such communications as early as October 6, 2016 (nearly a month before Plaintiffs' Motion was filed), is absurd and disingenuous.

On October 18, 2016, due to the ongoing conduct of Martin and John Schlafly, Defendants filed another supplemental memorandum providing an affidavit by Cori and the affidavit of Ann Bensman, the second employee about whom Plaintiffs complain.  A true and accurate copy of the Supplemental Memorandum Submitting the Affidavits of Anne Schlafly Cori and Ann Bensman is attached hereto as **Exhibit 20** and incorporated herein by reference. Thus not only were Plaintiffs aware of communications with Ms. Miller nearly a month before their Motion, they were aware of communications with Ms. Bensman before filing their Complaint and more than two (2) weeks before filing their Motion.  This further dispels any notion that the "recently discovered" communications between "two employees" and Defendants is anything more than a self-serving, contrived "emergency" for the present Motion.

Not only is the timing of Plaintiffs' Motion not emergent, the timing of the Motion (as well as Plaintiffs' Complaint) is strategic.  On October 19, 2016, the same date as the hearing

SL 2111497.5

scheduled on Defendants' Motion to Amend TRO, Plaintiffs filed their Complaint [Doc. No. 1] in a blatant attempt to delay the hearing.   Notwithstanding these delay tactics, the Madison County Court heard arguments on the Motion to Amend TRO and, on October 20, 2016, entered its Order finding that (1) John Schlafly had proven himself unwilling and/or incapable of using his position to serve the best interests of Eagle Forum or to cooperate with Defendants in connection with the management and operation of Eagle Forum; (2) John Schlafly had used his positions as an officer and director of Eagle Forum and custodian of Eagle Forum property and assets to act in violation of the interests of Eagle Forum; and (3) allowing John Schlafly to continue to serve and hold himself out as an officer of Eagle Forum was detrimental to the status quo and the preservation of the assets and resources of Eagle Forum.   See **Ex. 2**, pp. 4-5.

The October 20 Order in the State Court Action effectively transferred management of Eagle Forum and its property and assets from Martin and John Schlafly to Defendants, on a temporary basis.[2]   Id. at p. 6.   On October 24, 2016, Martin and Schlafly filed their petition for interlocutory appeal in the Fifth District Appellate Court of Illinois and, on October 31, 2016, the Fifth District Appellate Court of Illinois dismissed the petition filed by Martin and Schlafly for lack of jurisdiction.   See October 31 Order from Fifth District Appellate Court of Illinois, a true and accurate copy of which is attached hereto as **Exhibit 21** and incorporated herein by reference, at p. 1.

With no reasonable remaining avenue to challenge the October 20 Order in the State Court Action, Plaintiffs, with John Schlafly at the helm, contrived a different "emergency" (also on October 31, 2016) to justify their delay in seeking a temporary restraining order.   This "emergency" is based upon lies.

---

[2] In response to the Madison County Circuit Court's Order, Roger Schlafly immediately shut down the Eagle Forum Website in retaliation.   See Affidavit of Arthur D. Gregg, a true and accurate copy of which is attached hereto as **Exhibit 23** and incorporated herein by reference, at ¶¶ 3-5.

On October 31, 2016, Ms. Bensman and Ms. Miller did indeed meet with John Schlafly and counsel to Eagle Trust Fund.  See Declaration of Elizabeth A. Miller ("Miller Decl."), a true and accurate copy of which is attached hereto as **Exhibit 22** and incorporated herein by reference, at ¶ 9.  However, Plaintiffs' remaining allegations regarding the meeting, set forth in the Motion and the Declaration of John Schlafly, are completely false.  John Schlafly and counsel to Eagle Trust Fund did not "remind" Ms. Miller and Ms. Bensman of "the proprietary nature of the Schlafly Database."  Id. at ¶ 11.  At no point did John Schlafly request that Ms. Miller and Ms. Bensman turn over their passwords for access to Eagle Trust Fund systems.  Id. at ¶ 12.   When John Schlafly provided Ms. Miller and Ms. Bensman with a confidentiality agreement *and* an agreement which sought to restrict their communications with attorneys, Ms. Miller and Ms. Bensman requested "a couple days to think about what is being offered," "to talk to [their] families" and review the agreements which had just been hoisted upon them.  Id. at ¶¶ 14-15.

John Schlafly agreed by stating "that's your choice."   Id.  Counsel to Eagle Trust Fund even gave Ms. Miller and Ms. Bensman the option of contacting him if they had any questions about the agreements or their employment with Eagle Trust Fund.   Id.  Then, on November 3, 2016, citing the "emergency" created by their mischaracterization of the October 31 meeting, Plaintiffs filed their Motion [Doc. No. 7].

## STANDARD OF REVIEW

"A temporary restraining order is an extraordinary and drastic remedy."  Ventimiglia v. St. Louis C.O.G., Inc., No. 4:08CV1199 CDP, 2008 U.S. Dist. LEXIS 99591, at *2 n.1 (E.D. Mo. Dec. 10, 2008).  The "burden of proving" that this extraordinary and drastic relief should be awarded "rests *entirely* on the movant."  Spann, 2006 U.S. Dist. LEXIS 6732, at *3.  The Eighth

Circuit Court of Appeals has set out the factors for determining whether a temporary restraining order or preliminary injunction should issue. See Spann v. Corr. Med. Servs., No. 4:05CV1470 CDP, 2006 U.S. Dist. LEXIS 6732, at *2-3 (E.D. Mo. Feb. 22, 2006) (citing Dataphase Sys. v. C L Sys., 640 F.2d 109, 114 (8th Cir. 1981)). The factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase, 640 F.2d at 114.

## ARGUMENT

### I.   Plaintiffs Cannot Demonstrate Any Probability of Succeeding on the Merits.

Plaintiffs' claims suffer from innumerable issues, which prevent any likelihood whatsoever that they will succeed on the merits. Plaintiffs will fail to succeed on the merits because, among other reasons, (1) Plaintiffs' claimed ownership of the proprietary list and Phyllis Schafly's name, image, and likeness is frustrated, if not wholly defeated, by competing claims for ownership over the property by Eagle Forum and by Plaintiffs' sole reliance on a purported death-bed assignment from Phyllis Schlafly; (2) despite likely having no ownership interest in a purported trade secret, Plaintiffs have failed to state a claim for misappropriation of trade secrets, much less demonstrated that they are likely to succeed on the merits of such a claim; and (3) Plaintiffs' publicity rights claim again relies on the questionable assignment from Phyllis Schlafly and attempts to assert a claim that has never been recognized in Missouri. For these reasons, those that follow, and the many reasons set forth in Defendants' Motion to Dismiss, Plaintiffs' success on their claims is entirely implausible, if not impossible.

### A.   Ownership

As Plaintiffs' Complaint and instant Motion make clear, the issue of ownership is central to Plaintiffs' claims. First, it is worth noting that Plaintiffs' purported ownership over an Eagle-

SL 2111497.5

related trademark is completely absent from their Motion for Temporary Restraining Order.  This absence is telling.  Indeed, by omitting any reference to the purported marks that form the basis of Counts II through IV and Count VII, Plaintiffs tacitly acknowledge that such Counts, and Plaintiffs purported ownership interests asserted therein, are too weak to form the basis of their Motion.  That Plaintiffs could not conceive of a set of facts or circumstances where they might succeed on the merits on their Eagle-related trademark claims is remarkable—particularly because such claims make up more than half of Plaintiffs' Complaint, yet are not mentioned once in the instant Motion.

Plaintiffs next assert an ownership interest in a purported proprietary list; however, Plaintiffs' purported ownership of the list is not at all clear.  Indeed, Eagle Forum has repeatedly represented in the State Court Action (including in the presence of counsel for Plaintiffs) that it owns the same list that Plaintiffs now claim to own.  Indeed, Eagle Forum's ownership of the instant list is supported by an affidavit from Ed Martin, which confirms that "Eagle Forum maintains a proprietary Contact List of leaders, members, volunteers and followers," with "contact information (including mailing and email addresses)."  See **Ex. 8**, ¶ 8.

Further, all of Plaintiffs' ownership claims solely rely upon a questionable, death-bed assignment from Phyllis Schlafly.  Indeed, Plaintiffs claim that the purported assignment occurred on August 31, 2016.  See Motion, Doc. 7, p. 4.  Phyllis Schlafly passed away less than a week later, on September 5, 2016.  See Complaint, Doc. 1, ¶ 2.  John Schlafly, an individual who maintained a relationship of trust to Phyllis Schlafly, was a party to that assignment—an assignment that conferred a substantial benefit to Plaintiffs, organizations over which John Schlafly exercises control.  See Estate of Gross, 840 S.W.2d 253, 257 (Mo. Ct. App. 1992) ("[W]here . . . a party in a relation of trust to another, by active conduct induces that other to

SL 2111497.5

transfer property and thereby received [sic] a substantial benefit, an inference of undue influence arises and a jury issue is made out[.] When supported by substantial evidence, the presumption makes a prima facie case which does not disappear upon the introduction of rebutting testimony but presents an issue for the jury." (internal citations and quotation marks omitted)).  Given John Schlafly's numerous bad acts, some of which have been recounted above and presumably more will come to light through discovery, it is feasible, if not likely, that the purported assignment was a result of his wrongful acts and the exercise of undue influence by him and others.

Accordingly, the issue of ownership, both of the proprietary list and Phyllis Schlafly's name, image, and likeness, is anything but clear.  As such, Plaintiffs' lack of "ownership," and the myriad issues associated therewith, demonstrates that Plaintiffs are unlikely to succeed on the merits.

**B.      Trade Secrets**

Plaintiffs' Motion then relies on their likelihood of success on the Defend Trade Secrets Act ("DTSA") claim.  Plaintiffs' reliance is misplaced.  First, apart from a conclusory allegation that "Defendants have used Plaintiffs' trade secret Schlafly Database after the May 11, 2016 enactment of DTSA," Plaintiffs' Complaint fails to allege a single act by Defendants occurring on or after such date.   Indeed, the only allegation contained in the Complaint concerning "misappropriation" relates to a robocall that occurred sometime in February, 2016.  Accordingly, the DTSA does not apply to the instant action because it went into effect more than two months after any alleged act of Defendants took place.

Moreover, Plaintiffs fail to show that they took adequate steps to protect the purported trade secrets.  See Tension Envelope Corp. v. JBM Envelope Co., No. 14-567-CV-W-FJG, 2015 U.S. Dist. LEXIS 25348, at *20-21 (W.D. Mo. Mar. 3, 2015) (holding that plaintiff failed to protect its purported trade secret because it did not have defendant sign a non-compete

16

agreement).  Here, as is clear from their Motion, Plaintiffs failed to even attempt to have their own employees sign a confidentiality agreement until last week, despite allegedly maintaining the "trade secret" for decades.  Indeed, Plaintiffs have never communicated to their employees that the list is proprietary or confidential. See Miller Decl., **Ex. 22** at ¶ 13.  Moreover, Plaintiffs fail to allege that they permit the use of their purported proprietary list pursuant to a written license agreement or that such license contains any restrictions on the use or disclosure of the list.  Indeed, it appears that Roger Schlafly, an individual unaffiliated with Plaintiffs and over whom Plaintiffs exercise no control, now claims ownership and/or possession of much of the "trade secrets" now asserted by Plaintiffs.

Further, Plaintiffs' citation to a January 12, 2016 email from Phyllis Schlafly to Defendant Anne Schlafly Cori is baffling.  See Motion, Doc. 7, Ex. 3.  Plaintiffs appear to contend that this email relates to the use of the purported "trade secret."  In actuality, this email expressly relates to the endorsement of candidates.  Even was this not the case, at best, this email shows that Plaintiffs made no attempt to restrict the use of the "trade secret" until January 12, 2016, or maybe a few months prior.  Further, the email is completely silent as to any restrictions as to access and, in fact, implies that Defendant Anne Schlafly Cori could access the "trade secret" at her leisure—Phyllis Schafly merely requested that press releases, news items, etc. be approved by her.  Plaintiffs fail to explain how this email, which allows unfettered access to the purported "trade secret" but requests communications be first approved before sending, does anything other than undermine their claim.

Notwithstanding Plaintiffs' failure to show that the list is a "trade secret" which they have made any effort to protect, Plaintiffs similarly fail to provide any evidence that Defendants misappropriated the purported "trade secret," nor have they proffered any evidence that

17

Defendants have improperly acquired or disclosed the list.  See BP Chems., Ltd. v. Jiangsu Sopo Corp. Ltd., 429 F. Supp. 2d 1179, 1190 (E.D. Mo. 2006) ("[U]nder the plain language of [MUTSA], an improper acquisition is a necessary part of the act which constitutes the misappropriation. The two actions, improper acquisition and disclosure, are necessarily linked together in order to amount to a misappropriation."); see also 18 U.S.C. § 1839(5)(A)-(B) ("'[M]isappropriation' means . . . acquisition of a trade secret of another by a person who knows . . . that the trade secret was acquired by improper means; or . . . disclosure or use of a trade secret of another[.]")  Plaintiffs fail to provide any evidence necessary to support the required elements and are therefore unlikely to succeed on the merits of these claims.

## C.      Right of Publicity

Finally, Plaintiffs assert that the temporary restraining order should issue because Plaintiffs are likely to succeed on their right of publicity claim—they are not.  To begin, Plaintiffs' claims to Phyllis Schlafly's rights of publicity are again based upon the August 31, 2016 assignment—the legitimacy of which is disputed.  Similarly, the video to which Plaintiffs refer consists of a heavily edited production, filmed just days before Phyllis Schlafly's death.  The authenticity of this video and Phyllis Schlafly's capacity to make the statements contained therein are subject to dispute.[3]

Moreover, although Plaintiffs frame the issue as a straightforward violation of publicity rights claim, Plaintiffs ask this Court to do what no Missouri court has done: recognize a post-mortem right to publicity.  Indeed, a Missouri appellate court has implied that no such right exists under Missouri law.  See Bear Foot v. Chandler, 965 S.W.2d 386, 389 (Mo. Ct. App.

_____

[3] Indeed, the statements contained therein are contrary to the actions taken by Phyllis Schlafly throughout her life and career.  For example, Phyllis Schlafly refused to copyright the Phyllis Schlafly Report publications because of her desire that the publications be within the public domain and be shared to all current and potential Eagle Forum members.  That the video was made, particularly in light of similar uncharacteristic actions taken by Phyllis Schlafly, raises a number of questions concerning the actions of John Schlafly and others acting in concert with him.

SL 2111497.5

1998) (recognizing that "some states have recognized a right of publicity in . . . the deceased" and thereby implying that no such right exists in Missouri); see also Memphis Dev. Found. v. Factors Etc., Inc., 616 F.2d 956, 958-60 (6th Cir. 1980) (discussing the policy considerations involved in recognizing a post-mortem right of publicity, in the absence of state law recognizing the same, and holding that the policy considerations against recognition far outweigh those in favor).

Accordingly, in light of the disputed "assignment" and no Missouri law recognizing a post-mortem right of publicity, Plaintiffs are not likely to succeed on the merits of this claim.

## II.   Plaintiffs Cannot Demonstrate a Risk of Immediate and Irreparable Harm.

"In the absence of irreparable injury, a party is not entitled to injunctive relief." Tracy v. SSM Cardinal Glennon Children's Hosp., No. 4:15-CV-1513 CAS, 2016 U.S. Dist. LEXIS 89993, at *39 (E.D. Mo. July 12, 2016). "Merely demonstrating the 'possibility of harm' is not enough." Chlorine Inst., Inc. v. Soo Line R.R., 792 F.3d 903, 915 (8th Cir. 2015) (cited case omitted).[4] Plaintiffs are not currently at risk of imminent irreparable harm, from specifically identified conduct undertaken by Defendants; Plaintiffs are simply "concerned." See Motion, p. 1 ("Plaintiffs are concerned that these employees misappropriated trade secrets and are sharing that information with the Defendants, and that one or more Defendants may currently be sharing that information with political campaigns or other unauthorized persons."). Plaintiffs' concerns about the conduct of non-parties, and concerns about what "one or more Defendants may" do in response to such conduct, are speculative, uncertain and removed. See, e.g., Novus Franchising,

---

[4] In order to manufacture the semblance of irreparable harm, Plaintiffs suggest, without citation, that "Defendants' have used Plaintiffs' trade secret Schlafly Database after the May 11, 2016 enactment of the DTSA to garner political and financial support and will continue to use the Schlafly Database if not enjoined by this Court." See Motion, pp. 4-5. Tellingly, Plaintiffs fail to disclose any further specifics or citation. In fact, the Declaration of John Schlafly undercuts this assertion by stating that "[f]rom January 2016 to present, Defendants have continually attempted to gain access to Plaintiffs [sic] trade secret Schlafly Database." Moreover, Defendants' extensive efforts to gain access to the contact and mailing lists of Eagle Forum, through the State Court Action, further dispel this unsubstantiated allegation.

SL 2111497.5

Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) ("In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." (internal quotation marks omitted)); see also S.J.W. ex rel Wilson v. Lee's Summit R-7 Sch. Dist., 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction."). Plaintiffs allegations are "simply too speculative to establish the irreparable harm required for injunctive relief." Tracy v. SSM Cardinal Glennon Children's Hosp., No. 4:15-CV-1513 CAS, 2016 U.S. Dist. LEXIS 89993, at *39 (E.D. Mo. July 12, 2016).

### III.    Balancing of the Harms Clearly Favors Defendants, Not Plaintiffs.

Plaintiffs have not articulated, nor can they, a certain, great and imminent irreparable harm. Novus Franchising, Inc., 725 F.3d at 895. Instead, Plaintiffs rely solely on speculation and conjecture (in certain instances, regarding their own employees who are not before this Court). In so doing, Plaintiffs fail to demonstrate *any* irreparable harm that might befall them should this court properly deny the entry of a temporary restraining order. Where Plaintiffs have demonstrated no immediate and irreparable harm, the "state of balance" between Plaintiffs' speculative harm and the "injury that granting the injunction will inflict" upon Defendants favors denying the entry of a temporary restraining order. Dataphase Sys. v. C L Sys., 640 F.2d 109, 114 (8th Cir. 1981). Entering a temporary restraining order against Defendants is a thinly veiled attempt to place a gag order upon their ability to advocate the conservative mission of Eagle Forum, as directors of Eagle Forum and using Eagle Forum Property, including the Eagle Forum Website and its proprietary lists. Plaintiffs have not demonstrated any irreparable harm, let alone an irreparable harm that outweighs the specific, certain and great harm which entering the temporary restraining order will inflict upon Defendants.

SL 2111497.5

## IV.    Public Interest Favors Defendants, Not Plaintiffs.

Plaintiffs' Motion essentially attempts to restrain the speech of Eagle Forum, indirectly, through an improper assault upon its directors in their individual capacities.  The public interest is not served by this disingenuous maneuvering.  Not only are Plaintiffs attempting to restrain the free speech rights of Defendants in their individual capacity, without any showing of irreparable harm or likelihood of success on the merits, they are trying to restrain the free speech of Eagle Forum, and obtain a declaration of rights in Eagle Forum Property, without naming Eagle Forum as a party to the present action.  This tactic not only implicates (and threatens the trampling of) Defendants' and Eagle Forum's First Amendment Rights, but the Fifth Amendment due process rights of Eagle Forum as well.  Plaintiffs have not (and cannot) demonstrate that the imposition of a temporary restraining order, upon the mere conjecture of speculative harm, serves the public interest.  This fatal shortcoming is underscored by the Constitutional rights of Defendants and Eagle Forum, that Plaintiffs seek to discard through the requested relief and deceptive manner in which they have sought to obtain the same.

## V.    Plaintiffs Do Not Come To This Court With Clean Hands.

Plaintiffs' motion for temporary restraining order should also be denied because Plaintiffs do not come into the court with clean hands.  According to the United States Supreme Court, "[i]t is one of the fundamental principles upon which equity jurisprudence is founded that before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands." Keystone Driller Co. v. General Excavator co., 290 U.S. 240, 244 (1933) (internal quotation marks and citation omitted).  Therefore, the inequitable activity by John Schlafly and Plaintiffs, with John Schlafly at the helm, should find its action for a temporary restraining order—regarding Eagle Forum

SL 2111497.5

Property—barred by its own misconduct regarding the same subject matter. See Mahaffy v. City of Woodson Terrace, 609 S.W.2d 233, 238 (Mo. Ct. App. 1980).

John Schlafly and those acting in active concert and participation with him, including Plaintiffs, have (1) aided Roger Schlafly in his efforts to take possession of the Eagle Forum Website and the proprietary mailing and contact lists of Eagle Forum; (2) caused references to Eagle Forum and its membership to be stripped from the Eagle Forum Website; and (3) formed, and made John Schlafly a director of, a Virginia corporation called "Phyllis Schlafly's American Eagles" to compete with Eagle Forum, all while still holding himself out as a director of Eagle Forum. See **Exs. 1, 6, 17 and 18**. To the extent that John Schlafly, through the guise of Plaintiffs, now seeks to impose drastic and extraordinary equitable relief regarding Eagle Forum Property upon Defendants, his past bad acts to misappropriate and sequester Eagle Forum Property *from* Defendants, throughout the State Court Action, serve as an outright bar to the entry of a temporary restraining order.

Accordingly, parties such as Plaintiffs, helmed by John Schlafly, who have undertaken bad acts and engaged in inequitable activity regarding the same matter subject matter—Eagle Forum Property—over which it now seeks drastic and extraordinary relief, should be outright barred from obtaining such relief.

## CONCLUSION

In light of the foregoing arguments and authorities, Plaintiffs' Motion should be denied.[5]

---

[5] Defendants vehemently assert that the imposition of a temporary restraining order is improper because Plaintiffs have not demonstrated a right to such relief under any set of facts. Nonetheless, if this Court found the entry of a temporary restraining order to be proper, the bond to secure Defendants' damages, should they be found to have been wrongfully enjoined, must be substantial. Fed. R. Civ. P. 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Rule 65(c) (emphasis added). Defendants are each directors and/or officers of Eagle Forum. Prohibiting Defendants from accessing or using Eagle Forum Property is tantamount to prohibiting them from fulfilling their fiduciary duties and obligations to Eagle Forum. Such prohibition could, in addition to the substantial

SL 2111497.5

Respectfully submitted,

**SPENCER FANE LLP**

DATED: November 7th, 2016

By: /s/ Erik O. Solverud
    Erik O. Solverud, #44291MO
    Megan D. Meadows, #60669MO
    Eric D. Block, #65789MO
    Arthur D. Gregg, #67098MO
    Richard D. Lageson, #26674MO
    1 N. Brentwood Blvd., Suite 1000
    St. Louis, MO 63105
    Telephone (314) 863-7733
    Facsimile (314) 862-4656
    esolverud@spencerfane.com
    mmeadows@spencerfane.com
    eblock@spencerfane.com
    agregg@spencerfane.com
    rlageson@spencerfane.com

*Attorneys for Defendants Anne Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of November, 2016, a true and correct copy of the foregoing document was electronically filed via the Court's electronic filing system, which will send notice of electronic filing to all registered attorneys of record.

/s/ Erik O. Solverud

---

attorney's fees and costs incurred by Defendants in opposing a temporary restraining order, also expose Defendants to liability from other directors, officers and members of Eagle Forum.  Because the damage to Defendants is already considerable and potentially subject to increase exponentially, Plaintiffs' bond—to afford any security to Defendants at all—must be similarly substantial.

SL 2111497.5