UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PHYLLIS SCHLAFLY REVOCABLE TRUST, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:16CV01631 JAR |
| ANNE CORI, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs Phyllis Schlafly Revocable Trust ("Trust") and Eagle Trust Fund's ("Eagle Trust") (collectively, "Plaintiffs") emergency motion for temporary restraining order ("TRO") and preliminary injunction, filed with the Court on November 3, 2016. (Doc. No. 7) On November 7, 2016, Defendants Ann Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar and Shirley Curry ("Defendants") filed a response in opposition to the motion, and the Court held oral argument. Plaintiffs thereafter filed a reply. (Doc. No. 26) For the following reasons, Plaintiffs' motion will be denied.

**I. BACKGROUND**

The procedural history of this case is complex, as the parties (generally) are litigating two other cases in the geographic area. In one of these cases, an Illinois State court entered a TRO in April 2016 restraining Edward Martin, John Schlafly, and Eagle Forum (non-parties in this action) from interfering with Defendants' access to any and all property of Eagle Forum, an organization that competes with Plaintiffs. *Cori v. Martin*, 2016MR000111 (Ill. Cir. Ct. Oct. 20, 2016); (Doc. No. 7-6 at 1–2). On October 20, 2016, the Illinois court amended the TRO, and afforded Defendants herein, in their capacities as the majority members of the Eagle Forum Board of

Directors, temporary sole control and possession over all Eagle Forum property, including a list of 14,000 active Eagle Forum members and 41,000 email addresses, the Eagle Forum domain (eagleforum.org) and email, and financial and deposit accounts. (Doc. No. 7-6 at 6).[1]

Meanwhile, on October 19, 2016, Plaintiffs filed suit in this Court, asserting causes of action for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836; the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. § 417.455 *et. seq.*; the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a); declaratory judgment under 28 U.S.C. § 2201; and claims under Missouri common law. (Doc. No. 1). Underlying each of Plaintiffs' claims is an allegation that one or more Defendants, or persons acting on behalf of Defendants, have impermissibly accessed, misappropriated, and used Plaintiffs' intellectual property.

The following relevant facts are set forth in Plaintiffs' complaint and emergency motion for temporary restraining order and preliminary injunction. (Doc. Nos. 1, 7) According to Plaintiffs, two Trust employees, Elizabeth Miller and Ann Bensman, have misappropriated Plaintiffs' trade secrets and are sharing them with Defendants. Plaintiffs assert that Defendants' actions threaten the proprietary nature and confidentiality of a database of contact information (the "Database") which Defendants use for direct mail and fundraising efforts promoting causes supported by Phyllis Schlafly ("Mrs. Schlafly"). Plaintiffs assert that, in the Illinois case, Miller and Bensman have misrepresented themselves as employees of, Missouri Eagle Forum. Plaintiffs further claim that, on October 31, 2016, they directed Miller and Bensman to report to a different office, held a meeting at which they were reminded of the proprietary nature of the Database, directed to return their passwords, and asked to sign an acknowledgement of the confidentiality of the information. Plaintiffs also allege that Miller and Bensman refused, and they have neither returned to work nor

---

[1] Another similar case is pending in the U.S. District Court for the Southern District of Illinois. *See Cori v. Phyllis Schlafly's American Eagles*, 3:16CV00946-DRH-RJD.

relinquished their passwords. Plaintiffs contend that partial lists of the Database were created when these employees had access to the Database, and Plaintiffs express concern that Miller and Bensman may have copied these partial lists.

On November 3, 2016, Plaintiffs filed the instant emergency motion for temporary restraining order and preliminary injunction. (Doc. No. 7) In their motion, Plaintiffs ask that the Court enjoin Defendants from using the likeness and image of Phyllis Schlafly; enjoin Defendants from distributing, using, or disseminating the Database and any other confidential trade secrets of Mrs. Schlafly; and require Defendants to list and return confidential and proprietary trade secrets of Mrs. Schlafly, including the Database. In response, Defendants argue that the intellectual property at issue belongs to Eagle Forum, and is already subject to the Illinois court's TRO.

## II. DISCUSSION

In determining whether to issue a TRO, the Court must consider the following four factors: (1) the threat of irreparable harm to the movants; (2) the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movants will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation omitted). The party requesting injunctive relief bears the "complete burden" of proving that an injunction should be granted. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

A. <u>Likelihood of Success on the Merits</u>

The Court concludes that Plaintiffs have not met their burden of establishing a reasonable likelihood of success on the merits of their claims. In Count I of the Complaint, Plaintiffs bring a trade secret misappropriation claim under the Defend Trade Secrets Act of 2016 ("DTSA"), which

creates a private cause of action in favor of the "owner of a trade secret that is misappropriated ... if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). In Count V, Plaintiffs bring a trade secret misappropriation claim under the Missouri Uniform Trade Secrets Act ("MUTSA"), V.A.M.S. § 417.450 et seq. The elements of Plaintiffs' trade secret misappropriation claims under the DTSA and MUTSA are essentially the same. In order to prevail on a claim for misappropriation of a trade secret, a plaintiff must show: (1) the existence of a protectable trade secret; (2) misappropriation of those trade secrets by the defendant; and (3) damages.

A trade secret is defined by the DTSA and MUTSA as "information," including "compilations," that meets two qualifications: (a) the owner thereof has taken reasonable measures to keep such information secret; and (b) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from its disclosure or use. See 18 U.S.C. § 1839(3); V.A.M.S. § 417.453(4). A misappropriation occurs when: (1) a person acquires the trade secret while knowing or having reason to know that he or she is doing so by improper means, (2) a person who has acquired or derived knowledge of the trade secret discloses it without the owner's consent, or (3) when a person who has acquired or derived knowledge of the trade secret uses it without the owner's consent. *See Mission Measurement Corp. v. Blackbaud, Inc.*, No. 16 C 6003, 2016 WL 6277496, at *4 (N.D. Ill. Oct. 27, 2016) (quoting *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15CV211, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (citing 18 U.S.C. § 1839(5)); *Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 322 (Mo. 2014).

In Counts II, III, and IV of the Complaint, Plaintiffs bring claims for trademark infringement, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. §§

1114, 1125. To prevail on a claim of trademark infringement under 15 U.S.C. § 1114(1), a plaintiff must establish that (1) it owns a valid, protectable mark, (2) that defendants have used the mark in commerce without the plaintiff's consent; and (3) that there is a likelihood of confusion between the plaintiff's mark and the defendant's mark. 15 U.S.C. § 1114(1); *B & B Hardware, Inc. v. Hargis Indus., Inc.,* 569 F.3d 383, 389 (8th Cir. 2009); *JDR Indus., Inc. v. McDowell*, 121 F. Supp. 3d 872, 882 (D. Neb. 2015). A claim of unfair competition under 15 U.S.C. § 1125(a)(1) has essentially the same elements. 15 U.S.C. § 1125(a)(1); *Davis v. Walt Disney Co.,* 430 F.3d 901, 903 (8th Cir. 2005).

In order to prevail on any of these claims, Plaintiffs have to establish the threshold issue of ownership of a protected trade secret or trademark. Here, there are significant factual disputes not only as to the ownership of the Database, but also as to its content.

In their emergency motion and during arguments made on the record, Plaintiffs assert the Trust owns the Database and other proprietary information pursuant to an Assignment of Rights executed August 31, 2016, which assigned and transferred all of Mrs. Schlafly's intellectual property and intangible literary property rights to the Trust. (Doc. No. 7-2 at 1). Plaintiffs also assert on the record and in their reply that the Database is not the list of 14,000 active members of the Eagle Forum or 41,000 email contacts maintained by the Eagle Forum; rather, it is an entirely separate list of 400,000 entries collected by Mrs. Schlafly and owned by the Trust. Defendants counter by arguing that the Eagle Forum owns the Database, and that the present lawsuit concerns the property rights and interests of Eagle Forum. Defendants further contend that Plaintiffs' basis for their ownership of the Database, an Assignment of Rights executed by Mrs. Schlafly, may be a result of undue influence.

Given the lack of clarity and disputed facts surrounding the ownership and content of the Database, the Court finds that Plaintiffs cannot establish a likelihood of success on a claim under

the DTSA or MUTSA.

Although Plaintiffs focused primarily on the Database during oral argument, they have also requested that the Court enjoin Defendants from using Mrs. Schlafly's name, image, and likeness. Plaintiffs assert that prior to Mrs. Schlafly's death, she revoked all previously issued licenses to the use of her name, image, and likeness, and assigned ownership of them to the Trust. Plaintiffs further allege that, despite the revocation and subsequent assignment, Defendants have continued to use Mrs. Schlafly's name, image, and likeness on the Eagle Forum's website, which Plaintiffs characterize as a competing organization that is collecting and using funds "to support contrary positions[.]" (Doc. No. 7 at 9). In response, Defendants argue that Plaintiffs' claims to Mrs. Schlafly's right of publicity are based on the Assignment of Rights document, the legitimacy of which is in dispute. Defendants also contend that Missouri courts have not recognized a post-mortem right to publicity. Plaintiffs reply that although Missouri has not yet addressed whether such a right exists, twenty-three of the twenty-five states that have addressed the issue recognize a post-mortem right to publicity.

The Court need not address whether a post-mortem right to publicity exists at this juncture. Even assuming, for purposes of this analysis, that a post-mortem right of publicity exists in Missouri, it is unclear on the record who currently has authority to control and use Mrs. Schlafly's name, image, and likeness. The Court at this time is therefore unconvinced of Plaintiffs' likelihood of success on the merits. Moreover, the Illinois State Case's amended TRO allowed Defendants to assume "temporary sole control and possession over all Eagle Forum property[.]" It further installed Anne Cori as the Acting Chairman and Eunie Smith as Acting President of the Eagle Forum. Thus, the actions that seem to be at the heart of Plaintiffs' right of publicity claim appear to be sanctioned by the Illinois court's amended TRO.

For these reasons, the Court concludes Plaintiffs have failed to show a likelihood of success

on their claims at this juncture. The Court thus declines to issue a TRO that would appear to disturb or undo the status quo currently established by the amended TRO in the Illinois State Case.

    B. Threat of Immediate and Irreparable Harm

The Court also finds that Plaintiffs have failed to show a threat of irreparable harm required for the issuance of a TRO. "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (citation omitted). In this case, Plaintiffs are concerned that two Eagle Trust employees may have copied all or part of the Database from a secure computer and if so, that they may be sharing this information with Defendants.[2] Put simply, the Court finds the alleged harm in this case to be too speculative. *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction."). Plaintiffs have not presented enough evidence in their brief or on the record to establish that the harm is so "certain and great and of such imminence" as to require injunctive relief. *Novus Franchising*, 725 F.3d at 895. Instead, Plaintiffs ask the Court to enjoin Defendants from accessing a database (the content and ownership of which is in dispute), and is also, per Defendants, the subject of the TRO issued in the Illinois State Case, which grants Defendants the access rights Plaintiffs are now asking this Court to enjoin.

Plaintiffs also claim that Defendants' use of Mrs. Schlafly's name, image, and likeness will result in irreparable harm because Defendants are collecting funds in Mrs. Schlafly's name and using them to support positions contrary to ones Mrs. Schlafly's supported. Plaintiffs assert in their emergency motion that Defendants actions tarnish Mrs. Schlafly's memory and reputation. In their reply, Plaintiffs convey their fear that following the election, "Defendants will improperly utilize

---

[2] The parties dispute, and the record does not conclusively show, by whom Ms. Miller and Ms. Bensman were employed – Eagle Trust or Eagle Forum.

Mrs. Schlafly's name, image, and likeness to endorse positions that are contrary to Mrs. Schlafly's values." (Doc. No. 26 at 5). As to this claim, the Court also finds that the risk of irreparable harm is too speculative. Plaintiffs' briefs convey a fear that Defendants' conduct will cause harm at a later time, but they do not identify any real evidence of immediate and irreparable harm for the Court to consider. Instead, the briefs discuss what might occur if Defendants act improperly. The Court thus finds that the possibility of harm to Mrs. Schlafly's brand and image is far too speculative to justify the issuance of a TRO.

The Court further notes that while Plaintiffs filed this instant action on October 19, 2016, they did not file their emergency motion for TRO and preliminary injunction until November 3, 2016. This fact alone is not dispositive; however, Plaintiffs' delay in filing their emergency motion further supports the Court's finding that there is no risk of immediate harm. Therefore, the issuance of a TRO is not justified. In sum, the Court finds no threat of immediate and irreparable harm to Plaintiffs.

C. Remaining *Dataphase* Factors

The Court will consider next the two remaining *Dataphase* factors: the balance of harms and the public interest. In balancing the harms caused by the Court's decision not to issue a TRO, the Court is mindful of Plaintiffs' arguments regarding the protection of one's right of publicity and trade secrets. The Court, however, is also mindful of the harm of ordering emergency injunctive relief where, as here, significant factual disputes exist in issues central to the parties' request of and response to a TRO. Although it is in the public's interest to ensure that confidential and proprietary property is so maintained, that interest would not be served by a TRO when the ownership of that property is in significant dispute.

The Court also notes that the TRO issued by the Illinois State court grants Defendants sole control over a database of information which, given the significant factual disputes in this case, may

be identical or substantially similar to the Database. Even if the database contemplated by the TRO in the Illinois State Case is not identical or substantially similar to the Database, the information on these databases may overlap. The Court also notes that the Illinois State court explicitly states in several instances that its original and amended TROs are intended to preserve the status quo. A TRO issued by this Court would appear to be in direct conflict with the Illinois State court's order.

## III. CONCLUSION

After careful consideration of the *Dataphase* factors, the Court concludes Plaintiffs have not met their burden of showing that a temporary restraining order should be issued.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' emergency motion for temporary restraining order and preliminary injunction (Doc. No. 7) is **DENIED**.

Dated this 9th day of November, 2016.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE