# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PHYLLIS SCHLAFLY REVOCABLE TRUST, et al., ) ) ) Plaintiffs, ) ) vs. ) ) ANNE CORI, et al., ) ) Defendants. ) ) | Case No. 4:16-cv-01631-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs Phyllis Schlafly Revocable Trust and Eagle Trust Fund's Motion for Leave to Substitute Corrected Exhibit and Motion to Seal (Doc. 25), Motion for Leave to File Amended Complaint (Doc. 45), and Second Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 46). Also before the Court are Defendants Anne Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry's (collectively, "Defendants") Motion to Dismiss or, in the Alternative, for Stay (Doc. 16). For the following reasons, the Court will grant Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 45), deny their Second Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 46), and grant in part and deny in part their Motion for Leave to Substitute Corrected Exhibit and Motion to Seal (Doc. 25). Moreover, the Court will deny as moot Defendants' Motion to Dismiss or, in the Alternative, for Stay (Doc. 16). Finally, the Court will direct the parties to show cause, in writing and within thirty (30) days, why this proceeding should not be stayed pending the resolution of two other lawsuits that could resolve potentially dispositive issues in this case.

## I. Background and Facts

The People and Entities Involved

Phyllis Schlafly was a conservative political activist, and she founded several non-profit entities to further her causes. Her non-profit entities included the Phyllis Schlafly Revocable Trust ("the Trust"), the Eagle Trust Fund, the Eagle Forum, the Eagle Forum Education and Legal Defense Fund ("Education and Legal Defense Fund"), and Phyllis Schlafly's American Eagles ("PSAE"). John Schlafly, Bruce Schlafly, and Anne Cori are three of Phyllis Schlafly's adult children; they have held leadership positions with her non-profit entities and have been active in furthering her causes (Docs. 1 at ¶¶2-8, 33; 45.2 at ¶¶1-5).

The Eagle Forum is a non-profit corporation organized under the laws of Illinois, and it is tax-exempt under 26 U.S.C. § 501(c)(4) (Docs. 7.7 at 9; 45.2 at ¶12). Phyllis Schlafly formed the Eagle Forum to advance her conservative activism on a national level, and to further the notion that citizen-volunteers, through rigorous advocacy, can influence government policies on federal, state, and local levels (Doc. 7.7 at 9).

Phyllis Schlafly formed the Trust in 1997 (Docs. 1 at ¶¶2-3; 49.6 at 3). It is undisputed that, after Phyllis Schlafly's death, John Schlafly became the sole trustee of the Trust; and as such, he is authorized to bring this suit on its behalf (Docs. 1 at ¶2; 45.2 at ¶1; 49.6 at 5). According to Plaintiffs, Phyllis Schlafly transferred her personal intellectual property to the Trust during her lifetime; and any of her intellectual property rights that were not transferred to the Trust during her lifetime poured into the Trust according to the terms of her last will and testament (Doc. 45.2 at ¶1).

The Eagle Trust Fund publishes a newsletter titled The Phyllis Schlafly Report, conducts research relating to political science and national defense, distributes educational materials, and

supports other goals in its trustees' discretion (Docs. 1 at ¶4; 45.2 at ¶2). John Schlafly and Bruce Schlafly are successor trustees of the Eagle Trust Fund, and its sole members (Doc. 45.2 at ¶6). According to Plaintiffs, the Eagle Trust Fund, as amended, is the "custodian" of much of Phyllis Schlafly's intangible personal property (Docs. 1at ¶5; 45.2 at ¶2, 56, 154, 216). The Education and Legal Defense Fund is organized under Illinois law, and is tax-exempt under 26 U.S.C. § 501(c)(3) (Doc. 45.2 at ¶3).

Ed Martin was President of the Eagle Forum until April 11, 2016; he is currently President of the Education and Legal Defense Fund (Doc. 22.3 at 6). According to Plaintiffs, before her death, Phyllis Schlafly "personally endorsed" Ed Martin to serve as President of the Eagle Forum, the Education and Legal Defense Fund, and PSAE, a Virginia non-profit entity led by former Eagle Forum directors and officers who are loyal to John Schlafly and Ed Martin (Doc. 45.2 at 4).

In the months leading up to Phyllis Schlafly's death, John Schlafly and Anne Cori disagreed as to the positions they believed Phyllis Schlafly and the Eagle Forum should have taken on certain political issues, most notably the issue of which candidate to endorse in the 2016 U.S. Republican Presidential Primary (Docs. 7 at 5-6; 45.2 at ¶¶38-39, 117). John Schlafly is loyal to Ed Martin; and Anne Cori has aligned with her co-Defendants. Collectively, Defendants represent a majority of the members of the Eagle Forum Board of Directors ("the Eagle Forum Board").

Events Leading up to this Case

On April 11, 2016, Defendants, as majority members of the Eagle Forum Board, voted to remove Ed Martin as President of the Eagle Forum; according to Plaintiffs, Defendants also

voted to remove John Schlafly as Director and Treasurer of the Eagle Forum (Docs. 22.3 at 12-13; 45.2 at ¶6).

On April 22, 2016, Phyllis Schlafly executed an Amendment to and Restatement of the Trust ("April 22 Restatement") (Docs. 7.7 at 16-44; 49.6 at 82-110). As relevant, the April 22 Restatement removed Anne Cori as a co-trustee of the Trust, leaving only Phyllis Schlafly and John Schlafly as its co-trustees (Doc. 49.6 at 5, 104).

Also on April 22, 2016, Defendants herein, in their capacities as majority members of the Eagle Forum Board of Directors, filed an action against Ed Martin and John Schlafly in the Circuit Court for the Third Judicial Circuit in Madison County, Illinois, see Cori v. Martin, No. 2016MR000111 (Ill. Cir. Ct. Oct. 20, 2016) ("the Madison County case") (Doc. 22.3). In the Madison County case, Defendants herein seek, among other things, a declaration that their April 11, 2016 vote was effective to oust Ed Martin from the Eagle Forum Board. On April 29, 2016, the Madison County Court entered a TRO that, inter alia, required John Schlafly and Ed Martin to give Defendants access to the Eagle Forum headquarters and all Eagle Forum property (Doc. 7.10 at 40-42). On May 26, 2016, Phyllis Schlafly executed a First Amendment to the April 22 Restatement ("May 26 Amendment") (Doc. 49.6 at 111-117).

On August 24, 2016, Defendants filed an action, on behalf of the Eagle Forum, against PSAE in the U.S. District Court for the Southern District of Illinois ("the SDIL case"), see Cori v. Phyllis Schlafly's American Eagles, 3:16CV946-DRH-RJD (S.D. Ill.). In the SDIL case, Defendants herein, in their capacities as the majority members of the Eagle Forum Board, allege that PSAE has converted its assets; infringed upon its service marks, tradenames, and trademarks; engaged in unfair competition; diluted its brands, names, and marks; and committed cyberpiracy (Amended Complaint (Doc. 40) in the SDIL case).

4

On August 31, 2016, Phyllis Schlafly executed a Second Amendment to the April 22 Restatement ("August 31 Amendment") (Docs. 49.6 at 118-122). As relevant, the August 31 Amendment provides as follows:

> All of [Phyllis Schlafly's] copyrights, moral rights, intellectual property rights, and trademark rights, whether statutory or common law, including the use of eagle emblems in connection with her work, [her] post mortem right of publicity, including [her] interest in her name, persona, and likeness, the right to license such rights in all media now known and hereafter invented, and right to take any and all actions necessary or desirable to protect and enforce such interests, shall be given to the Trustees of the PHYLLIS SCHLAFLY ROYALTY TRUST II, created by a Trust Agreement dated August 31, 2016, to be held and administered as a part of such trust estate.

(Id. at 118-119).

On October 20, 2016, the Madison County court entered an amended TRO, suspending John Schlafly from the Eagle Forum Board, enjoining him from accessing Eagle Forum property, and granting Defendants temporary sole control of and possession over all Eagle Forum property ("Madison County TRO"). More specifically, the Madison County TRO provides as follows:

1. *[Defendants herein], in their capacities as the majority of the Eagle Forum Board of Directors, shall immediately assume temporary sole control and possession over all Eagle Forum property*, including but not limited to (1) the eagleforum.org domain name and website; (2) all email addresses using the domain name "@eagleforum.org;" . . . (5) the list of 14,000 active Eagle Forum members and the contact list of 41,000 emails used by Eagle Forum for mass emails, in a useable electronic format, and any other lists that had been used in connection with the day-to-day management and operation of Eagle Forum prior to April 11, 2016 . . . .

2. All Eagle Forum Property shall be used solely in connection with the business and operations of Eagle Forum in the same manner in which it had been used immediately prior to the April 11, 2016 Eagle Forum Board Meeting, and in accordance with the parties' fiduciary duties and obligations as officers and/or directors of Eagle Forum. The parties are specifically enjoined from using any Eagle Forum Property to advocate any position with respect to this litigation or seek to gain an advantage therein.

3. *Prior to April 11, 2016, Eagle Forum had an established pattern of business dealings with [the Eagle Trust Fund] and [the Education and Legal Defense*

> *Fund], including the allocation of monies received from donors, members and supporters amongst the three entities. Eagle Forum shall continue to transact business with these other entities consistent with their prior course of dealings to the extent such transactions do not violate applicable Illinois or Federal laws, the Orders of this Court, or the Eagle Forum Bylaws.* In the event of a dispute arising between Eagle Forum and either of the other two entities regarding the proper allocation of monies received by Eagle Forum from donors, members and supporters, such funds shall be held in escrow pending further order of this Court.

4. Within forty-eight (48) hours of this Order, [Ed Martin and John Schlafly] and all those acting in active concert or participation with them, including Roger Schlafly, shall complete the transfer of all Eagle Forum Property to Plaintiffs, and/or cooperate in good faith with [the efforts of Defendants herein] to assume immediate control and possession of all Eagle Forum Property.

5. Except as set forth herein and for carrying out the transactions contemplated by this Order, [Ed Martin and John Schlafly] and all those acting in active concert or participation with them, including Roger Schlafly, are hereby immediately enjoined and restrained from using, accessing, controlling, transferring, copying, destroying or modifying any Eagle Forum Property without [prior written consent from Defendants herein].

6. [Ed Martin] is hereby suspended from his office and all of his duties as President of Eagle Forum . . . and is enjoined and restrained from conducting any business on behalf of Eagle Forum or holding himself out as the President of Eagle Forum to any third party.

. . .

9. [John Schlafly] is hereby suspended from his office and all of his duties as President of Eagle Forum . . . and is enjoined and restrained from conducting any business on behalf of Eagle Forum or holding himself out as the President of Eagle Forum to any third party.

. . .

17. [T]his Order shall be binding upon the parties to this action, their officers, agents, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this Order. The parties shall provide a copy of this Order to their officers, agents, employees and attorneys, as well as to any individual that has access to and/or control, possession or custody of Eagle Forum Property.

(Doc. 22.2 at 6-11) (emphasis added).

The Instant Action

On October 19, 2016, or the day before the Madison County court amended its TRO, John Schlafly and Ed Martin initiated this action on behalf of the Trust and the Eagle Trust Fund (Doc. 1). In their original complaint, Plaintiffs assert eight counts. Count I alleges a violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (Id. at ¶¶140-165). In Counts II, III, and IV, Plaintiffs bring claims of trademark infringement, unfair competition, trademark dilution, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114(l) and 1125(a) (Id. at ¶¶166-199). Count V asserts a claim under the Missouri Uniform Trade Secrets Act ("MUTSA"), Mo. Rev. Stat. § 417.450 et seq. (Id. at ¶¶200-222). Notably, each of Counts I through V is based, at least in part, on an allegation that one or more Defendants, or persons acting on behalf or Defendants, impermissibly accessed, misappropriated, or used Plaintiffs' intellectual property, i.e., a database of contact information used for direct-mail and fundraising efforts to promote causes supported by Phyllis Schlafly ("the database") (Id. at ¶¶140-222). In Count VI, Plaintiffs allege that, by using Phyllis Schlafly's image and likeness, Defendants have violated their interest in her post-mortem right to publicity under Missouri common law (Id. at ¶¶223-235). Count VII asserts a claim of trademark infringement and unfair competition under Missouri common law (Id. at ¶¶236-243). In Count VIII, Plaintiffs seek an entry of declaratory judgment that "Defendants have no legal rights, title, or interests in [the database], derivative mailing lists, donor list, data subsets, eagleforum.org, or PhyllisSchlafly.com, and related websites" (Id. at ¶¶244-247).

On November 3, 2016, Plaintiffs filed their first motion for a TRO and preliminary injunction (Doc. 7). In that motion, Plaintiffs asked the Court to enjoin Defendants from using Phyllis Schlafly's likeness or image; to enjoin them from distributing, using, or disseminating the

database and any other confidential trade secrets belonging to Phyllis Schlafly; and to require them to list and return Phyllis Schlafly's confidential and proprietary trade secrets, including the database (Id.). In response, Defendants argued that the trade secrets at issue belonged to Eagle Forum, and that the trade secrets were already subject to the Madison County TRO (Doc. 22). Defendants also moved to dismiss the original complaint, arguing, inter alia, that Plaintiffs had failed to join a necessary party, the Eagle Forum; that the original complaint failed to state any viable claims; and that the Court should dismiss or stay this case pursuant to the Colorado River abstention doctrine (Docs. 16-17, 38 (citing Colorado River v. Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976)). Plaintiffs opposed the motion to dismiss (Doc. 34).

On November 9, 2016, after holding a hearing, the Court denied Plaintiffs' first motion for a TRO and preliminary injunction (Doc. 27). More specifically, the Court concluded that Plaintiffs had not shown a reasonable likelihood of success on the merits, as there remained significant factual disputes as to who owned the database and Phyllis Schlafly's name, image, and likeness (Id. at 3-7). The Court further reasoned that Plaintiffs had not shown a threat of immediate and irreparable harm because the database fell within the scope of the Madison County TRO, and any potential harm to Phyllis Schlafly's name, image, or likeness was too speculative (Id. at 7-8). In light of the significant and unresolved factual disputes and the clear terms of the Madison County TRO, the Court denied Plaintiffs' first TRO motion (Id. at 9).

Plaintiffs now move to substitute and to seal an exhibit they submitted in support of their first TRO motion (Doc. 25), and to amend their complaint (Doc. 45); they have also filed a second TRO motion (Doc. 46). Defendants oppose each of the motions (Docs. 28, 49-50, 54).

Other Events That Have Transpired During the Pendency of This Action

On March 20, 2017, Anne Cori filed a Petition in the Probate Division of the Circuit Court for the County of St. Louis, Missouri, seeking to set aside the May 26 and August 31 Amendments to the Trust ("St. Louis Probate Case") (Doc. 49.6). In the St. Louis Probate Case, Cori alleges that, when Phyllis Schlafly signed the May 26 and August 31 Amendments, she lacked testamentary capacity and was subject to undue influence by John Schlafly and others (Doc. 49.6 at 9-11). She also alleges that John Schlafly has breached his fiduciary duties as sole trustee of the Trust by using Trust assets to pay legal fees he has incurred in the Madison County case, the SDIL case, and/or this case (Id. at 11-12). In her Petition, Anne Cori does not attack the enforceability of the April 22 Amendment to the Trust.

### A. Plaintiffs' Motion for Leave to File Amended Complaint

Plaintiffs' seek leave to amend their complaint to add the Education and Legal Defense Fund as a plaintiff; to name the Eagle Forum as a defendant; to allege additional facts, some of which have allegedly occurred since they filed their original complaint; and to add four new claims (Docs. 45.1, 45.2). In addition to the counts set forth in their original complaint, Plaintiffs' proposed first amended complaint would add the following substantive claims. In Count IX, the Trust Fund and the Education and Legal Defense Fund allege that Defendants have tortiously interfered with their business expectancies under Missouri law by altering eagleforum.org in a manner that has disrupted donations to the Eagle Trust Fund and the Education and Legal Defense Fund, in violation of the Madison County TRO; and by interfering with Plaintiffs' mail (Id. at ¶¶259-279). In Counts X and XI, the Eagle Trust Fund asserts claims of trademark infringement, trademark dilution, and false designation of origin, in violation of the Lanham Act, based on Defendants' publication of a new magazine, titled The Eagle Forum

Report (Id. at ¶¶280-305). Finally, in Count XII, the Eagle Trust Fund asserts that Defendants have engaged in unfair competition, in violation of Illinois statutory and common law, by publishing and distributing The Eagle Forum Report (Id. at ¶¶306-308).

Defendants oppose the motion for leave to amend, arguing that Plaintiffs should not be allowed to amend their complaint in light of bad acts they have allegedly taken in the SDIL case and the Madison county case. Defendants also argue that Plaintiffs should not be permitted to amend their complaint, as PSAE has asserted counterclaims in the SDIL case which contradict the allegations in Plaintiffs' proposed amended complaint (Docs. 50, 54). In reply, Plaintiffs reiterate their arguments in favor of a grant of leave to amend (Doc. 55).

Leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). Under this liberal standard, denial of leave to amend a pleading is appropriate only if "there are compelling reasons such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of the amendment." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008). The Court concludes that the circumstances of this case do not justify denying Plaintiffs leave to amend, as this is Plaintiffs' first effort to amend their complaint and the proposed amended complaint seeks to remedy pleading deficiencies Defendants identified in their motion to dismiss the original complaint. As such, the Court will grant Plaintiffs leave to amend their complaint.

  **B.**   **Plaintiffs' Second Motion for Temporary Restraining Order**

In their second TRO motion, Plaintiffs seek an order enjoining Defendants from using the Eagle Logo trademark and Phyllis Schlafly's name, image, and likeness (Doc. 46). In support of their motion, Plaintiffs claim that Defendants impermissibly used Phyllis Schlafly's name,

image, and likeness to promote "Phyllis Schlafly's 37th Annual Luncheon," an "unsanctioned competing event" held in Naples, Florida on March 10, 2017 ("the Luncheon"); and that Defendants are claiming The Eagle Forum Report is the successor to The Phyllis Schlafly Report. Plaintiffs argue that they are likely to prevail on the merits of their amended complaint because the Eagle Trust Fund has always owned the Eagle Logo trademark; Phyllis Schlafly expressly revoked any and all prior licenses to use her marks on August 16, 2016; and the Trust owns all post-mortem rights to her name, image, and likeness, pursuant to the August 31 Amendment. In Plaintiffs' view, Phyllis Schlafly executed the August 31 Amendment capably and without undue influence (Id. at 3-9). In support of their motion, Plaintiffs have submitted an affidavit by one of Phyllis Schlafly's estate planning attorneys and an affidavit by one of her friends, which in Plaintiffs' view, establish that Phyllis Schlafly was of sound mind when she executed the August 31 Assignment (Docs. 46.1-46.2). Plaintiffs also contend that the Madison County TRO has no bearing on whether the Trust owns Phyllis Schlafly's name, image, and likeness, as it applies only to "Eagle Forum property" (Doc. 46 at 7-9).

As to the threat of irreparable harm, Plaintiffs argue that Defendants hosted the Luncheon in order to directly compete with Phyllis Schlafly's 37th annual luncheon, an event co-hosted by the Education and Legal Defense Fund and PSAE on February 23, 2017 (Id. at 10). According to Plaintiffs, Defendants misused the Eagle Logo at their event, and are using the Eagle Logo on the website eagleissues.org, which allegedly contains unauthorized photos of Phyllis Schlafly. Plaintiffs further argue that they are suffering irreparable harm as a result of Defendants' publication of The Eagle Forum Report with the Eagle Logo on its masthead, as it is confusing to readers and causing Plaintiffs' supporters to send donations to the wrong entity (Id. at 10-13).

In addition, as to the balancing of harms, Plaintiffs assert that Defendants' misconduct is causing them permanent and irreparable harm to their "goodwill and hard-fought reputation for grassroots conservatism." Plaintiffs contend that Defendants would suffer little harm if a TRO were granted, as it would be inexpensive to republish the two offending issues of <u>The Eagle Forum Report</u> with the infringing components removed, to reprint invitations to the Luncheon, and to issue a public retraction of that event (<u>Id.</u> at 13-14). Finally, Plaintiffs assert that a TRO would serve the public interest because it would ensure that the Eagle Logo and Phyllis Schlafly's name, image, and likeness are used consistently with her "political values and legacy"; and would prevent Defendants from unfairly profiting off of their infringing conduct. Plaintiffs also take issue with Defendants' choice of legal counsel, noting that a partner at defense counsel's law firm has held a board position with an unrelated entity which is not a party to this action, but which is "antithetical to Plaintiffs' work" (<u>Id.</u> at 14-15).

In response, Defendants first argue that Plaintiffs' cannot show a likelihood of success on the merits because Plaintiffs' claim to ownership of the intellectual property at issue depends on the validity of the August 31 Amendment, which Defendants describe as a "deathbed assignment," the validity of which the Eagle Forum disputes in its competing claim to ownership (Doc. 49 at 12-16). Defendants further argue that Plaintiffs are unlikely to prevail on their claim based on Phyllis Schlafly's post-mortem right to publicity, as such a claim has never been recognized under Missouri law; and that even to the extent Plaintiffs may have had trademark rights in the Eagle Logo at one time, they have since abandoned those rights (<u>Id.</u> at 16-19). In addition, Defendants contend that Plaintiffs cannot show that they will suffer immediate and irreparable harm should a TRO not issue, as the Luncheon has already taken place, any harm Plaintiffs have suffered can be remedied by a monetary award, and Plaintiffs' disagreement with

Defendants' choice of counsel is irrelevant to the TRO analysis (Id. at 19-22). In Defendants' view, the public interest is best served by not issuing a TRO (Id. at 22-24).

In determining whether to issue a TRO, the Court must consider four factors: (1) the threat of irreparable harm to the movants; (2) the balance between the threatened harm to the movant's and the injury that granting the TRO will inflict on other parties to the litigation; (3) the probability that the movants will succeed on the merits of the underlying action; and (4) the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). "While no single factor is determinative, the probability of success factor is the most significant." Home Instead, Inc. v. Florance, 721 F.3d 494, 497 (8th Cir. 2013). The party requesting injunctive relief bears the "complete burden" of proving that an injunction should be granted. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).

For the following reasons the Court will deny Plaintiffs' second TRO motion. First, the Court concludes that Plaintiffs have not established a reasonable likelihood that they will succeed on the merits, as each of Plaintiffs' claims will require either (1) a finding that Plaintiffs own the intellectual property at issue despite Defendants' competing claim to ownership or control, or (2) a finding that directly contradicts the Madison County TRO. Specifically, as was more fully discussed in the Court's November 9, 2016 Order, to prevail on Counts I through VI, Plaintiffs must establish that they own the database and Phyllis Schlafly's image and likeness (Doc. 27 at 3-7). Likewise, to prevail on Counts VII and VIII Plaintiffs must show that they own the database and eagleforum.org. In addition, Counts X, XI, and XII all arise out of Defendants' allegedly impermissible use of Plaintiffs' trademarks in their publication and distribution of The Eagle Forum Report; as such, to prevail on those claims, Plaintiffs must establish that the May 26 and August 31 Amendments are valid.

As to Count IX, Plaintiffs' allegation of tortious interference with business expectancies is premised entirely on an alleged violation of the Madison County TRO. More specifically, the claim is based on the Eagle Forum's alleged failure to maintain the status quo as to the parties' preexisting business relationships as they relate to solicitations of donations via eagleforum.org and the U.S. Postal Service. As such, the Court notes that judicial efficiency and comity weigh in favor of the Court declining what is essentially an invitation from Plaintiffs to enforce the Madison County TRO on the Madison County court's behalf.

Moreover, the Court emphasizes that there continue to be significant factual disputes as to which entity owns the intellectual property at issue in this case, i.e., the database, the trademarks, and Phyllis Schlafly's name, image, and likeness; and there are also significant disputes as to who will ultimately be entitled to control the Eagle Forum. As the Court noted in its November 9, 2016 Order, John Schlafly and Defendants are actively litigating—in the Madison County case—the issue of who is entitled to control the Eagle Forum and its assets. Moreover, as was also specifically noted in the Court's November 9, 2016 Order, Defendants dispute the enforceability of the May 26 and August 31 Amendments to the Trust and the purported transfer of ownership of Phyllis Schlafly's intangible property therein; and the ongoing nature of that dispute is now further evidenced by Anne Cori's recent filing of the St. Louis County Probate case. Given the significant factual disputes regarding the ownership of Phyllis Schlafly's intellectual property, the Court concludes that Plaintiffs have not established a likelihood of success on their claims. See Dataphase, 640 F.2d at 113.

The Court further notes that, much like the first TRO motion, Plaintiffs' second TRO motion seeks an order from this Court that would, in many respects, directly contradict the Madison County TRO. Notably, Plaintiffs admit that Defendants were granted licenses to use

Plaintiffs' trademarks; but they nevertheless argue that they are likely to succeed on the merits because Phyllis Schlafly revoked those licenses on August 16, 2016. The Court notes, however, that the Madison County TRO specifically orders the Eagle Forum to continue to transact business with the Eagle Trust Fund and the Education and Legal Defense Fund consistently with the entities' established pattern of business dealings as it existed prior to April 11, 2016. As such, to the extent Plaintiffs rely on an alleged August 16, 2016 revocation of the Eagle Forum's licenses, their argument is contrary to the plain language of the Madison County TRO.

The Court further concludes that Plaintiffs have not established a threat of immediate and irreparable harm should a TRO not issue. See id. "[T]o demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) (quoting Iowa Utils. Bd. v. Fed. Commc'ns Comm'n, 109 F.3d 418, 425 (8th Cir. 1996)). Defendants have already hosted the Luncheon, and entry of a TRO at this time would not prevent any harm the event has caused to Plaintiffs. Moreover, Plaintiffs have not shown that a monetary award would be inadequate to remedy any harm caused by Defendants' continued infringement upon, dilution of, or impermissible use of their intellectual property; or that the harm they will allegedly suffer is of such imminence that there is a clear and imminent need for immediate equitable relief. See id.

Finally, the Court notes that, while it is in the public interest to ensure that confidential and proprietary property is protected, the public interest would not be served by entry of a TRO in the instant case, given the significant disputes over the ownership of the intangible property at issue. See Dataphase, 640 F.2d at 113. Thus, the balance of the harms that Plaintiffs' will allegedly suffer in the absence of a TRO and the injury that granting the TRO would potentially

inflict of Defendants does not weigh in favor of granting Plaintiffs' second TRO motion. For these reasons, the Court will deny Plaintiffs' second TRO motion. See id.

### C. Motion for Leave to Substitute Corrected Exhibit and Motion to Seal

Plaintiffs also move for leave to substitute an exhibit for Exhibit 7 to their first TRO motion, and to seal Exhibits 2 and 7 to that motion (Docs. 25). Specifically, Plaintiffs' proposed substitute for Exhibit 7 consists of an affidavit by Ann Bensman and two affidavits by Elizabeth Miller, and totals 15 pages (Docs. 7.7-7.13). In contrast, Exhibit 7 contains 259 pages of filings from the Madison County case. Notably, Exhibit 7 includes Ann Bensman's affidavit, but includes only one of Elizabeth Miller's affidavits as proposed by Plaintiffs' substitute exhibit (Docs. 7.11 at 27-30; 7.13 at 7-12). Plaintiffs seek to seal Exhibits 2 and 7, as they contain confidential information, including trust documents, board meeting minutes, correspondence regarding bank accounts, and internal email communications. According to Plaintiffs, their proposed substitute Exhibit 7 excludes the confidential information and contains only the affidavits on which they relied in their first TRO motion (Docs. 25, 32). Defendants oppose the motion, arguing that Plaintiffs did not seek to substitute Exhibit 7 until after the Court had ruled on their first TRO motion, that only one of Elizabeth Miller's affidavits was before the Court when it ruled on that motion, and that substitution of the exhibits at this stage of the proceeding would unnecessarily muddle the record (Doc. 28).

The Court will grant the motion in part and deny the motion in part. The Court will grant the motion to the extent it seeks to seal Exhibits 2 and 7 to Plaintiffs' first TRO motion (Docs. 7.2, 7.7-7.13), as those exhibits contain confidential information. The Court will deny the motion to the extent it seeks to substitute the three affidavits for the Madison County case records, as one of the affidavits was not before the Court when it ruled on the motion to which the exhibit

16

Plaintiffs seek to substitute was attached, and because any need to substitute a more concise version of Exhibit 7 will be remedied by the sealing of Exhibit 7.

### D. Order to Show Cause Why this Proceeding Should Not be Stayed

As discussed more fully above, the parties are actively litigating in other judicial forums several issues that could be dispositive in this case. Notably, the St. Louis Probate case and the Madison County case directly implicate the extent to which this Court should intervene, at this time, in the parties' existing disputes regarding their relative ownership interests in, and ability to exercise control over, Phyllis Schlafly's or any of the aforementioned entities' intangible property. Specifically, the issue of who is entitled to control of the Eagle Forum is at the core of the Madison County case, and is directly addressed in the Madison County TRO. Moreover, it appears to the Court that the St. Louis Probate case squarely presents—in an arguably more appropriate judicial forum—the issue of whether the May 26 and August 31 Amendments were effective to transfer to the Trust ownership of Phyllis Schlafly's personal intellectual property or to otherwise alter the terms of the Trust. As such, the Court will direct the parties to show cause, in writing and within thirty (30) days of the date of the Order, why this proceeding should not be stayed pending the resolution of the Madison County case and the St. Louis County Probate case.

### E. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 45) is **GRANTED**. The Clerk of the Court shall detach and docket Plaintiffs' proposed amended complaint which was submitted as an attachment to the Motion (Doc. 45.2).

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss or, in the Alternative, for Stay (Doc. 16) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiffs' Second Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 46) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Substitute Corrected Exhibit and to Seal (Doc. 25) is **GRANTED IN PART AND DENIED IN PART** as follows. The motion is **GRANTED** to the extent it seeks to seal Exhibits 2 and 7 attached to Plaintiffs' First Motion for a Temporary Restraining Order (Docs. 7.2, 7.7-7.13), and the motion is **DENIED** to the extent is seeks to substitute Exhibit A attached to the Motion for Leave to Substitute Correct Exhibit and to Seal for Exhibit 7 attached to Plaintiffs' First Motion for Temporary Restraining Order. The Clerk shall seal Exhibits 2 and 7 attached to Plaintiffs' First Motion for Temporary Restraining Order (Docs. 7.2, 7.7-7.13).

**IT IS FINALLY ORDERED** that the parties shall show cause, in writing and no later than thirty (30) days from the date of this Order, why this proceeding should not be stayed pending the resolution of the Madison County case and the St. Louis County Probate case.

Dated this 17th day of April, 2017.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**