**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

PHYLLIS SCHLAFLY REVOCABLE TRUST )
  et al.,                         )
                                  )
            Plaintiffs,           )
                                  )
       v.                         )        Case No. 4:16-CV-01631 JAR
                                  )
ANNE CORI, et al.,                )
                                  )
            Defendants.           )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Eagle Forum and Anne Cori's Motions to Dismiss Plaintiffs' Second Amended Complaint. (Doc. Nos. 140, 142). The motions are fully briefed and ready for disposition. For the following reasons, the motions are granted in part and denied in part.

## I.    Background

Plaintiffs Phyllis Schlafly Revocable Trust ("PSRT"), Eagle Trust Fund ("ETF"), and Eagle Forum Education and Legal Defense Fund ("EFELDF") filed their Second Amended Complaint on August 12, 2020. Plaintiffs allege twelve counts against Defendants Eagle Forum, Anne Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, Shirley Curry, and five Jane or John Does, as well as two counts against SpearTip LLC. (Second Amended Complaint, Doc. No. 138). This Court dismissed all claims against Defendants Smith, Adams, McLarty, Kovar, Curry, and the five Does. (Doc. No. 151). Plaintiffs voluntarily dismissed their claims against SpearTip. (Doc. No. 156). Plaintiffs have twelve remaining claims asserted against both Defendants Eagle Forum and Anne Cori (collectively "Defendants") stemming from the alleged infringement and misappropriation of property that belonged to the late Phyllis Schlafly, which

1

the Plaintiffs claim they now own. Plaintiffs' remaining claims are: Violation of the Defend Trade Secrets Act (Count I); Trademark Infringement under 15 U.S.C. § 1125(a) (Count III); Trademark Infringement under The Lanham Act (Count IV); Trademark Dilution under the Lanham Act (Count V); Misappropriation of Trade Secrets under the Missouri Uniform Trade Secrets Act (Count VI); Violation of Rights of Publicity under Missouri Common Law (Count VIII); Trademark Infringement and Unfair Competition under Missouri Common Law (Count IX); Declaratory Judgment under 28 U.S.C. § 2201 (Count X); Tortious Interference with Business Expectancies under Missouri Law (Count XI); Trademark Infringement for False Designation under 15 U.S.C. § 1125(a) (Count XII); Trademark Dilution under 15 U.S.C. § 1125(c) (Count XIII); and Unfair Competition under Illinois Common Law and 815 ILCS § 510 (Count XIV).

The following facts are taken from Plaintiffs' Second Amended Complaint unless otherwise noted and are assumed true for the purposes of these motions to dismiss. PSRT is the owner of much of the intellectual and intangible property at issue in this case. EFELDF is a licensee of intellectual and intangible property from PSRT and ETF. ETF is an entity in Phyllis Schlafly's network of corporations. ETF provides back-office services for other entities in the Phyllis Schlafly network and is the custodian of the "Schlafly Database." ETF is also the owner and publisher of the *Phyllis Schlafly Report* and the owner of the EAGLE LOGO mark, U.S. Reg. No. 2,497,754, which is used on the masthead of *The Phyllis Schlafly Report*, as well as the EAGLE PIN design mark, U.S. Reg. No. 2,671,224. John Schlafly and Bruce Schlafly are the current trustees of ETF.

The Schlafly Database is a compilation of information about donors, donation history, and other information obtained through Phyllis Schlafly's network and business over the course of her life. The Schlafly Database is maintained and kept confidential by ETF. Roger Schlafly helped

2

create the software that is currently used to manage the Schlafly Database. The Schlafly Database has never been rented, sold, or disclosed to third parties. Full access to the Schlafly Database is available through only one computer, in the locked offices of ETF headquarters. Access is only granted to a small number of ETF employees. Access to a digital, cloud-based backup is limited to a small number of ETF employees and Roger Schlafly.

Anne Cori ("Cori") is Mrs. Schlafly's daughter and the president of Eagle Forum. Defendant Eagle Forum is a nonprofit corporation incorporated under the laws of Illinois. Prior to 2016, Defendants used Plaintiffs' marks as well as Phyllis Schlafly's name and likeness under non-exclusive licenses. On February 1, 2016, Cori orchestrated a robocall to help Senator Ted Cruz in the Iowa presidential primary, without Phyllis Schlafly's consent. Cori used the Schlafly Database to facilitate the call. On August 16, 2016, Phyllis Schlafly revoked Defendants' licenses through an open letter posted on *eagleforum.org*.

On April 22, 2016, Phyllis Schlafly amended the PSRT and her last will and testament to ensure PSRT received her intellectual and intangible property. On August 31, 2016, Phyllis Schlafly transferred all her intellectual property and publicity rights to PSRT. PSRT is the current owner of all of Phyllis Schlafly's intellectual and intangible property rights, as well as her publicity rights. These rights include the EAGLE and PHYLLIS SCHLAFLY marks. Phyllis Schlafly died in September, 2016.

In October of 2016, Defendants hired Elizabeth Miller ("Miller") and Ann Bensman, ETF employees with access to the Schlafly Database. On October 25, 2016, Miller downloaded the Schlafly Database onto USB drives without ETF permission while she was employed by ETF and receiving a salary from ETF. Miller delivered the information to SpearTip, a Missouri company that provides forensic imaging services, for decryption. SpearTip decrypted the Schlafly Database

and delivered it to the Defendants. Defendants use the Schlafly Database to promote their activities, including a March 10, 2017 event in Naples, Florida and other copycat events.

On October 20, 2016, Defendants gained control over *eagleforum.org* through a temporary restraining order issued by an Illinois State Court. The order required Defendants to operate the website while maintaining the status quo. In contravention of that order, Defendants altered *eagleforum.org*, eliminating Plaintiffs' ability to receive online donations. Plaintiffs have not received online donations since November 2016. On November 15, 2020, the Madison County court found Eagle Forum is the owner of *eagleforum.org* and associated email addresses to the exclusion of ETF and EFELDF. (Doc. No. 157-5).

In November of 2016, Eagle Forum relocated to 200 W. 3rd Street, Alton Illinois, 62002 and began soliciting mail at its new address by changing the address for solicitations on *eagleforum.org* and its hardcopy mail solicitations. Prior to Eagle Forum relocating, all of Phyllis Schlafly's entities received mail under the same name and at the same address. On December 15, 2016, Defendants filed a change-of-address order with the United States Postal Service ("USPS") for ETF, which USPS denied. However, the USPS opened a mail dispute and began holding all mail addressed to any "Eagle Forum" entity because of the improper change-of-address order. ETF was unable to access its mail, including donations sent through the mail, for several months as a result of the dispute.

Defendants also use Phyllis Schlafly's image in e-mails, solicitations, press releases, and in connection with the March 10, 2017 event in Naples Florida, which they advertised as "Eagle Forum 37th Annual Phyllis Schlafly Luncheon." The event was held in competition with Phyllis Schlafly's actual luncheon, held by EFELDF and ETF.

The parties are litigating issues relevant to this matter in other courts. The history and decisions from those cases, insofar as they are relevant to this motion, are discussed below.

Proceeding before the Southern District of Illinois

On August 24, 2016, Defendants Eagle Forum, Cori, Smith, Adams, McLarty, Kovar, and Shirley Curry filed an action, on behalf of the Eagle Forum, against Phyllis Schlafly's American Eagles ("PSAE") in the U.S. District Court for the Southern District of Illinois ("the SDIL case"), see Cori v. Phyllis Schlafly's American Eagles, 3:16CV946-DRH-RJD (S.D. Ill.). In the SDIL case, Defendants herein, in their capacities as the majority members of the Eagle Forum Board, alleged that PSAE had converted its assets; infringed upon its service marks, tradenames, and trademarks; engaged in unfair competition; diluted its brands, names, and marks; and committed cyberpiracy. (Amended Complaint (Doc. 40) in the SDIL case). The SDIL court determined that under Illinois law, Anne Cori has an ownership interest in Phyllis Schlafly's right of publicity. The case was dismissed on April 1, 2020. (Doc. No. 131-1).

Proceeding Before the Circuit Court for the Third Judicial Circuit in Madison County, Illinois

The Defendants Cori, Smith, Adams, McLarty, Kovar, and Curry sued Ed Martin and John Schlafly in the Circuit Court for the Third Judicial Circuit in Madison County, Illinois see Cori v. Martin, No. 2016MR000111 (Ill. Cir. Ct. Oct. 20, 2016) ("the Madison County case"). In the Madison County case, the Individual Defendants seek a declaration that Ed Martin was ousted from the Eagle Forum Board. On April 29, 2016, the Madison County Court entered a temporary restraining order that, inter alia, required John Schlafly and Ed Martin to give Defendants access to the Eagle Forum headquarters and all Eagle Forum property (Doc. 7.10 at 40-42). On May 26, 2016, Phyllis Schlafly executed a First Amendment to the April 22 Restatement ("May 26 Amendment") (Doc. 49.6 at 111-117). On October 20, 2016, the Madison County court entered an

amended temporary restraining order, suspending John Schlafly from the Eagle Forum Board, enjoining him from accessing Eagle Forum property, and granting Defendants temporary sole control of and possession over all Eagle Forum property ("Madison County TRO"). In an order dated September 15, 2020, the Madison County court determined Eagle Forum has ownership of the *eagleforum.org* domain and associated email addresses. (Doc. No. 157-5).

On November 15, 2017, this case was stayed because of imminent trials in the Madison County case and another matter before the St. Louis County Probate Court. (Doc. No. 82). The probate case has since settled. Due to the ongoing coronavirus pandemic, the Madison County lawsuit was continued and this Court lifted the stay on May 12, 2020, as it became clear the trial in the Madison County case is no longer imminent. (Doc. No. 120). Plaintiffs filed their Second Amended Complaint on August 12, 2020, (Doc. No. 138), and Defendants filed their motions to dismiss on August 25, 2020. (Doc. Nos. 140, 142). Plaintiffs filed their responses on September 8, 2020. (Doc. Nos. 144-45). On September 15, 2020, before Defendants could file their replies, an order was released in the Madison County case which Defendants claimed was relevant to the motions to dismiss. The Court ordered the parties to brief the impact of the September 15 Madison County order on the motions to dismiss. (Doc. No. 151). The parties filed briefs on the impact of the Madison County Order. (Doc. No. 154, 157). The motions are now fully briefed and ready for disposition.

For the reasons set forth within, the motions to dismiss will be granted in part and denied in part.

## II.    **Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard of Rule 8 "does not require

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must show that the pleader is entitled to relief, in order to give the defendant fair notice of what the claims are and the grounds upon which they rest. Id.

Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to " 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In the complaint, a plaintiff must include sufficient factual information to provide the grounds on which his claims rest, and to raise a right to relief above a speculative level. Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. Id. at 562. This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

In reviewing the pleadings under this standard, the Court must accept all of the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor, but the Court is not required to accept the legal conclusions the plaintiff draws from the facts alleged. See Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002) (The Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."); Retro Television Network, Inc. v. Luken Commc'ns,

LLC, 696 F.3d 766, 768-69 (8th Cir. 2012). The Court may also properly consider public records, including court records, on a motion to dismiss. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

### III.    Discussion

### A.    Kitchen sink pleadings

Defendant Eagle Forum first moves to dismiss Plaintiff's Second Amended Complaint for failure to comply with the pleading standard of Fed. R. Civ. P. 8(a), arguing that the complaint is a shotgun or kitchen sink pleading that does not include a "short and plain statement of the claim showing that pleader is entitled to relief." In addition, the complaint often uses the terms "Defendants" or "the referenced Defendants" instead of specifying Defendants by name.

Plaintiffs' complaint is far from a "shotgun" pleading in which a plaintiff brings every conceivable claim against every conceivable defendant, resulting in a cause of action so general that it fails to put the various defendants on notice of the allegations against them. See Tatone v. SunTrust Mortg., Inc., 857 F. Supp. 2d 821, 831 (D. Minn. 2012). Upon review and consideration, the Court finds that Plaintiffs' complaint is more than sufficient to put Defendants on notice of the allegations against them. Cf. Boggs v. Am. Optical Co., No. 4:14-CV-1434 CEJ, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015) (E.D. Mo. Jan. 22, 2015) (dismissing an asbestos action for failing to plead with sufficient particularity because the complaint was a "shotgun pleading" in which the plaintiff asserted multiple causes of action against numerous defendants for actions over a 27–year period without alleging facts specific to individual defendants).

While there are some circumstances where grouping defendants together in a complaint would deprive the defendants of fair notice of the nature of the claims against it, this is not the case here. See Hudak v. Berkley Group, Inc., No. 3:13CV89 WWE, 2014 WL 354676 at *4 (D. Conn. Jan. 23, 2014) ("prior to discovery, plaintiff need not explain the details of each defendant's role"

8

in the alleged joint scheme, and noting that "nothing in Rule 8 prohibits collectively referring to multiple defendants where the Petition alerts defendants that identical claims are asserted against each defendant"). See also Nestle Purina PetCare CO. v. Blue Buffalo Co., No. 4:14CV859 RWS, 2015 WL 1782661, at *9 (E.D. Mo. Apr. 20, 2015). The Court previously dismissed Plaintiffs' claims against Defendants Smith, Adams, McLarty, Kovar, Curry, and five Jane or John Does and Plaintiffs dismissed their claims against SpearTip. Only two Defendants remain in the case, limiting confusion over which allegations refer to which Defendant. Accordingly, dismissal under Rule 8(a) is not warranted here.

**B. Failure to make specific allegations of conduct**

Defendants Eagle Forum and Cori next argue certain claims against them are deficient because they fail to allege actionable conduct. Defendants both repeat a version of this argument throughout their motions to dismiss. Essentially, Defendants argue that because Plaintiffs have not referenced them by name in certain paragraphs of the complaint, those paragraphs cannot be read as referring to them. Rather than referencing the Defendants by their names, Plaintiffs refer to Eagle Forum and Cori collectively as "the Defendants" or "the referenced Defendants" throughout the Second Amended Complaint. Defendants' argument is unavailing. As discussed above, Plaintiffs may refer to the Defendants collectively.

Eagle Forum argues that Counts I, III-V, XII, and XIII fail to state a claim against Eagle Forum because they contain "no specific allegation of conduct by Eagle Forum." (Doc. No. 141 at 10). Cori argues Plaintiffs have failed to allege any actual use or infringement by Cori of Plaintiffs' marks. Rather, she asserts "Plaintiffs complain about solicitation of Missouri Eagle Forum and the publication of the Eagle Forum Report." (Doc. No. 143 at 12).

Plaintiffs respond that they have made specific allegations about Eagle Forum's conduct, to-wit, that Eagle Forum: stole a copy of the Schlafly database, (Second Amended Complaint ¶¶ 121-129); "used the full Schlafly Database to promote [Defendants'] activities[,]" (id. at ¶ 130); misappropriated "Mrs. Schlafly's image, likeness, and 'legacy'" in email letters and solicitations, (id. at ¶133(a)); created a competing website misappropriating Mrs. Schlafly's name, image, and likeness and used marks confusingly similar to Plaintiffs' marks, (id. at ¶¶133-134); published a newsletter that falsely states it is the "successor to The Phyllis Schlafly Report," (id. at ¶332); and misappropriates Plaintiffs' Eagle Logo. (Id. at ¶ 212).

Plaintiffs also list allegations in their Second Amended Complaint related to their claims that Cori misappropriated their marks, specifically that Cori: started a website using a logo similar to the Plaintiffs' Eagle Logo, (id. at ¶133(a)); used the Eagle, Eagle Logo, and Phyllis Schlafly marks to defame Mrs. Schlafly, (id. at ¶133(e),(f)); used the Eagle Logo mark to advertise the March 10, 2017 event in Naples, Florida, (id. at ¶133(i)); created and used a mark substantially indistinguishable from the Eagle Logo mark, (id. at ¶212); and published a newsletter that falsely states it is the "successor to *The Phyllis Schlafly Report*". (Id. at ¶¶332-347).

The only issue before this Court at the motion to dismiss state is whether Plaintiffs have alleged enough facts "to raise a right to relief above the speculative level…" Twombly, 550 U.S. at 555. The Court finds the facts alleged in Plaintiffs' Second Amended Complaint state a facially plausible claim against Defendants. Thus, the Court will deny the motions to dismiss on this ground.

## C. Plaintiffs have stated a claim for infringement of Phyllis Schlafly's right of publicity

Defendants next move to dismiss Plaintiffs' Count VIII for violation of the right of publicity under Missouri Common Law, arguing that there is no cause of action under Missouri

common law for violation of rights of publicity of a deceased person. Defendants further argue that the SDIL case has already determined that Phyllis Schlafly's publicity rights passed to her heirs, including Cori.

Plaintiffs' Count VIII alleges PSRT is the owner of Phyllis Schlafly's rights to publicity and that Defendants have infringed on its rights. Defendants argue that Missouri does not recognize a right to publicity in a deceased person, and because Plaintiffs' claim is for the infringement of a deceased person's right to publicity, Plaintiffs' claim fails as a matter of law. Missouri courts have not addressed the issue, so this Court must predict how Missouri courts would rule. For the reasons set forth below, this Court concludes that Missouri would recognize a post-mortem right to publicity.

First, of the states that have considered the issue of whether a post-mortem right to publicity exists, the majority have concluded that it does. See State ex rel. Elvis Presley Int'l Mem'l Found. v. Crowell, 733 S.W.2d 89, 99 (Tenn. Ct. App. 1987) (listing decisions that find the right of publicity is descendible); see also Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc., 270 F.3d 298, 326 (6th Cir. 2001) ("of the states that have addressed the issue of a post-mortem right of publicity by statute or caselaw, the majority have recognized the right"). The only case Defendants cite in support of their argument that the right to publicity would not survive death is Memphis Dev. Found. v. Factors Etc., Inc., 616 F.2d 956 (6th Cir. 1980). In Memphis Dev. Found., the 6th Circuit found Tennessee would not recognize a post-mortem right to publicity. Tennessee courts later overrode that decision, finding the right to publicity survives death. See Elvis Presley, 733 S.W.2d at 99.

Second, Missouri courts treat the right of publicity like a property right. Courts that find the right of publicity is similar to that of a property right tend to find that, like other property rights,

11

a post-mortem right to publicity exists. See Herman Miller, 270 F.3d at 326 (interests protected by right of publicity under Michigan law "reflect property interests, as opposed to dignitary rights, and therefore can extend beyond death."). On the other hand, jurisdictions that hold "the right of publicity is more closely linked to the right of privacy than to a property right" conclude that it "is not descendible." Reeves v. United Artists, 572 F.Supp.1231 (N.D. Ohio 1983) (finding right of publicity does not survive death under Ohio law because Ohio treats it as a privacy right). See also Pirone v. MacMillan, Inc., 894 F.2d 579, 586 (2d Cir. 1990) (right of publicity is an aspect of the right of privacy and therefore does not survive death).

The Missouri Supreme Court has described an individual's right to publicity as a "property right to the commercial value of his or her name." Doe v. TCI Cablevision, 110.S.2.3d 363, 372 (Mo. 2003). The Missouri Supreme Court in TCI Cablevision distinguished the right of publicity from claims for defamation or false light, acknowledging "property interests are involved in the former categories, but not the later." Id. at 73. Missouri courts recognize the right of publicity is akin to a property right. The right of publicity under Missouri law, like other property rights, survives death.

Third, Defendants' argument based on dicta in Bear Foot, Inc. v. Chandler, 965 S.W.2d 386, 389 (Mo. Ct. App. 1998), is unpersuasive in light of other Missouri decisions. The Bear Foot court stated that "while some states have recognized a right of publicity in individuals or the deceased, we do not believe that a corporation has such a right." Id. Defendants argue that this sentence implies Missouri would not recognize a right of publicity in the deceased because the court found that some states recognize a right of publicity in individuals or the deceased. Defendants claim that, by inference, Missouri is not one of these states. By Defendants' logic, Missouri courts would also find that *individuals* do not have a right of publicity. However, the

Supreme Court of Missouri has recognized a right of publicity cause of action in individuals. <u>TCI Cablevision</u>, 110S.W.3d at 369. The dicta in <u>Bear Foot</u> does not suggest that Missouri, unlike some states, would not recognize a right of publicity in individuals or the deceased because Missouri does recognize a right of publicity in individuals. This Court finds that Missouri would recognize a right of publicity in the deceased.

Defendants make a final argument, unsupported by legal authority. They point out that the Southern District of Illinois has already determined that Cori, as Phyllis Schlafly's heir, is an owner of her rights to publicity under Illinois law in the SDIL case. The Southern District of Illinois held that "[t]he issue of how to handle Ms. Schlafly's rights of publicity is clearly governed by Illinois state law, 765 ILCS 1075/15 and 765 ILCS 1075/20. The rights under Illinois law descend just like traditional property and all Ms. Schlafly's heirs would have equal interest and equal right to use her image in commerce. As such, Ms. Cori and her organizations hold equal right to use the imagery as does Mr. Schlafly and the Counter-Plaintiff has not made a sufficient showing as to why this is not the case." <u>See</u> <u>Eagle Forum v. Phyllis Schlafly's American Eagles</u>, Case No. 3:16-CV-00946-DRH-RJD (S.D. Ill. August 24, 2016).

The Plaintiffs in this case were not parties to the SDIL case. Defendants do not argue that claim preclusion applies. It is unclear what, exactly, Defendants believe the impact of the SDIL case on this case is. The Court accepts Plaintiffs' factual allegations as true at this stage of the proceedings. Plaintiffs allege that "all right, title and interest in and to the Phyllis Schlafly Name and Likeness passed to PSRT by assignment on August 31, 2016" and that Defendants do not have license to use Phyllis Schlafly's Name or Likeness. (Second Amended Complaint, ¶¶ 278-79). This is sufficient to state a claim for infringement of the right to publicity under Missouri law.

**C. Standing to bring trademark claims**

13

Defendants next claim that Plaintiffs lack standing to bring their claims related to trademark infringement. Eagle Forum raises two arguments in support of dismissing Plaintiffs' trademark claims. First, Eagle Forum alleges that Plaintiffs lack standing to bring their claims related to trademark infringement because they have not alleged a sufficient interest in the marks. Next, Eagle Forum claims an order issued in the SDIL case supports Eagle Forum's argument that the Plaintiffs in this case lack an interest in the intellectual property at issue in this case.

To recover for trademark infringement under the Lanham Act, a plaintiff must establish that it "owns or has rights in a protectible trademark or claim." Hallmark Indus., Inc. v. Hallmark Lic., LLC, 417 F.Supp.3d 1180, 1189 (W.D. Mo. 2019). Likewise, under Missouri and Illinois common law, a plaintiff must allege that they have "a protectable right in the asserted trademarks" to withstand a motion to dismiss. KJ Korea, Inc. v. Health Korea, Inc., 66 F.Supp.3d 1005 (N.D. Ill. 2014) (Applying Illinois common law); see also Hallmark, 417 F.Supp.3d at 1189 (under Missouri law "in order to maintain a claim for common law unfair competition, the plaintiff must own the mark").

Plaintiffs' claims for trademark infringement allege ownership of the marks at issue, giving Plaintiffs standing to bring these claims. Plaintiffs allege that PSRT is the owner of Phyllis Schlafly's publicity rights and intellectual property rights, including the Schlafly Database and Phyllis Schlafly marks. (Second Amended Complaint ¶ 21). Plaintiffs also claim PSRT is the owner of *PhyllisSchlafly.com*. (Id. ¶¶ 106-107.)  They further allege that ETF is the owner of the Eagle Logo registered trademark, Reg. No. 2,497,754, and the *Phyllis Schlafly Report*. (Id. ¶¶ 82-95).

Eagle Forum moves to dismiss Plaintiff's trademark claims, arguing that Plaintiffs pled their property interests in the trademarks are licenses and that licensees may only bring claims

14

where the license amounts to an outright assignment. <u>Finance Investments Co. (Bermuda) Ltd. V. Geberit AG</u>, 165 F.3d 526, 532 (7th Cir. 1998). In order to survive a motion to dismiss, Eagle Forum claims Plaintiffs "must plead ***the terms*** of the alleged Assignment it claims gave it that commercial interest," with specificity. (Doc No. 141 at 9) (emphasis in original). This argument is unpersuasive, as Plaintiffs have specifically alleged that they are owners of the marks.

Defendants argue that conclusory allegations of ownership will not survive a motion to dismiss. <u>Ahmed v. Hosting.com,</u> 28 F.Supp.3d 82, 89-91 (D. Mass. 2014). Plaintiffs have done more than claim ownership through conclusory allegations; their allegations specify which Plaintiff owns which mark and how the Plaintiff acquired each mark. At this stage, Plaintiffs do not need to show more. "On a motion to dismiss for failure to state a claim, this Court must accept all of Plaintiff's allegations as true and construe disputed facts in favor of Plaintiff," including allegations that Plaintiff owned marks at issue. <u>Hullverson v. Hullverson</u>, No. 4:12-CV-00144-JAR, 2012 WL 6013209, at *4 (E.D. Mo. Dec. 3, 2012) (denying motion to dismiss Lanham Act claim for failing to sufficiently allege ownership). <u>See also</u> <u>Pipeline Prods., Inc. v. S&A Pizza, Inc.</u>, No. 4:20-00130-CV-RK, 2020 WL 4506090, at *5 (W.D. Mo. Aug. 5, 2020) ("[o]wnership itself involves factual questions" that are not appropriate for a motion to dismiss). Plaintiffs need not attach documentation in support of their claims of ownership at the motion to dismiss stage. "Documentary evidence [is] generally not required at the pleading stage." <u>Whitney v. Guys, Inc.,</u> 700 F.2d 1118, 1128 (8th Cir. 2012). For the purposes of a motion to dismiss, this Court accepts as true Plaintiffs' allegations of ownership. Their trademark claims are sufficiently plead.

Defendants next argue that a decision in the SDIL case supports the premise that the Plaintiffs in this case do not own or have a reasonable interest in the property at issue here. There, the court dismissed PSAE's trademark infringement claims because PSAE admitted "in their own

complaint that they held at most a license which was later extinguished by Ms. Schlafly herself in a public statement.*" Eagle Forum v. Phyllis Schlafly's American Eagles* 2017 WL 4785792 at *1. Phyllis Schlafly's American Eagles is not a Plaintiff in this case and the Plaintiffs in this case claim they are the current owners of the marks at issue. Nowhere in their complaint or other pleadings do they allege their ownership was revoked. Plaintiffs have adequately pled trademark infringement claims under the Lanham Act, as well as under Missouri and Illinois common law.

### D. Tortious interference of contract

Defendants Eagle Forum and Cori next argue that Count XI for Tortious Interference of Contract fails to state a claim against Eagle Forum under Missouri law because Defendants had "an unqualified right to perform" the acts at issue in that claim. Bishops & Assoc's, LLC v. Ameren Corp., 520 S.W.3d 463, 472 (Mo. banc 2017). In order to succeed on a claim for tortious interference of contract, Plaintiffs must allege: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. banc 1996). Further, "if the defendant has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means in seeking to further only his or her own interests." W. Blue Print Co. v. Roberts, 367 S.W.3d 7, 20 (Mo. banc 2012). "Improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." Id.

Defendants claim the only conduct alleged in support of Count XI is Defendants' filing of a lawsuit in Madison County, Illinois, obtaining a temporary restraining order ("Madison County TRO") from that court to operate *eagleforum.org*, and then, under the authority of the Madison

County TRO, operating *eagleforum.org*. (Doc. No. 141 at 12). Defendants argue that a tortious interference of contract claim fails because Defendants had an unqualified legal right to file a lawsuit and operate *eagleforum.org* under the Madison County TRO.

Plaintiffs respond that their claim alleges conduct that was not sanctioned by the Madison County TRO. Although the Madison County TRO authorized Defendants to operate *eagleforum.org*, the order required them to maintain the status quo. Plaintiffs allege the Defendants both "disrupted Plaintiffs' ability to accept online donations" through *eagleforum.org*, eliminating Plaintiffs' ability to receive online donations, (Second Amended Complaint ¶¶ 313, 317), and "'shut down' email accounts for [EFELDF] employees," (id. at ¶ 314). Plaintiffs further alleged that Defendants interfered with their receipt of their mail, preventing them from accessing mail for two months. (Id. at ¶ 321).

Although it seems unusual that Plaintiffs are bringing claims related to Defendants' operation of *eagleforum.org* in this Court rather than in the court that issued the Temporary Restraining Order, taking Plaintiffs' allegations as true, they have stated a claim for tortious interference of contract under Missouri law. Plaintiffs have done far more than allege Defendants filed a lawsuit and operated a website pursuant to a court order.  Plaintiffs alleged that Defendants prevented them from receiving donations through *eagleforum.org*, an action they claim was in violation of the Madison County TRO.  Moreover, Plaintiffs allege Defendants prevented them from receiving their mail for several month. Defendants' argument fails to explain how Plaintiffs' claims that Defendants interfered with their mail are related to the Madison County TRO. Plaintiffs' allegations are sufficient to state a claim for tortious interference of contract. The fact that Defendants gained control of *eagleforum.org* through the Madison County TRO is not dispositive.

17

### E.  Pleading standard under the Illinois' Not for Profit Corporation Act

Defendant Cori next argues that none of Plaintiffs' claims against her meet the heightened pleading standard required by the Illinois' Not for Profit Corporation Act in lawsuits against directors of nonprofits for actions taken in connection with their duties. The Act provides:

> No director or officer serving without compensation, other than reimbursement for actual expenses, of a corporation organized under this Act or any predecessor Act and exempt, or qualified for exemption, from taxation pursuant to Section 501(c) of the Internal Revenue Code of 1986 [26 U.S.C. § 501(c)], as amended, shall be liable, and no cause of action may be brought, for damages resulting from the exercise of judgment or discretion in connection with the duties or responsibilities of such director or officer unless the act or omission involved willful or wanton conduct.

805 Ill. Comp. Stat. 105/108.70(a). Willful or wanton conduct is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 805 Ill. Comp. Stat. 105/108.70(d). "In order for a director to be immune from liability under the Act, he must be unpaid, the corporation must be organized under the Not for Profit Corporation Act, the corporation must be tax exempt under federal law, and the director's conduct must not be willful or wanton." Spencer v. Illinois Cmty. Action Ass'n, 164 F. Supp. 2d 1056, 1064 (C.D. Ill. 2001), aff'd, 51 F. App'x 973 (7th Cir. 2002)

The claims against Cori are sufficiently pled under the Illinois Not for Profit Corporations Act. First, although Plaintiffs have not specifically alleged that Cori was serving for compensation, it is a reasonable factual inference. "When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." Alternative Med. & Pharmacy, Inc. v. Express Scripts, Inc., No. 4:14 CV 1469 CDP, 2015 WL 12808179, at *1 (E.D. Mo. July 6, 2015). Cori cites to the initial complaint, which alleged that

individual "Defendants are volunteer members and directors of the affiliated Eagle Forum." Doc. No. 1 ¶ 41. Such an allegation is notably missing from the Second Amended Complaint. It is reasonable to infer from the Second Amended Complaint that Plaintiffs allege Cori is compensated, and therefore outside the protection of the Illinois' Not for Profit Corporations Act.

Second, even assuming Cori is entitled to the protections of the Illinois' Not for Profit Corporations Act, Plaintiffs' claims against Cori are sufficient because they allege Cori engaged in conduct that is willful or wanton. "To sufficiently plead willful and wanton misconduct, a plaintiff must allege either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." Adkins v. Sarah Bush Lincoln Health Ctr., 129 Ill. 2d 497, 518, 544 N.E.2d 733, 743 (Ill. 1989).

Plaintiffs pointed to numerous allegations of conduct that could rise to the level of willful or wanton including: (1) "the Defendants perpetrated a "conspir[acy] to use Plaintiffs' assets…to further their own personal and political agendas," (Doc. 138, ¶117); (2) Defendants, including Cori "covertly appropriated a full copy of the secret Schlafly  Database" using an ETF employee, who later began working for the Defendants, (id. at ¶¶122-128); (3) Defendants, including Cori are "confusing or misattributing Mrs. Schlafly's true endorsements or political positions … in an intentional and willful attempt to undermine her reputation, image, likeness, legacy, and … effectiveness," (id. at ¶133(b)); (4) Defendants, including Cori, diverted ETF's mail to Eagle Forum's new office location, (id. at ¶144); (5) "the referenced Defendants have already or will improperly acquire, disclose, and use Plaintiffs' trade secrets without consent of any kind for those Defendants' own financial gain," (id. at ¶169); and (6) Defendants, including Cori, purposefully accessed and disabled email accounts belonging to ETF employees. (Id. at ¶314).

Cori does not deny that these allegations rise to the level of willful and wanton conduct. Instead, Cori repeats an argument that proliferates her brief: "Plaintiffs fail to allege any specific acts" of Cori except that she orchestrated a robocall for Ted Cruz. (Doc. No. 149 at 8). Cori urges this Court to read Plaintiffs' allegations as referring to Cori only when the complaint refers to her by name. As discussed above, the Court has found this argument unpersuasive because Plaintiffs may refer to the Defendants collectively. Reading the Second Amended Complaint in a light most favorable to Plaintiffs, the Court finds they have alleged Cori engaged in willful and wanton conduct.

### F. Failure to state a claim under the DTSA or MUTSA

Cori next raises two arguments that Counts I and VI should be dismissed. First, Cori claims Plaintiffs failed to allege adequate steps to protect their trade secrets as a matter of law. Second, Cori claims Plaintiffs have failed to allege Cori misappropriated the trade secret at issue, the Schlafly Database.

In Count I, Plaintiffs bring a trade secret misappropriation claim under the Defend Trade Secrets Act of 2016 ("DTSA"), which creates a private cause of action in favor of the "owner of a trade secret that is misappropriated ... if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). In Count VI, Plaintiffs bring a trade secret misappropriation claim under the Missouri Uniform Trade Secrets Act ("MUTSA"), V.A.M.S. § 417.450 et seq. The elements of Plaintiffs' trade secret misappropriation claims under the DTSA and MUTSA are essentially the same. In order to prevail on a claim for misappropriation of a trade secret, a plaintiff must show: (1) the existence of a protectable trade secret; (2) misappropriation of those trade secrets by the defendant; and (3) damages.

A trade secret is defined by the DTSA and MUTSA as "information," including "compilations," that meets two qualifications: (a) the owner thereof has taken reasonable measures to keep such information secret; and (b) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from its disclosure or use. See 18 U.S.C. § 1839(3); V.A.M.S. § 417.453(4). A misappropriation occurs when: (1) a person acquires the trade secret while knowing or having reason to know that he or she is doing so by improper means, (2) a person who has acquired or derived knowledge of the trade secret discloses it without the owner's consent, or (3) when a person who has acquired or derived knowledge of the trade secret uses it without the owner's consent. See Mission Measurement Corp. v. Blackbaud, Inc., No. 16 C 6003, 2016 WL 6277496, at *4 (N.D. Ill. Oct. 27, 2016) (quoting Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc., No. 15CV211, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (citing 18 U.S.C. § 1839(5)); Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC., 422 S.W.3d 312, 322 (Mo. 2014).

The alleged trade secret is the Schlafly Database, "a compilation of business contacts and specific information on some 400,000 plus individuals and organizations, including their donation records to many of the [Schlafly Network] entities, contact information, and other information collected by Mrs. Schlafly that have proven valuable for fundraising efforts over the past 50 years." (Second Amended Complaint, ¶ 153).

Cori first argues that Plaintiffs failed to allege adequate steps taken to protect their trade secret. Under both the MUSTA and DTSA, in order for information to qualify as a trade secret, the owner must take "reasonable measures to keep such information secret." 18 U.S.C. § 1839(3); V.A.M.S. § 417.453(4). Specifically, Cori points to the lack of confidentiality or non-compete

agreements for employees with access to the Schlafly Database and the fact that Roger Schlafly, who is not a trustee, officer, or employee of ETF had access to the Schlafly Database. (Second Amended Complaint, ¶55).

Plaintiffs allegations, taken as true, adequately claim that ETF took reasonable precautions to protect the Schlafly Database. Prior to being digitized, the Schlafly Database was kept in a locked safe. After it was digitized, the Schlafly Database was available on only one computer, kept in a locked ETF office with access granted to only a handful of ETF employees. The Schlafly Database was never disclosed to third parties, with the exception of Roger Schlafly, who wrote the source code and application software that allowed ETF to manage the Schlafly Database.

Neither the lack of confidentiality agreements for the employees with access nor Roger Schlafly's access to the Schlafly Database show as a matter of law that Plaintiffs failed to take reasonable steps to keep the contents of the Schlafly Database secret. "While the existence of a confidentiality or noncompete agreement may be further evidence of the [trade secret]'s confidentiality, the lack of such agreements is not conclusive, as officers of a corporation owe independent fiduciary duties to the corporation to protect trade secrets from disclosure Lyn-Flex W., Inc. v. Dieckhaus, 24 S.W.3d 693, 699 (Mo. Ct. App. 1999). See also Nat'l Rejectors, Inc. v. Trieman, 409 S.W.2d 1, 19 (Mo. 1966) (the holder of a trade secret "may, without losing his protection, communicate it to employees involved in its use. He may likewise communicate it to others pledged to secrecy") (quoting Restatement of Torts § 757); A.B. Chance Co. v. Schmidt, 719 S.W.2d 854, 858 (Mo. App. 1986).

Cori contends that disclosures to employees will, as a matter of law, preclude information from being a trade secret unless the employees are officers because "officers of a corporation owe independent fiduciary duties to the corporation to protect trade secrets from disclosure." Lyn Flex,

42 S.W.3d at 699. However, the sole employee with access to the alleged trade secret in <u>Lyn Flex</u> was the corporation's computer technician, not an officer of the company, and the <u>Lyn Flex</u> court nevertheless found the alleged secret had been adequately protected. Here, Plaintiffs have alleged reasonable efforts to keep the Schlafly Database secret.

Cori next argues that Plaintiffs have not alleged that she misappropriated or improperly acquired the Schlafly Database. The Plaintiffs have alleged that Defendants, including Cori, improperly acquired the Schlafly Database when ETF employee Liz Miller stole a copy of the Schlafly Database and delivered it to SpearTip for decryption. (Second Amended Complaint at ¶¶120-129). Plaintiffs further alleged the Defendants used the Schlafly Database to "promote their activities, including fundraising activities and the promotion of a March 10, 2016 event in Naples, Florida." (<u>Id</u>. at ¶ 130). These allegations are sufficient to state a claim for misappropriation of a trade secret. <u>See</u> <u>Mission Measurement</u>, 2016 WL 6277496, at *4.

### G. Impact of the September 14 and 15 Madison County Orders

On September 14 and 15, 2020, after Defendants filed their motions to dismiss and Plaintiffs responded but before Defendants filed their reply, the Madison County Court entered two orders relevant to this case. On November 3, 2020, this Court ordered the Plaintiffs and Defendants to "brief the Court on the impact of the Judgment and Order entered September 14, 2020" in the Madison County Case ("Madison County Order"). Although the Court did not specifically order the parties to brief the impact of the September 15 order, the parties briefed the impact of both orders.

Both parties agree that to the extent Count X requests "relief over ownership of eagleforum.org and eagleforum.org email addresses," the claim is barred by res judicata due to the September 15 Madison County Order. (Doc. No. 157 at 8). Count X requests declaratory judgment

23

that "Defendants have no legal rights, title, or interests in the Schlafly Database, derivative mailing lists, donor list, data subsets, eagleforum.org, or PhyllisSchlafly.com, and related websites," that ETF is "the sole owner of eagleforum.org, the Eagle Server, and all email accounts hosted or controlled under the Schlafly Network's umbrella" and "that PSRT is the sole owner of PhyllisSchlafly.com."( Second Amended Complaint ¶¶ 302-304). To the extent Count X requests relief related to the ownership of *eagleforum.org* or *eagleforum.org* email addresses, it is dismissed.

The parties went on to raise additional arguments in response to the Court's November 3 Order. Defendants contend first that Plaintiffs' claims for violation of trade secret statutes and tortious interference are barred by the doctrine of litigation immunity and second that Plaintiffs' attempts to hold Defendants liable for publishing the Eagle Forum Report contravene the purpose of trademark law. Plaintiffs argue for the first time that "this court should preclude Defendant Eagle Forum (c)(4) from asserting or arguing here that it holds any ownership interests in the Schlafly Database" because of a separate order issued by the Madison County Court on August 4, 2020. (Doc. No. 157).

These arguments are not responsive to the Court's November 3 Order in that they do not address the impact of the recent Madison County Orders on the instant motions to dismiss. The parties could certainly have raised these arguments in their briefing related to the instant motions yet chose not to. This Court will not consider these additional arguments, and it cautions the parties to ensure future briefs are responsive both to this Court's orders as well as the arguments put forward by opposing parties.

**IV.**     **Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss [140, 142] are **GRANTED** in part and **DENIED** in part. The motions are **GRANTED** only as to the issue of ownership of *eagleforum.org* and *eagleforum.org* email addresses in Count X. The remainder of Count X survives dismissal.

The motion is **DENIED** in all other respects.

Dated this 7th day of January, 2021.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**