## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

PHYLLIS SCHLAFLY REVOCABLE            )
TRUST, et al.,                        )
                                      )
      Plaintiffs,                 )
                                      )
      vs.                         )    Case No. 4:16-cv-01631-JAR
                                      )
ANNE CORI, et al.,                    )
                                      )
      Defendants.                 )

## MEMORANDUM AND ORDER

This matter is before the Court upon the parties' Phase I motions for summary judgment. (Doc. Nos. 194, 198, & 201). Phase I is limited to the following four issues: 1) Plaintiffs' ownership of certain intellectual property and their standing to pursue claims related to that intellectual property; 2) whether the Schlafly Database qualifies as a trade secret; 3) Defendants' ongoing use of Plaintiffs' alleged intellectual property for fundraising purposes; and 4) any alleged damages. The motions are fully briefed and ready for disposition. For the reasons set forth below, Plaintiffs' Motion for Partial Summary Judgment[1] and Defendant Eagle Forum's Motion for Summary Judgment will be denied. Defendant Anne Cori's Motion for Summary Judgment will be granted in part and denied in part as set forth below.

### I.   Background

The background of this case is set out in detail in the Court's April 17, 2017 and February 7, 2021 Orders and incorporated by reference herein. (See Doc. Nos. 56 & 168). Briefly, this

---

[1] As discussed below, Plaintiffs' motion is for summary judgment in name only. The motion is actually a motion for factual rulings, not judgment in Plaintiffs' favor for any claims or defenses.

case is one of several involving a number of the late Phyllis Schlafly's organizations and two of her adult children. Phyllis Schlafly's daughter, Defendant Anne Cori controls Defendant Eagle Forum. Phyllis Schlafly's son, John Schlafly, is the trustee of Plaintiffs Phyllis Schlafly Revocable Trust ("PSRT"), Eagle Trust Fund ("ETF") and Eagle Forum Education and Legal Defense Fund ("EFELDF"). The parties contest the ownership of several pieces of intellectual property: a database of conservative cause donors compiled by Phyllis Schlafly over the course of her life (the "Schlafly Database"), five wordmarks and trademarks, and Phyllis Schlafly's publicity rights.

Phyllis Schlafly executed a transfer of all her intellectual property rights, copyrights, moral rights, and trademark rights to PSRT via an assignment on August 31, 2016 (the "Assignment"). (Doc. No. 202-7). On that same day, Phyllis Schlafly also executed an amendment (the "Amendment") to PSRT to insert "Clause Five: Disbursements After Death Of The Grantor." (Eagle Forum's Statement of Uncontroverted Material Facts (Doc. No. 196 ("Eagle Forum's SUMF") at ¶ 21). Subsection A of the Amendment states that, upon Phyllis Schlafly's death, PSRT shall give all of her "copyrights, moral rights, intellectual property rights, and trademark rights" to the Phyllis Schlafly Royalty Trust II (the "Royalty Trust"). Id. at ¶ 22. Phyllis Schlafly's will devises "all of the rest, residue, and remainder of my property, real and personal" to PSRT. (Doc. No. 202-8 at 3). However, the estate has not distributed assets yet. (Eagle Forum's SUMF at ¶ 36). It remains open in St. Louis County Circuit Court, with claims pending. Id.

The motions implicate the following claims asserted by all Plaintiffs against both Defendants: violation of the Defend Trade Secrets Act ("DTSA") (Count I), trademark infringement (Count III), violation of the Missouri Uniform Trade Secrets Act ("MUTSA")

2

(Count VI), infringement of publicity rights (Count VIII), and declaratory judgment (Count X).
The motions also implicate PSRT and ETF's claim for trademark dilution against both
Defendants (Count V).

## II.   **Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case
and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S.
317, 322–23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa
v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that
no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set
forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is
appropriate in a particular case, the evidence must be viewed in the light most favorable to the
nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). When
multiple parties move for summary judgment, the Court must analyze each motion individually
and on its own merits. Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir.
1983).

## III.   **Defendant Cori's Motion for Summary Judgment**

Defendant Anne Cori moves for partial summary judgment on Plaintiffs' trade secret
claims (Counts I and IV), infringement of mark claims (Counts III, V, and IX), and the claim
related to Phyllis Schlafly's publicity rights (Count VIII). Eagle Forum joins Cori in her motion.
(Doc. No. 193). Defendants raise four arguments in favor of summary judgment. First, they
claim EFELDF cannot maintain Counts I and IV for misappropriation of trade secrets because it
is neither an owner nor licensee of the Schlafly Database. Second, they argue the infringement

3

claims may only be maintained by the owner of the marks, and as such the claims should be dismissed to the extent Plaintiffs admit they are mere licensees. Third, Defendants argue ETF and EFELDF cannot maintain a claim for violation of a right to publicity because they are licensees. Finally, Defendants argue PSRT has failed to show it suffered damages based on the claims at issue, and as such it does not have standing.

Plaintiffs allege that either ETF or PSRT own the intellectual property at issue in this case, and the non-owner Plaintiffs are either licensees or should be treated as owners due to the organizations' close relationships. Plaintiffs further argue that PSRT has shown the value of its intellectual property has been damaged by Defendants' actions. Cori's motion will be granted in part and denied in part.

1.  Trade Secret Claims

Defendants claim that EFELDF cannot maintain a claim for misappropriation pursuant to the DTSA (Count I) or MUTSA (Count IV) because it is not the owner or a licensee of the Schlafly Database, the trade secret at issue. Plaintiffs agree that EFELDF is neither the owner nor a direct user of the Schlafly Database; they claim PSRT owns the intellectual property rights and ETF exclusively possesses and uses the database. However, Plaintiffs nevertheless contend that EFELDF has rights associated with the Schlafly Database because it is "the organization most harmed by [Defendants'] wrongful action…." (Doc. No. 210 at 7). Plaintiffs further claim that all three entities "should be treated as an owner or licensee of the Database for standing purposes" because they function in harmony to advance EFELDF's ultimate goals. Id. They note EFELDF pays a portion of ETF's administrative costs, including the costs of maintaining the Schlafly Database. EFELDF does not have standing to sue for misappropriation under the DTSA

because it is neither a licensee nor owner of the Schlafly Database. However, it does have standing to bring its claim under the MUTSA.

The language of the DTSA limits standing to only owners and licensees. The DTSA allows "[a]n owner of a trade secret" to bring a civil action. 18 U.S.C. § 1836(b)(1). Owner is defined as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. §1839(4). "To state a DTSA claim, a plaintiff must show that he is the owner or licensee of the alleged trade secret." Lamont v. Krane, No. 5:18-CV-04327-EJD, 2019 WL 2113903, at *3 (N.D. Cal. May 14, 2019). See also Focused, Inc. v. Sourcing Group, LLC,  No. 19-CV-11307-ADB, 2020 WL 1892062, at *4 (D. Mass. Apr. 16, 2020) (Ownership is an essential element of a DTSA claim);  AlterG, Inc. v. Boost Treadmills LLC, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019).

Plaintiffs urge this Court to treat EFELDF as an "owner" of the Schlafly Database pursuant to the DTSA because of its close relationship with ETF and PSRT; they claim EFELDF should fictionally be treated as the owner or licensee of the database due to the "harmony" it shares with the actual owner and licensee. (Doc. No. 210 at 7). The Court will not treat EFELDF as the owner of the Schlafly Database for the purpose of its DTSA claim. The language of the DTSA is clear—the cause of action is limited to owners and licensees exclusively. EFELDF is neither and it cannot maintain a cause of action pursuant to the DTSA.

Unlike the DTSA, the MUTSA contains no language expressly limiting claims to owners of a trade secret. Defendants urge the Court to conclude that, like the DTSA, the MUTSA limits its cause of action to owners and licensees. They point out this Court previously stated "[t]he elements of Plaintiffs' trade secret misappropriation claims under the DTSA and MUTSA are essentially the same." (Doc. No. 27 at 4). However, the Court went on to list the similar

elements: "(1) the existence of a protectable trade secret; (2) misappropriation of those trade secrets by the defendant; and (3) damages." Id. Notably missing from this list is ownership of the secret.

Furthermore, the Missouri Supreme Court does not list ownership among the elements required to bring an MUTSA claim. See, Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC, 422 S.W.3d 312, 320 (Mo. 2014) (The elements of misappropriation pursuant to the MUTSA are: "(1) a trade secret exists, (2) the defendant misappropriated the trade secret, and (3) the plaintiff is entitled to either damages or injunctive relief."). Because neither the language of the MUTSA nor decisions interpreting the statute limit the cause of action to owners and licensees, this Court will not create such a requirement. Defendants are entitled to summary judgment against EFELDF on Count I, for misappropriation in violation of the DTSA but not for Count IV, for misappropriation in violation of the MUTSA.

2.  Trademark Claims

Defendants claim they are entitled to partial summary judgment on several of Plaintiffs' infringement claims: Count III, Count V, and Count IX. Plaintiffs contend that they are either the owner or nonexclusive licensee of five marks: the EAGLE word mark, PHYLLIS SCHLAFLY word mark, EAGLE LOGO trademark, EAGLE PIN trademark, and PHYLLIS SCHLAFLY REPORT word mark (collectively, the "Marks"). In Count III, all Plaintiffs allege Eagle Forum and Cori infringed on the Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a). In Count V, PSRT and ETF, but not EFELDF, allege Eagle Forum and Cori diluted the Marks in violation of the Lanham Act, 15 U.S.C. § 1125(c). In Count IX, all Plaintiffs allege Cori and Eagle Forum infringed upon the Marks in violation of Missouri common law. Defendants argue that only the owner or exclusive licensee of the Marks may maintain a claim under § 1125(a), 1125(c), or

Missouri common law, and therefore they are entitled to summary judgment insofar as Plaintiffs admit they are not the owner of a Mark.

Plaintiffs claim the ownership of the Marks is as follows:

| Mark | PSRT | ETF | EFELDF | Other Licensees |
|---|---|---|---|---|
| "EAGLE" word mark | Owner | Licensee | Licensee | Eagle Council, Eagle Forum PAC, and Eagle Forum Collegians |
| "PHYLLIS SCHLAFLY" word mark | Owner | Licensee | Licensee | Phyllis Schlafly Eagles, Phyllis Schlafly American Eagles, RNC for Life, and Eagle Forum Collegians |
| "EAGLE LOGO" trademark | No interest | Owner | Licensee | Eagle Council and Eagle Forum PAC |
| "EAGLE PIN" trademark | No interest | Owner | No interest | No other licensees |
| "PHYLLIS SCHLAFLY REPORT" word mark | No interest | Owner | No interest | No other licensees |

See (Doc. No. 200 (Cori's Statement of Material Facts) at ¶¶ 16-37.

Plaintiffs admit that the licenses are all unwritten, informal, and non-exclusive. The licenses may be revoked by the owner of the Mark at will. For the purposes of the motion for summary judgment, Defendants take Plaintiffs' allegations as to the ownership and other rights to the Marks as true.

a.  Lanham Act § 1125(a)

Defendants argue that only exclusive licensees may pursue a cause of action under § 1125(a)(1).  Plaintiffs respond that non-exclusive licensees may be protected by § 1125(a). Section 1125 provides a cause of action to "any person who believes that he or she is likely to be damaged" by the infringement of a mark. 15 U.S.C. § 1125(a)(1). This broad language appears to grant any plaintiff with Article III standing a cause of action. Lexmark Int'l, Inc. v. Static

Control Components, Inc., 572 U.S. 118, 129 (2014). However, the Supreme Court held "the 'unlikelihood that Congress meant to allow all factually injured plaintiffs to recover persuades us that § 1125(a) should not get such an expansive reading." Id. (Quoting Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 266 (1992). Instead, "the cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by" the statute. Id. "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." Id. at 131–32. Consumers may be factually injured by false advertising, but they cannot maintain a claim. Id. at 132.

Standing is not limited to only exclusive licensees. Defendants rely on Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc., 920 F.3d 704, 708 (11th Cir. 2019) in support of their proposition that only exclusive licensees have a right to sue under § 1125(a). However, the Kroma court did not determine whether a cause of action pursuant to § 1125(a) is limited to only owners and exclusive licensees. Instead, the court considered whether the licensing agreement at issue conferred the right to sue for infringement. Id. at 708. "The plain language of the agreement demonstrates the parties' intent for [licensor] to retain all ownership and enforcement rights. [The plaintiff]—while it may have other rights under the agreement—does not possess the ability to assert its rights in the mark in this proceeding."  Id. Here, Plaintiffs have adequately alleged that the owner of the Marks intended to confer enforcement rights to their licensees.

The Supreme Court in Lexmark found the cause of action was limited to plaintiffs who may suffer an injury to a commercial interest in reputation or sales. A non-exclusive licensee may suffer such an injury, and therefore has standing. "[T]he question of ownership is immaterial to standing under §[1125(a)], since standing may lie with mere users of trademarks."

8

Murphy v. Provident Mut. Life Ins. Co. of Philadelphia, 756 F. Supp. 83, 86 (D. Conn. 1990) (citing Silverstar Enters. Inc. v. Aday, 537 F.Supp. 236, 241 (S.D.N.Y.1982)). See also Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 706 (4th Cir. 2016); Coyne's & Co. v. Enesco, LLC, 565 F. Supp. 2d 1027, 1043–44 (D. Minn. 2008). As such, all Plaintiffs may pursue a § 1125(a) claim.

     b.  Lanham Act § 1125(c)

Defendants next claim that only owners of a mark have standing to sue pursuant to § 1125(c). Only PSRT and ETF allege a violation of the Marks pursuant to § 1125(c). By its terms, §1125(c)(5) infers a cause of action upon only "[t]he owner of a famous mark…." "Nothing in the Lanham Act suggests that 'owner' in § 1125(c)(1) includes by definition anything other than the actual owner of the famous mark." STX, Inc. v. Bauer USA, Inc., No. C 96-1140 FMS, 1997 WL 337578, at *4 (N.D. Cal. June 5, 1997). Plaintiffs concede that a non-owner does not have standing to sue pursuant to § 1125(c). PSRT is not the owner of the EAGLE LOGO, EAGLE PIN, and PHYLLIS SCHLAFLY REPORT marks and ETF is not the owner of the EAGE and PHYLLIS SCHLAFLY marks.  As such, partial summary judgment in favor of Defendants on Count V is appropriate as to those marks.

     c.  Missouri Common Law Infringement and Unfair Competition

Defendants next argue that Missouri common law requires ownership of a mark to a claim. Plaintiffs respond that "[t]he same facts that support a suit for federal trade mark infringement support a suit for unfair competition and common law infringement under Missouri law." Cmty. of Christ Copyright Corp. v. Devon Park Restoration, 683 F. Supp. 2d 1006, 1016 (W.D. Mo. 2010). Thus, Plaintiffs claim that because they are entitled to bring a §1125(a) claim under federal law, they may also bring a claim under Missouri law.

Although the claims are based upon many of the same facts, Missouri courts require ownership of a mark to bring a claim for infringement. See Sw. Bell Yellow Pages, Inc. v. Wilkins, 920 S.W.2d 544, 548 (Mo. Ct. App. 1996) ("To state a cause of action for trademark infringement, the claimant must allege the following: (1) ownership of a distinctive mark; and (2) use of the similar mark is likely to cause confusion."). See also Steak n Shake Co. v. Burger King Corp., 323 F. Supp. 2d 983, 991 (E.D. Mo. 2004); Hallmark Indus., Inc. v. Hallmark Licensing, LLC, 417 F. Supp. 3d 1180, 1189 (W.D. Mo. 2019) (Under Missouri law, "in order to maintain claim for common law unfair competition, the plaintiff must own the mark."). As such, Defendants are entitled to summary judgment on Count IX against EFELDF as to all of the Marks, against PSRT as to the Eagle LOGO, EAGLE PIN, and PHYLLIS SCHLAFLY REPORT marks, and against ETF as to the EAGLE and PHYLLIS SCHLAFLY marks.

   3.   Publicity Rights

Defendants next claim they are entitled to summary judgment on Count VIII, for infringement of Phyllis Schlafly's publicity rights, against ETF and EFELDF. Plaintiffs contend PSRT owns the rights, and Defendants take this as true for the purposes of summary judgment. ETF and EFELDF, along with Phyllis Schlafly Eagles, Phyllis Schlafly's American Eagles, and Eagle Council are licensees of the publicity rights. The licensees hold unwritten, informal, and non-exclusive licenses. Defendants contend that "[a] nonexclusive licensee acquires no proprietary interest in the publicity rights of the licensor and accordingly has no standing to sue for violation of those rights." Bi-Rite Enterprises, Inc. v. Button Master, 555 F. Supp. 1188, 1200 (S.D.N.Y. 1983). Plaintiffs agree that a bare licensee does not have standing to bring a claim for misappropriation of publicity rights. They argue ETF and EFELDF are "co-operative entities within the Phyllis Schlafly Eagles network" and as such all three Plaintiffs should be recognized

as holders of a singular exclusive license to use Phyllis Schlafly's publicity rights. (Doc. No. 210 at 12).

Plaintiffs claim the facts of this case are similar to Polyclad Laminates, Inc. v. MacDermid, Inc., an unpublished patent case from the District Court for the District of New Hampshire. No. CIV. 99-162-M, 2001 WL 274722 (D.N.H. Feb. 13, 2001). The plaintiffs, Polyclad and Alpha, sued MacDermid for patent infringement. Polyclad is the holder of the patent, and Alpha is the only organization licensed to carry out the patented process. Alpha also possesses the right to sublicense their right to carry out the patented process to third parties. MacDermid moved to dismiss Alpha as a party, as Alpha is not the owner of the intellectual property at issue. The court found that "under certain circumstances, a licensee may possess sufficient interest in the patent to have standing to sue as a co-plaintiff with the patentee." Id. at *2 (quoting Ricoh Co., Ltd. v. Nashua Corp., 947 F. Supp. 21, 23 (D.N.H.1996)). To have standing, the licensee must have the "promise that others shall be excluded from practicing the invention." Id. The court determined that because Alpha possessed the right to sublicense the patent, it had at least an implicit promise that others will be excluded from using the patent. Id.

Polyclad is not relevant to this case. First, the claim at issue in Polyclad was a federal patent law claim, while Count VIII is a claim for infringement of the right to publicity under Missouri law. Second, the decision in Polyclad was not based, as Plaintiffs insist, on the relationship between Polyclad and Alpha. Instead, standing to sue was based on Alpha's exclusive rights under the terms of the license agreement. ETF and EFELDF possess no such rights. Plaintiffs urge the Court to allow them to bring infringement claims based on their relationship with the owner of the intellectual property at issue. The Court will not expand the

category of parties with standing to bring an infringement claim. As such, Cori's motion for summary judgment against ETF and EFELDF as to Count VIII will be granted.

4.  Damages

Defendants finally argue summary judgment is appropriate against PSRT on Counts I, III, V, VIII, and IX because PSRT has not shown it suffered damages, as PSRT does not derive income from the Schlafly Database, the Marks, or Phyllis Schlafly's publicity rights. As such, Defendants claim PSRT lacks Article III standing to pursue these claims.

"[S[tanding consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560). Contrary to Defendants' assertion, an injury in fact may be any "invasion of a legally protected interest," is not limited to harm to a pecuniary interest. Id. at 339-40. Furthermore, PSRT does not claim that its damages arise from loss of income, but rather from the diminution of their property's value. Plaintiffs claim EFELDF and ETF have suffered loss of supporters and donors, as well as loss of income, stemming from Defendants' use of their intellectual property, and this use reduces the value of the intellectual property. (Doc. No. 210 at 14). These allegations of damages satisfy the Article III requirement.

**IV.   Eagle Forum's Motion for Summary Judgment**

Defendant Eagle Forum, joined by Cori, filed a motion for summary judgment on Counts I and VI of the DTSA and MUTSA respectively. Both claims allege the Defendants used the Schlafly Database without permission of its owner, PSRT. Defendants also request partial summary judgment on Count X, for declaratory judgment, insofar as that claim seeks a

declaration that Defendants have no legal rights, title, or interests in the Schlafly Database or its derivative mailing lists, donor lists, and data subsets. Defendants argue these claims must be dismissed because, even taking PSRT's allegations as to the existence of the Schlafly Database as true,[2] PSRT is not the owner of the Schlafly Database, and Plaintiffs do not have standing to bring these claims.

The Court will assume for the purposes of this motion that the Schlafly Database, as described by Plaintiffs, exists. Plaintiffs explain the Schlafly Database is a "compilation of information regarding donors and supporters of Phyllis Schlafly, compiled by Phyllis Schlafly over the course of her lifetime." (Doc. No. 203 at ¶ 1). Prior to August of 2016, when Phyllis Schlafly executed the Assignment and Amendment, the parties agree the Schlafly Database was the property of Phyllis Schlafly. There remains a material question of fact as to whether PSRT owns the Schlafly Database, and as such Defendant Eagle Forum's motion for summary judgment will be denied.

In August of 2016, the Assignment transferred Phyllis Schlafly's "copyrights, moral rights, intellectual property rights, and trademark rights" to PSRT. (Doc. No. 202-7). Defendants claim the database is Phyllis Schlafly's tangible personal property—a collection of lists—and not a copyright, moral right, intellectual property right, or trademark right. Therefore, they argue the database did not pass to PSRT via the Assignment. Instead, it became the property of the estate

---

[2]      Defendants contend that the Schlafly Database is a concept invented by John Schlafly when he was removed as President of Eagle Forum in 2016 in order to deny Defendants access to their donor lists. Defendants claim Phyllis Schlafly's various organizations had access to their individual donor lists via a database maintained by ETF. Although the donor lists were maintained by ETF, Defendants contend neither Phyllis Schlafly nor any of her organizations thought of the database as a unitary piece of property.

upon Phyllis Schlafly's death.[3] Plaintiffs allege the Schlafly Database is a trade secret, a type of intellectual property right,[4] and as such it was transferred to PSRT. Defendants respond that if the Schlafly Database is intellectual property, it passed from PSRT to the Royalty Trust upon Phyllis Schlafly's death pursuant to the Amendment.

Defendants have not shown that the Schlafly Database was not transferred to PSRT via the Assignment. First, there remains a material question of fact as to whether the Schlafly Database is a trade secret, a type of intellectual property. "A trade secret meets two qualifications: (a) its owner has taken reasonable measures to keep it secret; and (b) it derives independent economic value from not being known to or easily ascertainable by another person who can obtain economic value from it." Perficient, Inc. v. Munley, No. 4:19-CV-01565, 2019 WL 4247056, at *9 (E.D. Mo. Sept. 5, 2019) (citing 18 U.S.C. § 1839(3); Mo Rev. Stat. § 417.453(4)). Plaintiffs adequately alleged that the Schlafly Database is a trade secret, (Doc. No. 168 at 22), however, whether information constitutes a trade secret is a question of fact. Roeslein & Assocs., Inc. v. Elgin, No. 4:17 CV 1351 JMB, 2019 WL 195089, at *10 (E.D. Mo. Jan. 15, 2019) (citing Penalty Kick Mgmt., Ltd. v. Coca Cola Co., 318 F.3d 1284, 1291 (11th Cir. 2003)). A factfinder could reasonably conclude that the Schlafly Database is a trade secret that passed to PSRT via the Assignment.

Second, the Schlafly Database is intellectual, not tangible, property. Defendants describe the database as "a collection of '*information* about conservative-cause donors, donation histories,

---

[3]     Plaintiffs claim that if the Schlafly Database did become the property of the estate, it then passed to PSRT via the pour-over clause in Phyllis Schlafly's will. However, the estate is still open and has not yet distributed its property. Any property that passed to Phyllis Schlafly's estate upon her death is still the property of the estate.

[4]     Intellectual property is "[a] category of intangible rights protecting commercially valuable products of the human intellect" which includes trade-secret rights. INTELLECTUAL PROPERTY, Black's Law Dictionary (11th ed. 2019).

and other information obtained through [Phyllis Schlafly's] personal network and business dealings.'" (Eagle Forum's SUMF at ¶ 3) (quoting Doc. No. 138 at ¶ 45) (emphasis added). Although the Schlafly Database once existed in physical form and could be produced in a tangible form by printing the donor information, there is no evidence that it currently exists in physical form. Moreover, as Defendants themselves admit, the Schlafly Database is the information contained within the database, not any physical lists derived from the information. The collection of information that comprises the Schlafly Database is intellectual, not tangible property.[5] As such, if the Schlafly Database as described by Plaintiffs exists, it may have passed to PSRT as intellectual property.[6]

Next, Defendants claim that if the Schlafly Database passed to PSRT via the Assignment, it was transferred to the Royalty Trust upon Phyllis Schlafly's death, pursuant to the Amendment. The Amendment states that PSRT shall transfer all of Phyllis Schlafly's "copyrights, moral rights, intellectual property rights, and trademark rights" to the Royalty Trust upon her death. (Eagle Forum's SUMF at ¶ 21). Plaintiffs respond that PSRT has not yet transferred any assets to the Royalty Trust and it still owns the Schlafly Database. John Schlafly, the Trustee of PSRT, testified that PSRT is a living trust which was intended to terminate upon Phyllis Schlafly's death and distribute its assets to beneficiaries including the Royalty Trust.

---

[5]     To the extent Defendants claim the Schlafly Database did not pass via the Assignment to PSRT because it is Phyllis Schlafly's personal property, intellectual property is a type of personal property.  "Personal property is defined as any 'movable or intangible thing that is subject to ownership and not classified as real property.'" Weicht v. Suburban Newspapers of Greater St. Louis, Inc., 32 S.W.3d 592, 600 (Mo. Ct. App. 2000)(quoting BLACK'S LAW DICTIONARY 1233 (7th ed.1999). Intellectual property is an intangible thing, subject to ownership, and not classified as real property.

[6]     There remains a question of material fact as to whether Phyllis Schlafly had the capacity to execute the Assignment. Defendants claim the Schlafly Database never passed to PSRT via the Assignment because Phyllis Schlafly was not competent when she signed the contract.

(Doc. No. 202-1 at 58). However, due to the lawsuits PSRT is currently engaged in, it has yet to terminate and make its distributions.

Defendants respond that the Amendment was mandatory and does not contain exceptions for litigation. They point out this lawsuit was initiated by PSRT after Phyllis Schlafly's death, so PSRT has no reason to delay in transferring the assets. While the Amendment may be mandatory, Defendants have not shown that it was automatic. Furthermore, Defendants do not have the right to challenge PSRT's failure to transfer its assets. See State ex rel. Nixon v. Hutcherson, 96 S.W.3d 81, 83 (Mo. 2003) (quoting Austin Wakeman Scott & William Franklin Fratcher, The Law of Trusts vol. IVA, § 364, p. 108 (4th ed. 1989) ("[N]o one except a beneficiary or one suing on his behalf can maintain suit to enforce the trust."). Defendants have provided no evidence that PSRT transferred any property to the Royalty Trust. PSRT is the owner of any property it acquired via the Assignment. There remain material questions of fact as to the ownership of the Schlafly Database, so Eagle Forum's motion for summary judgment will be denied.

## V.    Plaintiffs' Motion for Summary Judgment

Plaintiffs' Motion for Summary Judgment does not ask the Court to enter judgment in their favor on any of the twelve remaining counts in their Second Amended Complaint. Instead, they request the Court to make the following seven factual rulings:

1.  PSRT owns the Schlafly Database;
2.  PSRT owns the name, image, and likeness of Phyllis Schlafly;
3.  ETF owns the "EAGLE LOGO" mark;
4.  ETF owns *The Phyllis Schlafly Report*;
5.  Defendants have used Phyllis Schlafly's name, image, and likeness without right or permission;
6.  Eagle Forum has used *The Phyllis Schlafly Report* without right or permission; and
7.  Eagle Forum has used the "EAGLE LOGO" mark without right or permission.

"A party may move for summary judgment, *identifying each claim or defense*—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56. Defendants point out that Plaintiffs do not tie their requests to any claim or defense, yet Plaintiffs do not explain why or how their requested relief is appropriate. Plaintiffs' motion was not properly raised, and the Court cannot grant it. Summary judgment may be entered only if "the moving party is entitled to a *judgment* as a matter of law." Giordano v. Lee, 434 F.2d 1227, 1230 (8th Cir. 1970) (quoting Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962)) (emphasis added). Here, Plaintiffs ask not for judgment, but instead for factual rulings.

The Federal Rules of Civil Procedure set out the process for making factual rulings rather than entering judgment on a claim or defense. Pursuant to Rule 56(g), a party must first move for summary judgment. Then, "[i]f the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Id. "[T]he procedure prescribed in subdivision (g) is designed to be ancillary to a motion for summary judgment." 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2737 (4th ed. Sept. 2018 update). A court may make factual rulings only after it has considered a motion for summary judgment and declined to grant complete relief, not separate from the motion. Plaintiffs' motion for factual rulings is not accompanied by a motion for summary judgment, so it must be denied.[7] See Arado v. Gen. Fire Extinguisher Corp., 626 F. Supp. 506, 509 (N.D. Ill. 1985) (denying a motion for independent factual rulings under Rule

---

[7]     Defendants' motions for summary judgment do not allow the Court to consider Plaintiffs' motion for factual rulings, as the motions must be analyzed individually. Wermager, 716 F.2d at 1214.

17

56(d), the predecessor to 56(g), because the "issue-narrowing provision operates only in the wake of an unsuccessful (and proper) motion under Rule 56(a) or 56(b).").

Even if Plaintiffs' motion were properly raised, the Court would exercise its discretion and decline to make the requested factual rulings. See Fed. R. Civ. P. 56(g) (The court "*may* enter an order stating any material fact") (emphasis added). Ruling on these partial issues of ownership and use of this property is premature and could lead to jury confusion. Additionally, Plaintiffs' requests for rulings often oversimplify the factual and legal questions surrounding the intellectual property at issue.

For example, Plaintiffs request the Court enter an order finding the Schlafly Database is owned by PSRT. However, they do not clarify what property rights in the Schlafly Database are at issue. In their memorandum, Plaintiffs describe the Schlafly Database as "the collection that was assembled and built over decades of Phyllis Schlafly supporters, donors, fans, subscribers, members." (Doc. No. 202 at 2). Do Plaintiffs seek a declaration that PSRT has the right to use the Paradox database in which this information is contained? Do they seek a declaration that PSRT owns the intellectual property which comprises the database? Is PSRT's right to the Schlafly Database exclusive or non-exclusive?

While it is unclear based on Plaintiffs' motion what property rights they are seeking, in their Second Amended Complaint, as well as their response to Cori's Motion for Partial Summary Judgment, Plaintiffs identify the Schlafly Database as a trade secret. (Doc. Nos. 138 & 210). The Court cannot determine whether Plaintiffs own a trade secret on a motion for summary judgment because "[t]he existence…of a trade secret usually is treated as a question of fact." Roeslein, No. 4:17 CV 1351 JMB, 2019 WL 195089, at *10.

18

Additionally, much of Plaintiffs' motion is premised upon their argument that "[n]o persons or entities apart from the two competing factions have asserted any claims or interest in any of this intellectual property (in this court or anywhere). Therefore, for each piece of property at issue, there are only three possible outcomes:" 1) Plaintiffs own the property, 2) Defendants own the property, or 3) both Plaintiffs and Defendants possess rights to the property. (Doc. No. 223). However, Defendants asserted that either the Royalty Trust or Phyllis Schlafly's estate own much of the intellectual property at issue in this matter—including the Schlafly Database and Phyllis Schlafly's publicity rights. Plaintiffs claim that their interests are aligned with Phyllis Schlafly's estate, but they fail to explain why this alleged "alignment" with a third party somehow grants them standing to enforce claims on its behalf.

Finally, Plaintiffs make the bizarre argument that Eagle Trust Fund is not, in fact, a trust. Defendants claim ETF is only entitled to hold "donations and subscriptions paid to the Trustees," pursuant to its Declaration of Trust. (Doc. No. 213-25 at 2). Plaintiffs respond that ETF is not a trust; it is an unincorporated association and therefore may own any property. Specifically, Plaintiffs claim ETF owns the EAGLE LOGO mark and the *Phyllis Schlafly Report*. This argument is unsupported by legal citations and contradicts both the Second Amended Complaint and the documents establishing ETF as a trust. In the Second Amended Complaint, Plaintiffs explain ETF was settled under Illinois Law by Phyllis Schlafly and identify the organization as a "Trust." (Doc. No. 138 at 6). Furthermore, ETF was established via a Declaration of Trust as a "not-for-profit Trust." (Doc. No. 213-25 at 2).

Plaintiffs' motion for summary judgment is not properly raised. The Court cannot make factual rulings without first ruling on a motion for judgment on a claim or defense. Moreover,

even if the motion were properly raised, the Court would decline to exercise its discretion to make factual rulings.

## VI.    Conclusion

Cori has shown that the parties do not have sufficient rights in the intellectual property at issue to maintain certain claims. Summary judgment in favor of Defendants is warranted against EFELDF on Counts I, VIII, and IX. Partial summary judgment in favor of Defendants against PSRT as to the EAGLE LOGO, EAGLE PIN, and PHYLLIS SCHLAFLY REPORT marks in Counts V and IX is also appropriate. Finally, summary judgment against ETF on Count VIII and partial judgment as to the EAGLE and PHYLLIS SCHLAFLY marks in Counts V and IX in favor of Defendants is warranted. Material questions of fact as to the ownership of the intellectual property at issue in this case remain, so the rest of Cori's motion for summary judgment and Eagle Forum's motion for summary judgment must be denied. Finally, Plaintiffs' motion is not properly raised, and the Court cannot consider it.

Accordingly

**IT IS HEREBY ORDERED** that Defendant Anne Cori's Motion for Summary Judgment [198] is **GRANTED in part** and **DENIED in part**, as set forth above.

**IT IS FURTHER ORDERED** that Defendant Eagle Forum's Motion for Summary Judgment [194] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment [201] is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall submit a joint proposed scheduling plan within **fourteen days**.

Dated this 28th day of March, 2022.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**