1  Q.   You don't remember whether you told Elizabeth Miller to
2       give data to SpearTip?
3            MR. SOLVERUD:  Well, now you changed your
4       question.  You went from drives to data, right?
5            MR. SWEENEY:  Okay.  Well, that's fine.  Let's
6       be very, very clear here.  Because I don't know why
7       Elizabeth Miller chose to put data on a thumb drive and
8       gave it to SpearTip.
9  BY MR. SWEENEY:
10 Q.   Do you know -- strike that.
11           Did you ever tell Elizabeth Miller to give
12      information to SpearTip?
13 A.   I don't remember.
14 Q.   Did you ever have any conversation with Elizabeth Miller
15      about obtaining information for you or for Eagle Forum?
16 A.   Well, nothing would be for me.  It would only be for
17      Eagle Forum.
18 Q.   Okay.
19 A.   And this was a temporary restraining order.
20 Q.   Okay.  So you did have a conversation with her about
21      obtaining information for Eagle Forum --
22 A.   I didn't -- I didn't say that.
23 Q.   -- pursuant to the temporary restraining order?
24 A.   I did not say that.
25           MR. SOLVERUD:  Objection.  Objection.

```
 1  Q.   Okay.  Did you provide her any instructions when you sent
 2       that copy of the TRO?
 3  A.   No.
 4  Q.   Did you ask her to do anything when you sent her that
 5       copy of the TRO?
 6  A.   No.
 7  Q.   Did you ever mention SpearTip to Elizabeth Miller?
 8  A.   I do not remember that.
 9  Q.   When did you first become aware of the existence of a
10       company called SpearTip?
11  A.   I don't remember.
12  Q.   Did you become aware of the existence of SpearTip prior
13       to 2017?
14  A.   Yes.
15  Q.   How did you learn about the existence of SpearTip?
16            MR. SOLVERUD:  Objection.  Instruct the witness
17       not to answer to the extent it calls for any
18       communications between counsel and client.
19            MR. SWEENEY:  So is it the assertion that the
20       answer to the question is privileged?  I'm just making it
21       clear that she's not answering because you've asserted
22       privilege.
23            MR. SOLVERUD:  You can ask her if she has --
24       you can ask her outside of communications with counsel if
25       she had some knowledge.  But to the extent -- I'm telling
```

```
 1        her I'm instructing her not to answer to the extent that
 2        it's based on a communication between client and counsel.
 3                 MR. SWEENEY:  All right.  I think that answers
 4        the question well enough.
 5   BY MR. SWEENEY:
 6   Q.   So, Mrs. Cori, did your attorneys instruct Elizabeth
 7        Miller to deliver any information to SpearTip?
 8   A.   I don't know that.
 9   Q.   You don't know.
10                 Okay.  Did you instruct any of your
11        attorneys --
12                 MR. SOLVERUD:  Objection.  Instruct the witness
13        not to answer on grounds of attorney-client privilege
14        communications between client and counsel.
15                 MR. SWEENEY:  I'll refer you to US versus Long
16        328 F. Supp. 233 at 235-236.  "Privilege only applies if
17        (1) the asserted holder of the privilege is or sought to
18        become a client."  That works.
19                 "The person to who the communication was made
20        (a) is a member of the bar of a court."  That applies.
21                 "In connection with this communication is
22        acting as a lawyer."  That works.
23                 "The communication relates to a fact of which
24        the attorney was informed."
25                 Instructing an attorney to deliver a message to
```