UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PHYLLIS SCHLAFLY REVOCABLE TRUST, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Cause No. 4-16-cv-01631-JAR ) |
| ANNE CORI, et al., | ) ) ) |
| Defendants. | ) |

## DEFENDANT'S MOTION FOR SANCTIONS

Defendant Anne Schlafly Cori ("Defendant") hereby moves the Special Master for sanctions against Plaintiffs Phyllis Schlafly Revocable Trust, Eagle Trust Fund and Eagle Forum Education & Legal Defense Fund (collectively, "Plaintiffs") for their failure and refusal to comply with the directives of the Special Master, including but not limited to the Special Master's Orders entered in this case, regarding (1) Plaintiffs' amended written responses to Phase II discovery and (2) information related to the predictive coding / technology assisted review (TAR) utilized by Plaintiffs in this lawsuit. In support of her Motion, Defendant states as follows:

**Plaintiffs' Failure and Refusal to Provide Amended Written Discovery Responses**

1. Under Special Master's Order #1, Plaintiffs and Defendant were required to meet with the Special Master on February 27, 2023 to discuss, *inter alia*, the format of Plaintiffs' written responses to Phase II discovery:

> 7. At the Zoom conference on **February 27, 2023, at 10:00 AM**, the parties should come prepared to discuss (1) the format of Plaintiffs' written responses to discovery; (2) the status, format and substance of Plaintiffs' privilege log(s); and (3) the assertions of privilege during the Phase II deposition of Defendant

See Special Master's Order # 1 [Doc. No. 278, ¶ 7].

2. During the meeting on February 27, 2023, the Special Master directed Plaintiffs to amend their written discovery responses and advise Defendant and the Special Master, by March 1, 2023, when such amended written discovery responses would be served:

> 8. Plaintiffs shall amend each of their written responses to Defendant's Phase II document requests to identify (1) the documents by bates numbers that are being produced in response to each discovery request, and (2) if each Plaintiff is withholding any documents from production, including pursuant to an assertion of attorney-client privilege or work product doctrine, in response to each discovery request. On or before **March 1, 2023**, Plaintiffs shall advise Defendant and the Special Master when Plaintiffs will serve their amended responses to Plaintiffs' Phase II document requests.

See Special Master's Order #2 [Doc. No. 279, ¶ 8].

3. Plaintiffs failed and refused to advise when they would serve their amended written discovery responses to Phase II discovery requests. This issue was raised by Defendant in her previously filed *Motion to Enforce Compliance with Special Master's Order #2* [Doc. No. 280].

4. During a meeting with the parties on March 7, 2023—one day after Defendant's Motion to Enforce had been filed—the Special Master directed Plaintiffs to serve their amended written discovery responses "without exception" by March 17, 2023:

> 7. Plaintiffs shall amend each of their written responses to Defendant's Phase II document requests to identify (1) the documents by bates numbers that are being produced in response to each discovery request, and (2) if each Plaintiff is withholding any documents from production, including pursuant to an assertion of attorney-client privilege or work product doctrine, in response to each discovery request. Plaintiffs shall serve their amended written responses to Plaintiffs' Phase II document requests on or before **March 17, 2023** without exception.

See Special Master's Order #3 [Doc. No. 281, ¶ 7].

5. Plaintiff did not serve amended written responses to Phase II document requests on or before March 17, 2023.

6. Instead, on March 20, 2023, Plaintiffs provides three (3) excel spreadsheets containing tables identifying written discovery requests and providing Bates ranges. There was no amendment of Plaintiffs' written discovery responses themselves. See Email from P. Sweeney dated March 20, 2023, a true and accurate copy of which is attached hereto as **Exhibit A**.

7. Because Defendant disputed that providing spreadsheets did not comply with Special Master's Order #3, the parties agreed, and the Special Master ordered (in Special Master's Order #4), that Plaintiffs would "amend their actual written responses" to (1) withdraw the general objection to attorney-client privilege; (2) specifically state whether each Plaintiff is withholding any documents from production, including pursuant to an assertion of attorney-client privilege or work product doctrine, with regard to each discovery request; and (3) incorporate by reference the spreadsheets previously produced by Plaintiffs:

> 6. Special Master Order #3 stated that Plaintiffs shall amend each of their written responses to Defendant's Phase II document requests to identify (1) the documents by bates numbers that are being produced in response to each discovery request, and (2) if each Plaintiff is withholding any documents from production, including pursuant to an assertion of attorney-client privilege or work product doctrine, in response to each discovery request. Special Master Order #3 further stated that Plaintiffs shall serve their amended written responses to Plaintiffs' Phase II document requests on or before **March 17, 2023** without exception.
>
> Defendant objected to Plaintiffs amending their written responses through excel spreadsheets. By agreement of the parties, Plaintiffs shall on or before **March 24, 2023**, amend their actual written responses to (1) withdraw the general objection to attorney-client privilege; (2) specifically state whether each Plaintiff is withholding any documents from production, including pursuant to an assertion of attorney-client privilege or work product doctrine, with regard to each discovery request; and (3) incorporate the spreadsheets produced on March 17, 2023 by reference.

See Special Master's Order #4 [Doc. No. 284, ¶ 6].

8. Notwithstanding the directive from the Special Master, Plaintiffs did not serve amended written responses to Phase II discovery requests on or before March 24, 2023.

9. Counsel for Defendant has followed up on this issue with e-mail correspondence to Plaintiffs' counsel dated March 27, March 29, April 4, April 10 and April 12, 2023. See Email Correspondence between A. Gregg and P. Sweeney from March 23 to April 4, 2023, a true and accurate copy of which is attached hereto as **Exhibit B**; see also Email Correspondence between A. Gregg and P. Sweeney from April 6 to April 17, 2023, a true and accurate copy of which is attached hereto as **Exhibit C.**

10. On April 12, 2023, Plaintiffs' counsel advised that "[t]he updated written responses will be coming tomorrow." See **Exhibit C**.

11. Plaintiff did not provide amended written discovery responses on April 13, 2023 or thereafter.

12. On April 17, 2023, counsel for Defendant confirmed that "[n]otwithstanding your representation below, we did not receive the amended written discovery responses on April 13, 2023. Again, these were due by **March 24, 2023** under Special Master's Order #4." See **Exhibit C** (emphasis in original).

13. As of the date of this filing, Plaintiffs' failure and refusal to timely provided amended written discovery responses to Defendant's Phase II discovery requests stretches back nearly seven (7) weeks, when Plaintiffs were ordered (but refused) to even advise Defendant and the Special Master when amended written discovery responses would be served. See Special Master's Order #2 [Doc. No. 279, ¶ 8]. Such sustained defiance to the directives and orders of the Special Master is sanctionable.

SL 5949664.4

14. Rule 37(b) provides that "[i]f a party ... fails to obey an order to provide or permit discovery… the court where the action is pending may issue further just orders." See Fed. R. Civ. P. 37(b)(2)(A). Such "just orders" are specifically enumerated under Rule 37(b) and include "dismissing the action or proceeding in whole or in part." Id. at 37(b)(2)(A)(iii), (v). Indeed, it is well-established that dismissal as a discovery sanction is available if there is "(1) an order compelling discovery, (2) a willful violation of the order, and (3) prejudice to the other party." See Bergstrom v. Frascone, 744 F.3d 571, 576 (8th Cir. 2014) (quoting Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000)).

15. In light of Plaintiffs' sanctionable conduct, Defendant requests that the Special Master (1) reallocate and apportion the entirety of his costs to Plaintiffs, whose bad faith continues to frustrate the progress of these proceedings; (2) award Defendant her attorneys' fees in connection with the entirety of these special master proceedings; (3) submit a report to United States District Court Judge John A. Ross for the Eastern District of Missouri ("Judge Ross") with a finding that these special master proceedings have been completely frustrated and/or become an exercise in futility in light of Plaintiffs' repeated and ongoing refusal to comply with orders from the Special Master; (4) submit a report to Judge Ross recommending that Plaintiffs' claims be dismissed or, in the alternative, that Judge Ross vacate the current trial setting and impose a different sanction upon Plaintiffs, sufficient to address the egregiousness of Plaintiffs' conduct as well as the prejudice visited upon Defendant; and (5) grant any additional and/or further relief that the Special Master deems appropriate given the circumstances.

**Plaintiffs' Failure and Refusal to Provide Information Related to TAR Used by Plaintiffs**

16. The Special Master's Orders entered in this case reflect various attempts by the parties to address disputes over the ESI protocol unilaterally utilized by Plaintiffs for their Phase

5

SL 5949664.4

II document production. See Special Master's Order #1 [Doc. No. 278, ¶ 5]; see also Special Master's Order #2 [Doc. No. 279, ¶ 5].

17. In response to Plaintiffs' failure to comply with different directives from the Special Master regarding their privilege log, the "Special Master directed the parties to have a conference call with Avalon (Plaintiffs' eDiscovery vendor) about the privilege log and other issues with Plaintiffs' document production on March 22, 2023." See Special Master's Order #4 [Doc. No. 284, ¶ 2].

18. On March 23, 2023, Defendant's counsel reported on its conversation with Avalon, as well as information Avalon agreed to provide, and Plaintiffs agreed to advise Defendant and the Special Master when such requested information would be available by March 27, 2023:

> 4. During the telephone conference with Avalon, Defendant requested information from Avalon about Plaintiffs' use of predictive coding / TAR in this case. On March 23, 2022, Defendant's counsel reported the following to the Special Master:
>
>   a. Avalon confirmed that it had been first engaged by Plaintiffs on October 18, 2022.
>
>   b. Avalon confirmed that there was no written protocol or memorandum regarding how predictive coding / TAR was developed and trained in this case.
>
>   c. Avalon confirmed that part of the data relied upon by Plaintiffs was from an outside discovery vendor in other litigation. For this data, Avalon was not involved in the collection or processing of that data and does not know whether the data had already been filtered or restricted, including with the use of search terms.
>
>   d. Avalon confirmed that it never performed a richness sample prior to review to measure the successfulness of the predictive coding / TAR.
>
>   e. Avalon committed to providing the following information to Defendant: (1) the timing, metrics, results and other data associated with prior elusion tests; (2) parameters for elusion testing; (3) information on how the predictive coding / TAR was validated; (4) any and all recall and precision notes from testing; and (5) information about the seed set(s), including the number of documents that had been manually coded at the time of each elusion test as well as the specific number of documents that had been coded as relevant and coded as non-relevant.

SL 5949664.4

See Special Master's Order #4 [Doc. No. 284, ¶ 4].

19. On March 27, 2023, Plaintiffs' counsel represented that he had received the information requested from Avalon, and even read aloud from some of the data during the conference with Defendant's counsel and the Special Master. Counsel for Plaintiffs represented that the information from Avalon would be provided to Defendant and the Special Master later that day, i.e., on March 27, 2023.

20. Notwithstanding the representations of Plaintiffs' counsel, and the fact that he literally had the information in his possession on March 27, 2023, Plaintiffs did not provide the TAR information from Avalon on March 27, 2023.

21. Counsel for Defendant followed up on this issue with e-mail correspondence to Plaintiffs' counsel dated March 27, March 29 and April 4, 2023. See **Exhibit B.**

22. During a meeting with the Special Master on April 10, 2023, Plaintiffs' counsel agreed (again) to "produce the information related to predictive coding / TAR done in this case, including information related to elusion testing and parameters, as well as precision and recall notes (as discussed on March 27 and in subsequent e-mails) by **April 14, 2023**." See Email from A. Gregg dated April 7, 2023, a true and accurate copy of which is attached hereto as **Exhibit D** (emphasis in original).

23. Notwithstanding the additional representations of Plaintiffs' counsel, as well as the fact that Plaintiffs' counsel had the information in his possession as early as March 27, 2023, Plaintiffs still did not provide the TAR information from Avalon on April 14, 2023.

24. On April 17, 2023, counsel for Defendant confirmed that Defendant "did not receive the information related to the predictive coding / TAR done by Plaintiffs in this case, including information related to elusion testing and parameters, as well as precision and recall

7

SL 5949664.4

notes, on **April 14, 2023**. As a reminder, you were reading from this information during our call with Judge Seigel on March 27, 2023. We cannot fathom any possible justification for this delay." See **Exhibit C** (emphasis in original).

25. Notably, in the absence of this information related to the predictive coding / TAR utilized by Plaintiffs in this case, there are serious unresolved questions about the thoroughness and reliability of both Plaintiffs' collection and processing of documents, as well as their mass production of documents for Phase II discovery, beginning with a production of 189,423 pages of documents on January 4, 2023 (and including an additional 14 volumes of production thereafter).

26. Plaintiffs' additional misconduct regarding the TAR information from Avalon constitutes a separate and independent basis for the Special Master to (1) reallocate and apportion the entirety of his costs to Plaintiffs; (2) award Defendant her attorneys' fees in connection with the entirety of these special master proceedings; (3) submit a report to Judge Ross with a finding that these special master proceedings have been completely frustrated and/or become an exercise in futility in light of Plaintiffs' refusal to comply with orders from the Special Master; (4) submit a report to Judge Ross recommending that Plaintiffs' claims be dismissed or, in the alternative, that Judge Ross vacate the current trial setting and impose a different sanction upon Plaintiffs, sufficient to address the egregiousness of Plaintiffs' conduct as well as the prejudice such conduct has visited upon Defendant; and (5) grant any additional and/or further relief that the Special Master deems appropriate given the circumstances. See Fed. R. Civ. P. 37(b)(2)(A); see also Bergstrom, 744 F.3d at 576 (quoting Schoffstall, 223 F.3d at 823).

27. To be clear, while these two repeated and ongoing violations of directives from the Special Master—related to amended written discovery responses and TAR information from Avalon—are more than enough to justify the imposition of the foregoing sanctions, this conduct

represents only a small portion of the willful defiance shown by Plaintiffs throughout these special master proceedings. Plaintiffs have repeatedly failed to follow through with commitments and assurances made to Defendant and the Special Master, which has completely frustrated the advancement and resolution of the various discovery disputes at issue between the parties.

WHEREFORE, Defendant Anne Schlafly Cori respectfully request that the Special Master grant her Motion for Sanctions and reallocate and apportion the entirety of his costs to Plaintiffs; award Defendant her attorneys' fees in connection with the entirety of these special master proceedings; submit a report to United States District Court Judge John A. Ross for the Eastern District of Missouri with a finding that these special master proceedings have been completely frustrated and/or become an exercise in futility in light of Plaintiffs' repeated and ongoing refusal to comply with orders from the Special Master; submit a report to Judge Ross recommending that Plaintiffs' claims be dismissed or, in the alternative, that Judge Ross vacate the current trial setting and impose a different sanction upon Plaintiffs, sufficient to address the egregiousness of Plaintiffs' conduct as well as the prejudice visited upon Defendant; and grant any additional and/or further relief that the Special Master deems appropriate given the circumstances.

Respectfully submitted,

**SPENCER FANE LLP**

DATED: April 18, 2023     By:    /s/ *Arthur D. Gregg*
Erik O. Solverud, #44291MO
Arthur D. Gregg, #67098MO
1 N. Brentwood Blvd., Suite 1200
St. Louis, MO 63105
Telephone (314) 863-7733
Facsimile (314) 862-4656
esolverud@spencerfane.com
agregg@spencerfane.com

*Attorneys for Defendant Anne Schlafly Cori*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 18th day of April, 2023, a true and correct copy of the foregoing document was electronically filed via the Court's electronic filing system, which will send notice of electronic filing to all registered attorneys of record.

/s/ *Arthur D. Gregg*