# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

PHYLLIS SCHLAFLY REVOCABLE )
TRUST, et al., )
                     )
      Plaintiffs, )
                     )
v. )      Cause No. 4-16-cv-01631-JAR
                     )
ANNE CORI, et al., )
                     )
      Defendants. )

## DEFENDANT'S SUPPLEMENT TO HER MOTION FOR SANCTIONS

Defendant Anne Schlafly Cori ("Defendant") hereby submits this supplement to her Motion for Sanctions [Doc. No. 289] against Plaintiffs Phyllis Schlafly Revocable Trust, Eagle Trust Fund and Eagle Forum Education & Legal Defense Fund (collectively, "Plaintiffs") for their failure and refusal to comply with the directives of the Special Master, including but not limited to the Special Master's Orders entered in this case, regarding Plaintiffs' privilege log:

### Plaintiffs' Failure and Refusal to Provide an Amended Privilege Log

1. On January 11, 2023, Plaintiffs produced a privilege log for their Phase I and Phase II discovery responses containing 15,148 separate entries. Setting aside the substance of the privilege log—which included thousands of improper assertions of privilege over communications with unrepresented third parties—the format of the privilege log itself was corrupted and completely untenable. First, the privilege log made no distinction between emails and attachments. Second, the privilege log left blank crucial information for reviewing Plaintiffs' assertions of attorney-client privilege. Indeed, there were 8,371 instances where the "Email From" column was blank and there were 8,381 instances where the "Email To" column was blank. For thousands of these documents, this crucial information was missing even though the "Email Subject" was

provided. How could Defendant review Plaintiffs' assertion of attorney-client privilege for these documents when she could not even determine whether an attorney was the sender and/or direct recipient of a communication? <u>Third</u>, and finally, the privilege log did not identify which Plaintiff was asserting the privilege.

2.    During his meeting with the parties on February 27, 2023, the Special Master directed Plaintiffs to amend their privilege log to specifically address each of these defects and advise Defendant and the Special Master, by March 1, 2023, when an amended privilege log would be served:

> 9.    Plaintiffs are ordered to amend the format of their Phase II privilege log to (1) distinguish between emails and attachments; (2) identify which Plaintiff is asserting the attorney-client privilege and/or attorney work product doctrine for each privilege log entry; and (3) to the extent not already performed, identify the sender and recipient(s) of each communication in the "Email From" and "Email To" columns for all emails in the privilege log. On or before **March 1, 2023**, Plaintiffs shall advise Defendant and the Special Master when Plaintiffs will serve their amended Phase II privilege log.

<u>See</u> Special Master's Order #2 [Doc. No. 279, ¶ 9].

3.    Plaintiffs failed and refused to advise when they would serve their amended privilege log by March 1, 2023. This issue was raised by Defendant in her previously filed *Motion to Enforce Compliance with Special Master's Order #2* [Doc. No. 280].

4.    During a meeting with the parties on March 7, 2023—one day after Defendant's Motion to Enforce had been filed—the Special Master directed Plaintiffs to serve their amended privilege log "without exception" by March 17, 2023:

> 8.    Plaintiffs shall amend the format of their Phase II privilege log to (1) distinguish between emails and attachments; (2) identify which Plaintiff is asserting the attorney-client privilege and/or attorney work product doctrine for each privilege log entry; and (3) to the extent not already performed, identify the sender and recipient(s) of each communication in the "Email From" and "Email To" columns for all emails in the privilege log. Plaintiffs shall serve their amended Phase II privilege log on or before **March 17, 2023** without exception.

2

<u>See</u> Special Master's Order #3 [Doc. No. 281, ¶ 8].

5.     During this time, the Special Master also directed that the approximately 700 documents sent to or from non-parties Roger Schlafly and Liza Forshaw be removed from the privilege log and produced to Defendant by March 9, 2023 because there was no dispute that such documents were not privileged:

> 10.     By agreement of the parties, Plaintiffs shall withdraw all assertions of privilege over emails or documents sent to or from (or copying) Roger Schlafly and Liza Forshaw and produce those documents to Defendant. On or before **March 1, 2023**, Plaintiffs shall advise Defendant and the Special Master when Plaintiffs will serve their supplemental production of documents sent to or from (or copying) Roger Schlafly and Liza Forshaw.

<u>See</u> Special Master's Order # 2 [Doc. No. 278, ¶ 10].

> 5.     By agreement of the parties, Plaintiffs shall withdraw all assertions of privilege over emails or documents sent to or from (or copying) Roger Schlafly and Liza Forshaw and produce those documents to Defendant. On or before **March 9, 2023**, Plaintiff shall serve their supplemental production of documents sent to or from (or copying) Roger Schlafly and Liza Forshaw.

<u>See</u> Special Master's Order #3 [Doc. No. 281, ¶ 5].

6.     On March 8, 2023, Plaintiffs produced 2,305 documents "contain[ing] emails with Roger Schlafly or Liza Forshaw that were previously withheld as privileged."  However, even though Plaintiffs produced 2,305 documents, the production was still missing more than 300 (out of the 700) emails on Plaintiffs' privilege log sent to or from (or copying) Roger Schlafly and Liza Forshaw.

7.     When this issue was raised with the Special Master on March 16, 2023, he directed Plaintiffs to consult with their ESI discovery vendor, Avalon, as to the status of the missing documents, and report back to Defendant and the Special Master the next day.  However, it was

SL 5955642.3

not until March 22, 2023 that Plaintiffs provided Avalon's "explanation" that the missing documents had either already been produced or would be produced in a subsequent production:

> 3.   *Special Master Order #3 stated that, by agreement of the parties, Plaintiffs shall withdraw all assertions of privilege over emails or documents sent to or from (or copying) Roger Schlafly and Liza Forshaw and produce those documents to Defendant on or before* **March 9, 2023**.
>
> On March 16, 2023, Defendant's counsel advised Plaintiffs' counsel and the Special Master that more than 300 documents were missing from the supplemental production of documents sent to or from (or copying) Roger Schlafly and Liza Forshaw. The Special Master requested that Plaintiffs' counsel contact Avalon and report back on this issue by Friday, March 17, 2023. On March 22, 2023, Plaintiffs' counsel provided an email from Avalon stating that the missing documents were either produced in prior production volumes (but not removed from the privilege log) or else would be produced in subsequent productions, which would include potentially 800 additional documents found by Plaintiffs (which were not previously produced or identified on a privilege log). Among other things, Avalon's e-mail advised that the subsequent productions would require Plaintiffs to manually review 390 of the 800 recently discovered emails.
>
> On **March 27, 2023** Plaintiffs shall advise Defendant and the Special Master on the status of the supplemental production of additional and/or missing documents sent to or from (or copying) Roger Schlafly and Liza Forshaw and when the same will be provided to Defendant.

<u>See</u> Special Master's Order #4 [Doc. No. 284, ¶ 3].

8.       During these hearings with the Special Master, Plaintiffs' counsel Patrick Sweeney repeatedly stated that Avalon was making mistakes as to what has been produced and/or withheld and that there were numerous instances where trust in Avalon has been "misplaced." In the context of documents relating to Plaintiffs' damages expert that had been improperly withheld as privileged, Plaintiffs' counsel admitted "[t]here does appear to have been some kind of error in the document review/promotion, because these are all responsive, but were not included in Avalon's search of privileged withheld documents." <u>See</u> Email from P. Sweeney dated March 7, 2023, a true and accurate copy of which is attached hereto as **Exhibit A**.

9.       As noted above, Plaintiffs were directed to produce their amended privilege log "without exception" by March 17, 2023. <u>See</u> Special Master's Order #3 [Doc. No. 281, ¶ 8].

4

However, the updated privilege log received on that date only contained 7,712 entries. Even if Plaintiffs' production of clearly non-privileged documents was taken into account, there were still more than 5,000 documents missing between the initial and updated privilege logs. Furthermore, the "updated" privilege log still did not distinguish emails from attachments, in violation of Special Master's Order #2 [Doc. No. 279, ¶ 9] and Special Master's Order #3 [Doc. No. 281, ¶ 8].

10. In response to this wholly deficient "updated" privilege log, the Special Master directed the parties to confer with Avalon on the issues with Plaintiffs' privilege log and production of documents. Avalon conceded that the "updated" privilege log incorrectly excluded numerous documents. Plaintiffs then represented that this issue would be resolved "through a forthcoming production of a new 'updated' privilege log" to Defendant:

> 2. *Special Master Order #3 directed Plaintiffs to amend the format of their Phase II privilege log on or before March 17, 2023 to (1) distinguish between emails and attachments; (2) identify which Plaintiff is asserting the attorney-client privilege and/or attorney work product doctrine for each privilege log entry; and (3) to the extent not already performed, identify the sender and recipient(s) of each communication in the "Email From" and "Email To" columns for all emails in the privilege log.*
>
> *Because the "updated" privilege log produced by Plaintiffs on March 17, 2023 was missing more than 5,000 documents and, in numerous instances, did not distinguish between e-mails and attachments on various entries, the Special Master directed the parties to have a conference call with Avalon (Plaintiffs' eDiscovery vendor) about the privilege log and other issues with Plaintiffs' document production on March 22, 2023.*
>
> *On March 23, 2023, the parties advised the Special Master that Avalon represented that the "updated" privilege log was incorrectly limited to exclude documents coded with predictive coding / technology assisted review (TAR) and that attachments were not properly differentiated for part of the dataset, requiring a manual review. Plaintiffs' counsel also advised the Special Master that this issue would be resolved through a forthcoming production of a new "updated" privilege log and supplemental production of documents.*

<u>See</u> Special Master's Order #4 [Doc. No. 284, ¶ 2].

11. In light of Plaintiffs' representations, the Special Master directed Plaintiffs to advise Defendant and the Special Master by March 27, 2023, on "the status of the new updated privilege log" from Plaintiffs:

SL 5955642.3

> On **March 27, 2023** Plaintiffs shall advise Defendant and the Special Master on the status of the new updated privilege log and the supplemental production of additional documents and when the same will be provided to Defendant.

See Special Master's Order #4 [Doc. No. 284, ¶ 2].

12.    During the parties' conference with the Special Master on March 27, 2023, Plaintiffs' counsel represented that the new updated privilege log would be provided on March 28, 2023.

13.    Plaintiff did not provide a new updated privilege log on March 28, 2023.

14.    Counsel for Defendant followed up on this issue by email on April 4, 2023:

> During our March 27 conference with Judge Seigel, you referenced numerous productions that still needed to be made and dates for the same. And we have received four productions since that date: Volumes 12, 13, 14 and 15. Is this all the supplemental productions that Plaintiffs are making? **And if so, where is the updated privilege log? During our meeting on March 27, you represented that once a final manual review of documents was finished later that day (on March 27) there would be a new log provided the next day (March 28). We are now a week out from March 28 and no log has been provided. What is the status of the updated privilege log and why has it not been provided?**

See Email from A. Gregg dated April 4, 2023, a true and accurate copy of which is attached hereto as **Exhibit B** (emphasis added).

15.    When this issue was raised during the parties' meeting with the Special Master on April 7, 2023, Plaintiffs agreed to "produce their final privilege log by **April 19, 2023**, which will then need to be reviewed and evaluated by Defendant." See Email from A. Gregg dated April 7, 2023, a true and accurate copy of which is attached hereto as **Exhibit C**.

16.    Plaintiffs did not receive a "final privilege log" by April 19, 2023. Instead, Plaintiffs received three Excel files from Plaintiffs: (1) the initial privilege log produced on January 11, 2023; (2) an Excel file of documents produced from the initial privilege log; and (3) an

Excel file of documents still withheld from that privilege log.  See Email from L. Kane dated April 19, 2023, a true and accurate copy of which is attached hereto as **Exhibit D.**

17.     The notion that these documents constitute a "final privilege log" strains disbelief. In fact, each of these logs still (1) fails to distinguish emails from attachments and (2) contains thousands of blanks in the columns of "Email From" and "Email To."  For example, the Excel file referencing documents still withheld by Plaintiffs contains 4,102 blanks for "Email From" and 4,108 blanks for "Email To."

18.     Then on April 20, 2023, Plaintiffs produced *another* privilege log, this time for documents responsive to search terms proposed by Defendant.  See Email from L. Kane dated April 20, 2023, a true and accurate copy of which is attached hereto as **Exhibit E**.

19.     This privilege log contains an additional 1,979 entries.  Of those entries, more than 1,000 documents (i.e., more than half) contains blanks in the columns of "Email From," "Email To," or both.  This additional privilege log also does not distinguish between emails and attachments.  This additional privilege log also contains 11 emails to or from (or copying) Roger Schlafly or Liza Forshaw.

20.     Similar to her circumstances at the beginning of these special master proceedings, Defendant is once again forced to navigate privilege logs that for thousands of entries: do not identify the sender of the allegedly privileged communication, do not identify the direct recipient of the allegedly privileged communication, and do not even distinguish between an email and an attachment.  After months of pushing these issues, the only "accomplishment" on the privilege log front is that Plaintiffs have produced documents which everyone (including Plaintiffs' counsel) agrees should never have been withheld as privileged in the first place.  On the issue of Plaintiffs' privilege logs, Defendant is right back where she was when these special master proceedings first began.

SL 5955642.3

21.     Frankly, the parties might not even be *back* to square one.  Plaintiffs may have never left square one.  Indeed, the only privilege log provided by Plaintiffs between January 11, 2023 and April 19, 2023 was the corrupted document provided on March 17, 2023, that excluded more than 5,000 documents because of errors committed by, and trust "misplaced" in, Avalon.  Plaintiffs may have never taken steps to fill in the blanks on their own privilege logs.  One thing is clear: there is no time left to address the clear and insurmountable prejudice visited upon Defendant.

22.     Under the Second Amended Case Management Order [Doc. No. 241], Defendant is meant to identify and disclose exhibits, witnesses and deposition excerpts by May 2, 2023.  How can she disclose exhibits if she continues to receive document productions and unintelligible assertions of privilege over thousands of documents?  How can she disclose a rebuttal expert if the completion of the deposition of Plaintiffs' expert has been continued (three times now) to April 26, 2023 because of Plaintiffs' failure to produce necessary documents months ago?  How can she identify necessary deposition testimony before she has had the chance to depose the corporate representatives of Plaintiffs with the documents it has provided?

23.     In the coming weeks, Defendant will be forced to navigate the submission of jury instructions, a pre-trial conference and then the trial of this matter (which is set to begin in less than one month).  While Defendant struggles to meet these deadlines, she will also be attempting to review and obtain documents necessary for her defense of the claims asserted against her in her individual capacity.  This is the very definition of prejudice.  Defendant cannot, and should not be required to, investigate the claims against her at the same time she prepares for trial simply because Plaintiffs have refused (again and again) to comply with Orders from the Special Master.  Plaintiffs' conduct is (and must be) sanctionable.

SL 5955642.3

24.     Rule 37(b) provides that "[i]f a party ... fails to obey an order to provide or permit discovery… the court where the action is pending may issue further just orders."  <u>See</u> Fed. R. Civ. P. 37(b)(2)(A).  Such "just orders" are specifically enumerated under Rule 37(b) and include "dismissing the action or proceeding in whole or in part."  <u>Id.</u> at 37(b)(2)(A)(iii), (v).  Indeed, it is well-established that dismissal as a discovery sanction is available if there is "(1) an order compelling discovery, (2) a willful violation of the order, and (3) prejudice to the other party."  <u>See Bergstrom v. Frascone</u>, 744 F.3d 571, 576 (8th Cir. 2014) (quoting <u>Schoffstall v. Henderson</u>, 223 F.3d 818, 823 (8th Cir. 2000)).

25.     Defendant states that the foregoing sanctionable conduct constitutes further and independent justification for the relief sought in her Motion for Sanctions [Doc. No. 289]: that the Special Master (1) reallocate and apportion the entirety of his costs to Plaintiffs, whose bad faith continues to frustrate the progress of these proceedings; (2) award Defendant her attorneys' fees in connection with the entirety of these special master proceedings; (3) submit a report to United States District Court Judge John A. Ross for the Eastern District of Missouri ("Judge Ross") with a finding that these special master proceedings have been completely frustrated and/or become an exercise in futility in light of Plaintiffs' repeated and ongoing refusal to comply with orders from the Special Master; (4) submit a report to Judge Ross recommending that Plaintiffs' claims be dismissed or, in the alternative, that Judge Ross vacate the current trial setting and impose a different sanction upon Plaintiffs, sufficient to address the egregiousness of Plaintiffs' conduct as well as the prejudice visited upon Defendant; and (5) grant any additional and/or further relief that the Special Master deems appropriate given the circumstances.

SL 5955642.3

Respectfully submitted,

**SPENCER FANE LLP**

DATED: April 22, 2023     By:   /s/ *Arthur D. Gregg*
Erik O. Solverud, #44291MO
Arthur D. Gregg, #67098MO
1 N. Brentwood Blvd., Suite 1200
St. Louis, MO 63105
Telephone (314) 863-7733
Facsimile (314) 862-4656
esolverud@spencerfane.com
agregg@spencerfane.com

*Attorneys for Defendant Anne Schlafly Cori*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of April, 2023, a true and correct copy of the foregoing document was electronically filed via the Court's electronic filing system, which will send notice of electronic filing to all registered attorneys of record.

/s/ *Arthur D. Gregg*

SL 5955642.3